# Schulte Roth & Zabel LLP

919 Third Avenue
New York, NY 10022
212.756.2000
212.593.5955 fax

www.srz.com

Martin L. Perschetz
212.756.2247

Writer's E-mail Address
martin.perschetz@srz.com

July 6, 2011

**VIA ECF**

Hon. Stanley R. Chesler
United States District Court for the District of New Jersey
Martin Luther King, Jr. Federal Building & U.S. Courthouse
50 Walnut Street
Newark, NJ 07101

      Re:  *In re Merck & Co., Inc., Securities, Derivative & "ERISA" Litig.*
           (MDL 1658), Nos. 05-CV-01151-SRC-MAS & 05-CV-02367-SRC-MAS
           The Consolidated Securities Action

Dear Judge Chesler:

      I respectfully submit this letter on behalf of our client, Dr. Edward M. Scolnick, a defendant in the above-referenced action, in connection with Dr. Scolnick's Motion to Dismiss the Corrected Consolidated Fifth Amended Class Action Complaint (the "Motion").

      The purpose of this letter is to bring to the Court's attention the U.S. Supreme Court's recent decision in *Janus Capital Group, Inc. v. First Derivative Traders*, No. 09-525, __ S. Ct. __, 2011 WL 2297762 (June 13, 2011). In *Janus*, the Supreme Court reaffirmed that only one who actually "makes" an alleged misstatement can be liable to a private plaintiff under Section 10(b) of the Securities Exchange Act of 1934, and established a stringent and narrow test as to what person or entity can be the "maker" of an alleged misstatement.

      Accordingly, and explained below in more detail, *Janus* establishes beyond cavil that, as Dr. Scolnick asserted in his Motion, he cannot be liable here under Section 10(b) for any alleged misstatements not publicly and expressly attributed to him. In addition, *Janus* establishes that Dr. Scolnick cannot be liable for *any* of the alleged misstatements set forth in the Complaint – *whether or not they were attributed to him or signed by him* – because the Complaint does not allege that Dr. Scolnick was the person or entity "with ultimate authority over the statement." *Id.* at *5.

### Unattributed Statements

      As set forth in Dr. Scolnick's Memorandum of Law ("Scolnick Br.") in support of his Motion, the overwhelming majority of allegedly actionable statements set forth in the Complaint are not, and cannot be, alleged to have been actually made by him for public

Hon. Stanley R. Chesler
July 6, 2011
Page 2

attribution. (*See* Scolnick Br. at 4-6.) In that Memorandum, we argued on behalf of Dr. Scolnick that the Section 10(b) claim against him, to the extent predicated on these unattributed statements, should be dismissed because only statements actually made by a defendant for attribution are actionable under Section 10(b), under the "bright line" test adopted by most District Courts within the Third Circuit, and implicitly by the Third Circuit itself in *United States v. Schiff*, 602 F.3d 152 (3d Cir. 2010). (*See* Scolnick Br. at 15-22.) *Janus* has now established beyond peradventure that – at a *minimum* – only alleged misstatements actually "made" by a defendant, and made for attribution, may give rise to a primary Section 10(b) violation by that defendant.

   The issue in *Janus* was whether Janus Capital Management ("JCM"), a mutual fund investment adviser, could be liable in a private Rule 10b-5 action for false statements included in the prospectuses for mutual funds it managed. *Id.* at *2. The mutual funds were created by Janus Capital Group, Inc. ("JCG"), a public company, and organized into a business trust, the Janus Investment Fund. *Id.* Janus Investment Fund issued the mutual funds' prospectuses. *Id.* at *3. The prospectuses for several of the funds suggested that JCM would curb market timing in the funds, but in 2003, the New York Attorney General filed a lawsuit against JCG and JCM alleging that JCG secretly arranged to permit market timing. *Id.* JCG's stock price fell when the lawsuit became public, and a class of JCG stockholders led by First Derivative Traders (collectively, "First Derivative") subsequently sued JCG and JCM under Section 10(b) and Rule 10b-5, based on the allegedly misleading mutual fund prospectuses. *Id.* The District Court dismissed the complaint, but the Fourth Circuit reversed, holding that First Derivative sufficiently alleged that "'JCG and JCM, by participating in the writing and dissemination of the prospectuses, *made* the misleading statements contained in the documents.'" *Id.* at *4 (quoting Fourth Circuit opinion, which supplied the emphasis). "With respect to the element of reliance, the [Fourth Circuit] found that investors would infer that JCM 'played a role in preparing or approving the content of the Janus fund prospectuses.'" *Id.* (quoting Fourth Circuit opinion).

