# Exhibit 1

# CRAVATH, SWAINE & MOORE LLP

ALLEN FINKELSON
STUART W. GOLD
JOHN W. WHITE
EVAN R. CHESLER
MICHAEL L. SCHLER
RICHARD LEVIN
KRIS F. HEINZELMAN
B. ROBBINS KIESSLING
ROGER D. TURNER
PHILIP A. GELSTON
RORY O. MILLSON
RICHARD W. CLARY
WILLIAM P. ROGERS, JR.
JAMES D. COOPER
STEPHEN L. GORDON
DANIEL L. MOSLEY
PETER S. WILSON
JAMES C. VARDELL, III
ROBERT H. BARON
KEVIN J. GREHAN
STEPHEN S. MADSEN
C. ALLEN PARKER
MARC S. ROSENBERG

SUSAN WEBSTER
DAVID MERCADO
ROWAN D. WILSON
CHRISTINE A. VARNEY
PETER T. BARBUR
SANDRA C. GOLDSTEIN
THOMAS G. RAFFERTY
MICHAEL S. GOLDMAN
RICHARD HALL
JULIE A. NORTH
ANDREW W. NEEDHAM
STEPHEN L. BURNS
KEITH R. HUMMEL
DANIEL SLIFKIN
JEFFREY A. SMITH
ROBERT I. TOWNSEND, III
WILLIAM J. WHELAN, III
SCOTT A. BARSHAY
PHILIP J. BOECKMAN
ROGER G. BROOKS
WILLIAM V. FOGG
FAIZA J. SAEED
RICHARD J. STARK

WORLDWIDE PLAZA
825 EIGHTH AVENUE
NEW YORK, NY 10019-7475

TELEPHONE: (212) 474-1000
FACSIMILE: (212) 474-3700

———
CITYPOINT
ONE ROPEMAKER STREET
LONDON EC2Y 9HR
TELEPHONE: 44-20-7453-1000
FACSIMILE: 44-20-7860-1150

WRITER'S DIRECT DIAL NUMBER

(212) 474-1059

THOMAS E. DUNN
MARK I. GREENE
SARKIS JEBEJIAN
DAVID R. MARRIOTT
MICHAEL A. PASKIN
ANDREW J. PITTS
MICHAEL T. REYNOLDS
ANTONY L. RYAN
GEORGE E. ZOBITZ
GEORGE A. STEPHANAKIS
DARIN P. MCATEE
GARY A. BORNSTEIN
TIMOTHY G. CAMERON
KARIN A. DEMASI
LIZABETHANN R. EISEN
DAVID S. FINKELSTEIN
DAVID GREENWALD
RACHEL G. SKAISTIS
PAUL H. ZUMBRO
JOEL F. HEROLD
ERIC W. HILFERS
GEORGE F. SCHOEN
ERIK R. TAVZEL

CRAIG F. ARCELLA
TEENA-ANN V. SANKOORIKAL
ANDREW R. THOMPSON
DAMIEN R. ZOUBEK
LAUREN ANGELILLI
TATIANA LAPUSHCHIK
ERIC L. SCHIELE
ALYSSA K. CAPLES
JENNIFER S. CONWAY
MINH VAN NGO
KEVIN J. ORSINI
MATTHEW MORREALE

———
SPECIAL COUNSEL
SAMUEL C. BUTLER
GEORGE J. GILLESPIE, III

———
OF COUNSEL
PAUL C. SAUNDERS

December 22, 2011

*In re Merck & Co., Inc. Securities, Derivative & ERISA Litigation*, No. 05-cv-2367
The Consolidated Securities Action

Dear Adam:

   I write in response to your December 9, 2011 letter, which follows up on our in-person meeting on December 5, 2011, and on prior letters exchanged between the parties, concerning the scope of Defendants' document production to Plaintiffs to date, among other things.

