# Exhibit 3

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, : | |
| *ex rel.* JOHN UNDERWOOD, : | |
| : | |
| Plaintiff, : | |
| v. : | CIVIL ACTION NO. 03-3983 |
| : | |
| GENENTECH, INC., : | |
| Defendant. : | |

**ORDER**

Now before me in this *qui tam* action are Defendant's Motion for a Protective Order *(Doc. No. 112)* and Relator's Cross-Motion to Compel *(Doc. No. 117)*, both arising from Relator's discovery request for documents "created in connection with any settlement discussions between the Government and Genentech." *(See Doc. No. 112 at 5.)* Because important policy reasons support protecting settlement communications, I will grant Defendant's Motion and deny Relator's Cross-Motion.

**I.  BACKGROUND**

For two years, Genentech and the Government negotiated a possible settlement of claims forming the basis of the instant action. *(See id. at 6.)* No settlement agreement was reached, and the Government also declined to intervene. *(Doc. No. 29.)* Relator has elected to proceed against Genentech, and I unsealed his *qui tam* Complaint on March 25, 2010. *(Doc. No. 62.)*

Relator has requested documents from Genentech created in connection with its settlement negotiations with the Government, including PowerPoint presentations created by both the Government and Genentech, letters and e-mails between the Government and Genentech in which those presentations are discussed, and letters providing damages

1

analyses. *(See Doc. No. 116 at 9.)* Genentech asks me to issue a Protective Order under Rule 26(c) that would bar the disclosure of these materials; Relator cross-moves to compel their production.

## II. DISCUSSION

The law recognizes the need to keep settlement communications confidential. Federal Rules of Evidence 408 and 410 preclude the admission at trial of communications made in compromise negotiations and plea discussions. Contrary to Relator's assertion that Rule 408 protects only a party's admission of liability during settlement negotiations, *(see Doc. No. 116 at 8)*, the Rule broadly encompasses "conduct or statements made in compromise negotiations *regarding the claim*." Fed. R. Evid. 408(a)(2) (emphasis added); see Dimino v. New York City Transit Author., 64 F. Supp. 2d 136, 161 (E.D.N.Y. 1999) ("The rule also protects admissions of facts made by parties during settlement negotiations, in order to allow parties a greater degree of honesty and, therefore, a greater ability to reach a compromise."); Frieman v. UsAir Group, Inc., 93-CV-3142, 1994 U.S. Dist. LEXIS 16994, at *29 (E.D. Pa. Nov. 23, 1994) ("The [Rule] does not exclude, but, rather, includes admissions of fact, as falling within the offers-of-compromise protection."). The material Relator seeks—PowerPoint presentations and letters analyzing facts and damages that were created in connection with settlement negotiations—contain "statements . . . regarding the claim." See Fed. R. Evid. 408(a)(2).

The Third Circuit and other courts have explained that Rule 408 is intended to "encourage freedom of discussion with regard to compromise." Affiliated Mfrs., Inc. v. Aluminum Co. of Amer., 56 F.3d 521, 526 (3d Cir. 1995); see also Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc., 332 F.3d 976, 980 (6th Cir. 2003) ("In order for

settlement talks to be effective, parties must feel uninhibited in their communications."). Indeed, some courts have recognized a settlement privilege. See, e.g., Goodyear, 56 F.3d at 983; Allen Cty. v. Reilly Indus., Inc., 197 F.R.D. 352, 353 (N.D. Ohio 2000).

    Although I will not create a privilege protecting settlement communications, I recognize the very strong policy reasons for maintaining the confidentiality of settlement negotiations. If parties fear that the substance of their settlement negotiations might be disclosed, they will not negotiate earnestly or candidly. This, in turn, will make settlements far less likely. The Government has made just this point, arguing that candid communication between investigated parties and the Department of Justice in *qui tam* actions is essential to the efficient resolution of these cases. *(See Doc. No. 137.)* If investigated parties withheld information from the DOJ during settlement negotiations for fear of later disclosure, "settlement negotiations would be truncated and active litigation would ensue in matters that may have been resolved had there been a more fulsome exchange of positions." *(Id. at 2.)*

    Relator has offered no convincing reason for disclosure. As Genentech and the Government point out, Relator has already received some seven million documents produced by Genentech to the DOJ in the course of the DOJ's investigations of the Company. *(Doc. No. 112 at 10; Doc. No. 137 at 2.)* Relator has not explained what information he might obtain from the settlement materials that is not available in the documents already provided.

    Courts have repeatedly acknowledged the desirability of encouraging settlements. See, e.g., Bradley v. Sebelius, --- F.3d ---, 2010 WL 3769132, at *5 (11th Cir. 2010) ("[T]here is a strong public interest in the expeditious resolution of lawsuits through

settlement."); Citizens for a Better Env't v. Gorsuch, 718 F.2d 1117, 1126 (D.C. Cir. 1983) ("Not only the parties, but the general public as well, benefit from the saving of time and money that results from the voluntary settlement of litigation. Thus, '[v]oluntary settlement of civil controversies is in high judicial favor.'" (citation omitted)).

Granting Relator's request would discourage settlements for no good reason. Accordingly, I will grant Genentech's Motion and deny Relator's.

**AND NOW**, on this 7th day of October, 2010, it is **ORDERED** that Defendant's Motion for a Protective Order *(Doc. No. 112)* is **GRANTED** and Relator's Cross-Motion to Compel *(Doc. No. 117)* is **DENIED**.

        **IT IS SO ORDERED.**

        */s/ Paul S. Diamond*

        **Paul S. Diamond, J.**

4