   The Supreme Court reversed the Fourth Circuit. Holding that only the actual "maker" of an alleged misstatement can be primarily liable, the Court went on to define narrowly and concretely who the "maker" of a statement is for purposes of Section 10(b) and Rule 10b-5: "For purposes of Rule 10b–5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." *Id.* at *5. Thus, the Supreme Court actually went *beyond* the "bright line" test articulated by the Second Circuit and embraced by the Third Circuit in *Schiff*, requiring not only attribution but also that the defendant be the person or entity with "ultimate authority" over the statement. At a minimum, however, attribution is required. "More may be required to find that a person or entity made a statement, but ***attribution is necessary***." *Id.* at *7 n.11 (emphasis added).

   Accordingly, there now can be no doubt: all of the statements set forth in the Complaint that were not publicly attributed to Dr. Scolnick were not actually "made" by him and thus cannot form the basis of primary Section 10(b) liability on his part. No amount of behind-the-scenes participation in the preparation of the statement can substitute for actually "making" the statement, and such participation, no matter how substantial, can at most constitute aiding

Hon. Stanley R. Chesler
July 6, 2011
Page 3

and abetting, inactionable in a private action.[1] As a result, as to all of these unattributed statements, the Section 10(b) claim against him should be dismissed.[2]

### Attributed Statements

In addition, in light of the Supreme Court's decision in *Janus*, the seven statements set forth in the Complaint that are signed or are otherwise attributed to Dr. Scolnick (*see* Scolnick Br. at 6-9) should also be dismissed on the ground that, for purposes of Section 10(b), the Complaint does not adequately allege that they were "made" by Dr. Scolnick.[3] Under *Janus*, while attribution is "necessary," it is not necessarily sufficient, because "the maker [of the alleged misstatement] is the person or entity with ultimate authority over a statement ***and others are not***." *Id.* at *5 n.6 (emphasis added).

Nothing in the Complaint alleges that Dr. Scolnick was "the person or entity with ultimate authority over the statement, including its content and how to communicate it." *Id.* at *5. The Supreme Court has now established that this ultimate control over the statement is

---

[1] Moreover, to the extent that there was previously any question as to the applicability of the "bright line" test to corporate insiders as opposed to outsiders, this question has been emphatically answered by the Supreme Court in *Janus*: the "clean line," an extension of *Central Bank* and the "bright line," applies uniformly to any defendant in a private Section 10(b) action, including corporate insiders. *Janus*, 2011 WL 2297762 at *5 & n.6, *10. *See, e.g., SEC v. Lucent Technologies, Inc.*, 363 F. Supp. 2d 708, 711, 724 (D.N.J. 2005) (dismissing § 10(b) claim against Lucent's finance director, because even though "most of the cases dealing with th[e] issue have done so in the context of outsiders ... [,] the *Central Bank* court did not limit secondary actors to such professionals"); *Copland v. Grumet*, 88 F. Supp. 2d 326, 330-34 (D.N.J. 1999). *See also In re Vivendi Universal, S.A. Sec. Litig.*, No. 02 Civ. 05571 (RJH) (HBP), 2011 WL 590915 at *1 n.1 (S.D.N.Y. Feb. 17, 2011) (dismissing § 10(b) claim against former Vivendi CFO to the extent based on statements that were not attributed to him); *SEC v. Cedric Kushner Promotions, Inc.*, 417 F. Supp. 2d 326, 332-34 (S.D.N.Y. 2006); *SEC v. PIMCO Advisors Fund Mgmt. LLC*, 341 F. Supp. 2d 454, 466-67 (S.D.N.Y. 2004); *In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288 (DLC), 2003 WL 21488087, at *7-8 (S.D.N.Y. June 25, 2003); *In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281, 363 n.107 (S.D.N.Y. 2003); *In re JWP Inc. Sec. Litig.*, 928 F. Supp. 1239, 1264-66 (S.D.N.Y. 1996).

[2] Numerous alleged misstatements set forth in the Complaint not only were unattributed to Dr. Scolnick, but also could not possibly have been made by him because they were made after he retired on December 31, 2002. Obviously, these statements cannot form the basis of a Section 10(b) claim against Dr. Scolnick for that additional reason. (*See* Scolnick Br. at 15-16.)

[3] Even before *Janus*, the allegations concerning the seven statements did not adequately state a Section 10(b) claim against Dr. Scolnick for the various independent reasons, including a failure adequately to plead the essential element of scienter, already set forth in his Motion. (*See* Scolnick Br. at 22-40.)

Hon. Stanley R. Chesler
July 6, 2011
Page 4

required in order for one to be a "maker" of an alleged misstatement. As the Supreme Court explained:

> Without control, a person or entity can merely suggest what to say, not "make" a statement in its own right. One who prepares *or publishes* a statement *on behalf of another* is *not* its maker. And in the ordinary case, attribution within a statement or implicit from surrounding circumstances is strong evidence that a statement was made by—and only by—the party to whom it is attributed. This rule might best be exemplified by the relationship between a speechwriter and a speaker. Even when a speechwriter drafts a speech, the content is entirely within the control of the person who delivers it. And it is the speaker who takes credit—or blame—for what is ultimately said.