   *First*, we have reviewed the Exhibit A attached to your October 17, 2011 letter, concerning documents you state have not been produced to you. Of those, (i) we are producing the following Bates ranges to you on the hard drives accompanying this letter: MRK-SAG0000001-65137; MRK-QLIK0000001-0050; MRK-ZAG0000001-0100; MRK-ZAG0000101-0103; MRK-ZAP0000001-1397; and MRK-CDM0000001-0033; (ii) the following Bates ranges were listed in error and do not represent documents that were ever produced in any litigation or proceeding: MRK-01420000001-19408; MRK-N0520019455-193986; MRK-N6470007345-72581; MRK-AID0023130-119995; MRK-ADP0000044-0084; (iii) the following Bates ranges were not produced in the universal products production because they were case specific: MRK-GAR0001292-1306; MRK-GAR0001676-1686; (iv) the following Bates ranges were produced to you with a different Bates stamp: MRK-GAR0001657-1668 was produced at MRK-ABC0002212-2223; MRK-GAR0001669-1669 was produced at MRK-ABC0002201-201; MRK-GAR0001670-1671 was produced at MRK-AEH0003230-3231; MRK-GAR0001672-1672 was produced at MRK-AEH0000012-0012; MRK-GAR0001673-1675 was produced at MRK-AFI0190051-0053; MRK-GAR0001687-1716 was produced at MRK-AGV0168035-8064; MRK-GAR0001717-1723 was produced at MRK-AAC0114127-4133; and MRK-GAR0001744-1746 was produced at MRK-AAB0009953-9955; and (v) the remaining Bates ranges you list have all been produced to you previously.

*Second*, you have inquired about documents related to foreign proceedings, including "deposition and trial transcripts, expert reports, demonstratives, and expert materials." (Ltr. at 1-2.) As we advised you at our meeting on December 5, 2011, the products production that has been produced to Plaintiffs contains certain materials from foreign proceedings, which were produced in the products liability cases pursuant to Judge Fallon's Order of November 2, 2005. (Pretrial Order No. 22, *In re: Vioxx Prods. Liab. Litig.*, MDL No. 1657 (E.D. La. Nov. 2, 2005).)

*Third*, we confirm that the production made to you on November 23, 2011, contained all of the document requests, interrogatories, and requests for admission served in the federal products liability MDL, the California coordinated Vioxx litigation, and the New Jersey coordinated Vioxx litigation, to the extent not previously produced.

*Fourth*, you have inquired about discovery correspondence from the products liability cases. (Ltr. at 2.) As you note, Mr. Cohen made himself available for several hours on December 5, 2011, to answer Plaintiffs' questions about the productions. He explained why reviewing discovery correspondence up to a decade old, and often relating to discovery requests that were mooted or overtaken by later discovery requests, is not an efficient or effective way to obtain information about what Merck has produced to you. We remain willing to answer specific questions you may still have about the productions, and we continue to believe that direct communication between us will provide you with better information through a method that is far more efficient for both sides.

*Fifth*, you have inquired about the documents produced in the third-party payor actions. (Ltr. at 2.) As we have previously stated (*see* Oct. 26, 2011 DeMasi Ltr. at 3), we do not see—and Plaintiffs have not articulated—how materials specific to the third-party payor cases would be relevant in this case. Nevertheless, we can confirm that a substantial portion of the third-party payor production overlaps with the universal products production, i.e., documents already produced to Plaintiffs. Categories of additional documents specific to the third-party payor production include managed care documents, MEDCO contracts, Express Scripts contracts, and medical services formulary dossiers.

*Sixth*, you request an index of the productions made to Plaintiffs from the document productions in the Vioxx derivative and ERISA cases, like the index Defendants provided of documents produced to you from the universal products production. (Ltr. at 3.) Defendants provided you with an index of the universal products production to the extent it existed and was supplemented. Further, Defendants attached to their October 26, 2011 letter a list showing each date that Merck made a production to Plaintiffs in this action and the Bates range(s) of the documents produced on that date, which included the universal products, ERISA, and derivative productions made available to Plaintiffs. While we are not required to provide you with an index of the productions made to you from the derivative and ERISA productions, Defendants confirm that the only Bates ranges of the derivative and ERISA productions not already on the universal products production index we provided you are: MRK-SHAA0000001-

1247437; MRK-SHAP0000001-0090; MRK-IAIC0000001-0414; MRK-IAJM0000001-0079; MRK-IABG0000001-0674; and MRK-IABH0000001-1319.