*Id.* at *5 (emphasis added).

According to the Court, this rule "accords with the narrow scope" that must be given to "the implied private right of action." *Id.*; *see also Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 165 (2008) ("Concerns with the judicial creation of a private cause of action caution against its expansion.") Thus, one who merely "publishes" – issues or articulates or conveys – a statement "on behalf of" the person or entity with ultimate authority is *not* the "maker" of the statement and therefore cannot be the primary Section 10(b) violator.[4] "Under this rule," as applied to the facts in *Janus*, "JCM did not 'make' any of the statements in the Janus Investment Fund prospectuses; Janus Investment Fund did. Only Janus Investment Fund – not JCM – bears the statutory obligation to file the prospectuses with the SEC." *Janus* at *7.

---

[4] Indeed, even before *Janus*, Judge Lynch of the Southern District of New York found that the law firm of Mayer Brown could not be a primary Section 10(b) violator even though "Mayer Brown made representations directly to the [plaintiff and the plaintiff's] representatives that were knowingly false when made...." *Thomas H. Lee Equity Fund V, L.P. v. Mayer Brown, Rowe & Maw LLP*, 612 F. Supp. 2d 267, 275 (S.D.N.Y. 2009). Dismissing the Section 10(b) claim against the law firm, Judge Lynch explained:

> The identity of the speaker is not, as plaintiffs would have it, ipso facto, dispositive of that issue. For Mayer Brown to be liable under Rule 10b-5(b) it is not enough that Mayer Brown conveyed misinformation to the THL Funds. For Mayer Brown to be liable, the statements on which the THL Funds purportedly relied must be the statements of Mayer Brown.

*Id.* at 277. Presciently in light of the subsequent decision in *Janus*, Judge Lynch found that the statements articulated by Mayer Brown were not made on its "own authority" (*id.*) and therefore Mayer Brown could not be a primary violator.

DOC ID-16895966.3

Hon. Stanley R. Chesler
July 6, 2011
Page 5

Here, there is literally nothing in the Complaint purporting to state any allegation of the requisite "ultimate authority" with regard to the seven statements allegedly "made" by Dr. Scolnick. On the contrary, Merck's annual reports, Form 10-Ks and registration statements, even if containing statements attributed to Dr. Scolnick, were indisputably documents over which Dr. Scolnick did not exercise "ultimate authority." The parallel with *Janus* is unmistakable. Just as "only Janus Investment Fund -- not JCM -- b[ore] the statutory obligation to file the prospectuses with the SEC, *Janus*, 2011 WL 2297762 at *7, here only Merck bore the statutory obligation to file, and did file, these documents with the SEC.[5] At most, Dr. Scolnick can be said to have contributed to, or participated in the preparation of, these filings on behalf of Merck. But as *Janus* makes clear, Dr. Scolnick cannot have been their "maker."[6]

Likewise, as to the remainder of the seven "attributed" statements, merely alleging that they were "published" or issued or conveyed by Dr. Scolnick is not enough. The Complaint must adequately allege that *Dr. Scolnick* had "ultimate authority" over the content of these statements and whether they would be publicly made. The Complaint is totally devoid of any such allegations.

In light of the above, as well as all of the reasons previously set forth by Dr. Scolnick in his Motion, the Section 10(b) claim against him should be dismissed.[7]

We appreciate the Court's attention to this letter.

Respectfully submitted,

Martin L. Perschetz

---

[5] *See* General Instructions, Form 10-K, Annual Report Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 (indicating that the "registrant" files Form 10-K); General Instructions, Form S-1, Registration Statement Under the Securities Act of 1933 (indicating that the "registrant" files Form S-1). Merck's status as the "registrant" on the Form 10-K reflects that Merck was the issuer that filed those forms. *See* SEC Rules 405 and 12b-2, 17 C.F.R. §§ 230.405, 240.12b-2 (2011) (defining the "registrant" as the "issuer" of securities for which the registration statement or report is filed).

[6] In any event, plaintiffs do not state a claim with respect to such statements for all of the reasons set forth in Defendants' Memorandum of Law In Support Of Their Motion To Dismiss (the "Merck Memorandum"), filed on behalf of all of the other defendants and in which Dr. Scolnick joined.

[7] If the Court so desires, we would be prepared to amplify the above points in a supplemental Memorandum of Law in support of Dr. Scolnick's Motion, addressed to the impact of *Janus*.

DOC ID-16895966.3

Hon. Stanley R. Chesler
July 6, 2011
Page 6

cc:    <u>VIA EMAIL PDF</u>
       Karin A. DeMasi, Esq.
       David A.P. Brower, Esq.
       Salvatore J. Graziano, Esq.
       Mark Levine, Esq.
       Richard H. Weiss, Esq.
       Paul B. Brickfield, Esq.
       James E. Cecchi, Esq.
       Alfred C. Decotis, Esq.
       William R. Stein, Esq.
       Eric S. Parnes, Esq.