With respect to your inquiry about shared drives and databases (Ltr. at 3), as Mr. Cohen explained, these were not part of the custodial file collection and production process. The shared drives and databases that were produced include the VIOXX NDA, CLIC (the Clinical Literature Information Center database), and NWAES (Merck's adverse event report database), among numerous others, which are all listed in the index of the products productions made to you to date. The procedures that were used to collect and produce shared drives and databases were specific to each source, as they were many and varied. For example, the Vioxx information from NWAES was produced as an Oracle unload file, while the production from CLIC involved TIFF images and a Microsoft Access file. With respect to files of persons whose Vioxx documents were not produced (Ltr. at 3), those documents remain subject to applicable litigation holds.

*Seventh*, in response to your effort to summarize the parties' December 5, 2011 meeting with Mr. Cohen (Ltr. at 3-7), there are a number of assertions that are either incorrect or require clarification.

- With respect to Plaintiffs' questions about production cut-off dates, there was no "start date" for the productions. The original "first wave" of custodial file productions included documents dated through April 2002, when the FDA approved a Product Information for Vioxx that included information from the VIGOR study. In October 2004, Merck agreed to supplement its custodial file productions to include documents through October 14, 2004; this production was completed in early 2005. Merck also agreed to periodically supplement certain productions beyond this date, such as the regulatory submissions. In addition, some productions made since early 2005 included documents dated later than October 14, 2004. Because the productions contain a date field as part of the metadata, Plaintiffs can see the earliest and latest documents produced from each source, including which documents dated later than October 2004 have been produced, and can search for such documents by date. If you are unable to do so, please come back to us with specific questions.

- With respect to Plaintiffs' questions regarding the redactions of foreign information (Ltr. at 4-5), the redactions of foreign information were updated to comply with the Honorable Carol E. Higbee's order of July 16, 2004, on motions to compel, in the now-concluded consolidated Vioxx products liability litigation in New Jersey. (Tr. at 8-10, *In Re: Vioxx*, No. 816 (N.J. Super. Ct. Law Div. July 16, 2004).) As discussed at the December 5, 2011 meeting, the reasons for any remaining redactions are embossed on the redactions themselves. In addition to the redactions listed in your December 9, 2011 letter, the most frequent surviving redactions include personal information (such as home phone numbers), information that could identify the reporter of an adverse experience

(which must be redacted by federal regulation), and CMC (chemistry, manufacturing and control information).

- With respect to the discussion in your letter of General Objection No. 14 from the Responses and Objections of Defendant Merck & Co., Inc. to Plaintiffs' Steering Committee's First Request for Production of Documents to Defendant Merck & Co., Inc. (Ltr. at 5), Plaintiffs' description of Merck's non-use of General Objection No. 14 with respect to individual documents in productions Merck made is generally correct. However, Defendants have not undertaken a comprehensive review and state that there could have been instances where an entire request was objected to on the ground that plaintiffs could obtain the documents from another source more easily.

- With respect to your inquiry into productions made to the Department of Justice (Ltr. at 5), please note that we did not represent that the law firm of Paul Weiss "handled Merck's document production" to the DOJ, nor do we believe that such a representation would be accurate. All we have represented is that Paul Weiss acted as Merck's lead counsel in the DOJ investigation. As discussed below, your request for documents produced to the DOJ should be raised in a new document request pursuant to Rule 34. Defendants will meet and confer once such a document request has been served in the normal course of discovery and Defendants have had an opportunity to respond. As you are aware from our prior correspondence, motions to compel compliance with similar document requests have already been denied by this and other courts. (See Oct. 26, 2011 DeMasi Ltr. at 3-4.)

- With regard to your request for additional information concerning Merck's litigation holds (Ltr. at 5), Defendants maintain that this information is privileged.

- With respect to the search terms used in the products liability cases, Defendants did not agree at the December 5, 2011 meeting, as Plaintiffs claim (Ltr. at 6), to produce to Plaintiffs the search terms used in the products cases. Nevertheless, we will provide a description of the search process, which Mr. Cohen discussed in detail with you at our December 5, 2011 meeting. As he explained, during the process of collecting from office-based employees, the document custodians identified sources of documents that might have Vioxx documents. For those sources that were Vioxx-specific (such as email folders called "Vioxx" or "Vioxx hold"), 100% of the documents were moved into the human review queue. For those sources that were not Vioxx-specific, Defendants ran queries over the documents and moved the documents that were returned by the computer queries (and all attachments or other document "family members") into the human review queue. Originally, Defendants ran separate queries over the metadata and the text of the documents because

the database could not run a search over both types of data simultaneously. The search syntax was revised periodically as the database software was upgraded.

For sources that were not Vioxx-specific, the original metadata search was:

> Title LIKE 'OXX' OR Title LIKE 'cox' OR Title LIKE '966' OR Title LIKE '748,731' OR Title LIKE '663' OR Title LIKE '752,860' OR Title LIKE 'Osteo' OR Title LIKE 'Anky' OR Title LIKE 'Spond' OR Title LIKE 'NSAID'
>
> Title CONTAINS 'oxygenase or VIGOR or FitzGerald or Konstam or Mukherjee or Nissen or Topol or CLASS or Celebrex or Naproxen or Thromboxane or TX or Prostacyclin or PGIM or Bextra or aspirin or Rheumatoid or Arthritis or Gout or RA or OA'
>
> Conversation Topic LIKE 'OXX' OR Conversation Topic LIKE 'cox' OR Conversation Topic LIKE '966' OR Conversation Topic LIKE '663' OR Conversation Topic LIKE '748,731' OR Conversation Topic LIKE '752,860' OR Conversation Topic LIKE 'Osteo' OR Conversation Topic LIKE 'Anky' OR Conversation Topic LIKE 'Spond' OR Conversation Topic LIKE 'NSAID'
>
> Conversation Topic CONTAINS 'oxygenase or VIGOR or FitzGerald or Konstam or Mukherjee or Nissen or Topol or CLASS or Celebrex or Naproxen or Thromboxane or TX or Prostacyclin or PGIM or Bextra or aspirin or Rheumatoid or Arthritis or Gout or RA or OA'.

The original text search was:

> Viox* or cox* or cyclo* or fitz* or kons* or Prosta* or NSAID* or Class or Celebrex or celecoxib or ARCOXIA or Etor* or aspirin or MK-663* or MK-0663* or MK-966* or MK-0966* or Naproxen or Thromboxane or TX or TXA2/Prostacyclin or PGI* or MK-966 or MK-0966 or MK0966 or MK966 or rofecoxib or MK0663 or MK663 or CEOXX or Bextra or Valdecoxib or parecoxib or Gout or 748,731 or 752,860 or Mukherjee or Nissen or Topol or vigor or RA or OA or L-748,731 or L-752,860 or R:\cox* or (Rheum* near arthritis) or

> (osteo* near arthritis) or (Ank* near spon*) or (GI near outcome*) or (MK near 966) or (MK near 0966) or (MK near 663) or (MK near 0663).

In January 2003, the text search was revised to:

> Vigor or Vioxx or rofecoxib or MK-966 or MK-0966 or MK966 or MK0966 or coxib or cox or cox-1 or Cox-I or cox-2 or cox-II or NSAID or cyclooxygenase-2 or cyclooxygenase 2 or cyclooxygenase-II or cyclooxygenase-1 or cyclooxygenase 1 or cyclooxygenase-I or celebrex or celebra or celecoxib or Bextra or valdecoxib or parecoxib or naproxen or Naprosyn or Anaprox or Prexige or lumiracoxib or COX189 or (protocol and 88) or (protocol and 88C) or (Protocol and 89) or (study and 88) or (study and 88C) or (study and 89) or (protocol and 088) or (protocol and 088C) or (Protocol and 089) or (study and 088) or (study and 088C) or (study and 089) or (MK and 966) or (MK and 0966).

With respect to the collection methodology, the custodian was asked to identify places where paper or electronic Vioxx documents might be found. To the extent those locations were Vioxx–specific (such as email folders called "Vioxx"), the full contents of the location were put into the human review queue. Where those locations were not Vioxx-specific (such as Inbox, Sent Items, or Deleted Items folders), the documents that were found in a search designed to select Vioxx documents were put into the human review queue.

- Plaintiffs' description of Merck's productions of specific types of documents—as opposed to Vioxx documents from specific sources—is mostly correct. (Ltr. at 6.) To clarify, the vast majority of Merck's productions in the products liability cases were source-based productions (*e.g.*, Vioxx documents from the files of someone or some department). Where Merck agreed to produce a specific type of document, it carefully described what it was producing, and did not produce drafts, documents "relating to" the request type of document, etc. For example, Merck's production of press releases includes copies of the final press releases as released. This is not to say that Merck refused to produce draft Vioxx press releases; to the contrary, Merck produced many such drafts. It did so by producing the Vioxx documents from many locations likely to contain draft Vioxx press releases. This approach to discovery allowed for faster productions and helped everyone understand exactly what was being produced. Further, to be clear, Mr. Cohen did not recall the specific location from which counsel obtained and produced the annual reports, though, as Mr. Cohen stated, and consistent with the approach described in

        this paragraph, the annual report production (MRK-AAI) contains only the final versions of the annual reports.

- Next, with respect to your inquiry into what Investor Relations departmental documents are included within the productions (Ltr. at 6-7), Defendants confirm that they have produced Merck annual business briefings at Bates ranges MRK-ACU0000015-0389 and MRK-ACU0000406-0715 and Investor Relations and Analyst reports at Bates range MRK-SHAA0880704-0949. Additionally, Defendants have produced documents from the following custodians within the Investor Relations department: Laura Jordan at Bates range MRK-SAG0000001-065137 and Mary Redmond at Bates range MRK-SHAA0259441-0286323.

- With respect to Plaintiffs' request for clarification as to the metadata of documents produced from shared drives (Ltr. at 7), in general, the metadata of documents produced from shared drives and databases is consistent with the metadata of documents produced from an individual's files.

- With respect to the creation of privilege logs, as Mr. Cohen explained on December 5, 2011, the current privilege logs were created by Dechert, in close collaboration with HHR and in accordance with court rulings, and process, described by Mr. Cohen.

        *Eighth*, Plaintiffs seek further information regarding the production of voicemails. (Ltr. at 8.) As we have already explained, and as Mr. Cohen discussed on December 5, 2011, the production of voicemails was the subject of motion practice and argument in 2006 in the New Jersey Vioxx Litigation before Judge Higbee. During the relevant time period, Merck used the Octel 250 and 350 system for voicemail. This is an analog system on which only a limited number of voicemails can be kept by individual employees. In August 2006, before Judge Higbee, Plaintiffs' Liaison Counsel sought a preservation order. On September 8, 2006, Judge Higbee issued an order providing that "Merck and its employees shall securely preserve Vioxx-related voicemails" and "Merck has agreed to instruct employees throughout the United States to immediately stop leaving voicemails containing Vioxx information on the Merck voicemail system." *In Re: Vioxx Litig.*, No. 619 (N.J. Super. Ct. Law Div. Sept. 8, 2006). Thereafter, Plaintiffs' counsel sought a production of the voicemails preserved under this Order, and this production is included within the universal products production provided to you at MRK-AVA0000001-0017.

        *Ninth*, with respect to your inquiry into the expert materials contained within the productions (Ltr. at 8-9), Defendants confirm that all expert reports and deposition transcripts from the Consolidated ERISA litigation have been produced to Plaintiffs; in addition, certain expert materials from the products cases have been produced to you at Bates ranges MRK-ZAN0000001-0007 and MRK-PUBLIC0000001-2165.

Case 2:05-cv-02367-SRC-MAS   Document 338-1   Filed 06/11/12   Page 9 of 9 PageID: 16067

8

*Finally*, Plaintiffs seek several categories of documents not subject to the July 8, 2005 Order in this action, including "deposition and trial transcripts, expert reports, demonstratives, and expert materials produced in foreign Vioxx actions" (Ltr. at 1-2), documents produced to the DOJ (Ltr. at 5), backup tapes (Ltr. at 7), "hearing transcripts from Vioxx-related actions" (Ltr. at 8), SAS audit files (Ltr. at 8), expert materials (Ltr. at 8-9), videos of deposition and trial testimony (Ltr. at 9), and "documents that Merck collected or provided to anyone in connection with the preparation of the Report of the Honorable John S. Martin Jr." (Ltr. at 9). Such requests should be raised in new document requests pursuant to Rule 34. Upon receipt of any such requests, Defendants will respond in accordance with the Federal Rules of Civil Procedure.

Please do not hesitate to call me if you have any questions.

Very truly yours,

Karin DeMasi

Adam Wierzbowski, Esq.
   Bernstein Litowitz Berger & Grossmann LLP
      1285 Avenue of the Americas
         New York, NY 10019

Encls.

BY FEDEX

Copy w/encls. to:

Bill Gussman, Esq.
   Schulte Roth & Zabel LLP
      919 Third Avenue
         New York, NY 10022

BY FEDEX