# CRAVATH, SWAINE & MOORE LLP

WORLDWIDE PLAZA
825 EIGHTH AVENUE
NEW YORK, NY 10019-7475

TELEPHONE: (212) 474-1000
FACSIMILE: (212) 474-3700

————
CITYPOINT
ONE ROPEMAKER STREET
LONDON EC2Y 9HR
TELEPHONE: 44-20-7453-1000
FACSIMILE: 44-20-7860-1150

WRITER'S DIRECT DIAL NUMBER

(212) 474-1059

STUART W. GOLD
JOHN W. WHITE
EVAN R. CHESLER
MICHAEL L. SCHLER
RICHARD LEVIN
KRIS F. HEINZELMAN
B. ROBBINS KIESSLING
ROGER D. TURNER
PHILIP A. GELSTON
RORY O. MILLSON
RICHARD W. CLARY
WILLIAM P. ROGERS, JR.
JAMES D. COOPER
STEPHEN L. GORDON
DANIEL L. MOSLEY
PETER S. WILSON
JAMES C. VARDELL, III
ROBERT H. BARON
KEVIN J. GREHAN
STEPHEN S. MADSEN
C. ALLEN PARKER
MARC S. ROSENBERG
SUSAN WEBSTER
DAVID MERCADO

ROWAN D. WILSON
CHRISTINE A. VARNEY
PETER T. BARBUR
SANDRA C. GOLDSTEIN
THOMAS G. RAFFERTY
MICHAEL S. GOLDMAN
RICHARD HALL
JULIE A. NORTH
ANDREW W. NEEDHAM
STEPHEN L. BURNS
KEITH R. HUMMEL
DANIEL SLIFKIN
ROBERT I. TOWNSEND, III
WILLIAM J. WHELAN, III
SCOTT A. BARSHAY
PHILIP J. BOECKMAN
ROGER G. BROOKS
WILLIAM V. FOGG
FAIZA J. SAEED
RICHARD J. STARK
THOMAS E. DUNN
MARK I. GREENE
SARKIS JEBEJIAN
DAVID R. MARRIOTT

MICHAEL A. PASKIN
ANDREW J. PITTS
MICHAEL T. REYNOLDS
ANTONY L. RYAN
GEORGE E. ZOBITZ
GEORGE A. STEPHANAKIS
DARIN P. MCATEE
GARY A. BORNSTEIN
TIMOTHY G. CAMERON
KARIN A. DEMASI
LIZABETHANN R. EISEN
DAVID S. FINKELSTEIN
DAVID GREENWALD
RACHEL G. SKAISTIS
PAUL H. ZUMBRO
JOEL F. HEROLD
ERIC W. HILFERS
GEORGE F. SCHOEN
ERIK R. TAVZEL
CRAIG F. ARCELLA
TEENA-ANN V. SANKOORIKAL
ANDREW R. THOMPSON
DAMIEN R. ZOUBEK
LAUREN ANGELILLI

TATIANA LAPUSHCHIK
ERIC L. SCHIELE
ALYSSA K. CAPLES
JENNIFER S. CONWAY
MINH VAN NGO
KEVIN J. ORSINI
MATTHEW MORREALE
J. WESLEY EARNHARDT
YONATAN EVEN
BENJAMIN GRUENSTEIN
JOSEPH D. ZAVAGLIA

————————

SPECIAL COUNSEL

SAMUEL C. BUTLER
GEORGE J. GILLESPIE, III

————————

OF COUNSEL

PAUL C. SAUNDERS

FILED UNDER SEAL—PURSUANT TO PROTECTIVE ORDER
CONTAINS CONFIDENTIAL INFORMATION

June 11, 2012

*In re Merck & Co., Inc. Securities, Derivative & ERISA Litigation*
The Consolidated Securities Action, No. 05-cv-2367

Dear Magistrate Judge Shipp:

Pursuant to this Court's order dated June 1, 2012, we write on behalf of Defendants (other than Dr. Scolnick) in the above-captioned action in response to Plaintiffs' May 25, 2012 letter (the "May 25 Letter") to the Court raising certain discovery disputes regarding Defendants' production.

## BACKGROUND

In this securities class action, Plaintiffs allege that Merck knowingly made materially false and misleading statements to the public about the cardiovascular safety of VIOXX® ("Vioxx"), which differed from Defendants' actual beliefs about Vioxx, and which allegedly artificially inflated the price of Merck stock between May 21, 1999, and September 29, 2004. Itself part of a consolidated multi-district shareholder litigation ("MDL"), this action is one of thousands of cases that were filed in the wake of Merck's voluntary withdrawal of Vioxx on September 30, 2004, including an MDL products liability litigation pending before the Honorable Eldon E. Fallon in the United States District Court for the Eastern District of Louisiana, and a consolidated products liability proceeding before the Honorable Carol E. Higbee in New Jersey Superior Court. Seventeen products liability cases concerning the cardiovascular safety of Vioxx were tried to jury verdicts, and the vast majority of the products liability cases have now been resolved. Recognizing that these other actions were "founded essentially on the same facts and circumstances that underpin the Securities Actions," Plaintiffs

sought and obtained discovery of more than 24 million pages of documents relating to Vioxx. (*See* Pls.' Mem. of Law in Supp. of Pls.' Mot. to Modify the PSLRA Disc. Stay 7, 17-19, May 9, 2005, ECF No. 67.)  That production is the result of years of collection from several thousand Merck employees, and includes Vioxx documents, broadly construed, from individual employees as well as non-custodial sources, such as regulatory files, clinical trial data and reports, study protocols, marketing and promotional materials, documents relating to relevant disease states, documents relating to competitor medicines, press releases, analyst reports, minutes from the meetings of the Board of Directors and committee meetings.  Indeed, this production has served as the core set of documents from which leading plaintiffs' counsel across the country have built and tried their cases.  Defendants have also produced to Plaintiffs over 640 deposition transcripts as well as expert reports and trial transcripts.

        In light of this massive production, Defendants spent several months—at Plaintiffs' request—working in good faith to assist Plaintiffs in understanding what had already been produced, including voluntarily providing Plaintiffs with a number of tools to facilitate their review.[1]  (*See* Ex. 1; Ex. 2.)[2]  Specifically, Defendants participated in three in-person meet-and-confer sessions with Plaintiffs (on October 3, 2011, November 18, 2011, and December 5, 2011), and Charles Cohen—the Merck attorney primarily responsible for gathering and producing the products production—met with Plaintiffs' counsel on December 5, 2011, to answer Plaintiffs' questions about the productions.  Defendants understood that the purpose of these discussions was to enable Plaintiffs to serve tailored document requests designed to obtain new categories of relevant documents not already contained within the production made to Plaintiffs.  Instead, on January 13, 2012, Plaintiffs served Defendants with 100 document requests with 130 additional subparts (the "Requests"), the vast majority of which sought categories of Vioxx documents already produced.  To the extent Plaintiffs' Requests sought new categories of relevant documents, Defendants agreed to conduct a reasonable search and to produce responsive, non-

---

[1] Plaintiffs' assertion that "Defendants have used their document production in prior, primarily personal injury, lawsuits involving VIOXX as a primary reason to limit their production of documents in this case" (Pls.' May 25 Ltr. at 3) is wrong.  Indeed, as provided above, it is Plaintiffs who sought the extensive production from the product liability cases because those cases are "founded essentially on the same facts and circumstances that underpin the Securities Actions." (*See supra* at 1-2.)  Nor does *In re Seroquel Products Liability Litigation*, 244 F.R.D. 650 (M.D. Fla. 2007), support Plaintiffs' assertion.  In *Seroquel*, the court discounted the breadth of the defendants' production because of "specific failings in [defendant's] chosen efforts to meet its discovery commitments." 244 F.R.D. at 661-62.  For instance, "attachments, including non verbal files, were not provided," "relevant emails were omitted," "[defendant's] deduplication method remains mysterious," and their "[p]roduction was tardy." *Id.* at 662.  None of those issues exists here, and the *Seroquel* court expressly limited its holding to "the context of th[at] case." *Id.* at 661 n.8.

[2] Citations in the form "Pls.' Ex. __" refer to exhibits submitted with Plaintiffs' May 25 Letter; citations to "Ex. __" refer to exhibits attached to the Declaration of Karin A. DeMasi in Support of Defendants' Response to Plaintiffs' May 25, 2012 Letter Regarding Discovery Disputes, dated June 11, 2012, submitted herewith.

privileged documents. Indeed, since receiving the Requests, Defendants have produced over 230,000 additional pages of documents in rolling productions that are ongoing.

Plaintiffs now move to compel with respect to six categories of documents. Two of those categories—audit files and shared drives—are not in dispute; from the outset, Defendants have agreed to conduct a reasonable search for, and to produce, responsive documents. Thus, there is no reason to burden the Court with those two categories. (*See infra* at 15.)  With respect to the remaining four categories, Defendants oppose Plaintiffs' motion to compel.

*First*, Plaintiffs are not entitled to "all documents" produced to the Department of Justice ("DOJ") in connection with the DOJ's grand jury investigation relating to Vioxx. Defendants have agreed to review any documents originated within the relevant time frame that were produced to the DOJ, and to produce non-privileged documents to the extent they are responsive to Plaintiffs' Requests.  Plaintiffs are *not* entitled, however, to ███████████ ████████████████████ (ii) communications with the DOJ or other documents created in the course of the investigation for the purpose of responding to, and ultimately resolving, the DOJ investigation, or (iii) documents sufficient to identify the Bates ranges, dates, search terms and custodians of any productions made to the DOJ. (*See infra* at 5-10.)

*Second*, Plaintiffs are not entitled to documents concerning the change in Merck's stock price on November 1, 2004—more than one month after the withdrawal of Vioxx and after the end of Plaintiffs' proposed class period.  Indeed, the Court has already dismissed claims based on the November 1, 2004 stock price decline because "as a matter of law, the [November 1, 2004] corrective disclosure . . . cannot form the basis of loss causation related to the fraud alleged in the Complaint." *See In re Merck & Co., Inc. Sec., Derivative, & ERISA Litig.*, Nos. 05-1151, 05-2367, 2011 WL 3444199, at *17-18, *29-34 (D.N.J. Aug. 8, 2011) (the "August 8, 2011 Opinion"). Thus, any such documents are not relevant to the issues in this case. (*See infra* at 11.)

*Third*, as a general matter, Plaintiffs are not entitled to documents dated later than December 31, 2004—a full quarter after the withdrawal of Vioxx and after the end of the proposed class period. This case involves what Defendants knew and believed *at the time they made* certain alleged misstatements between May 21, 1999, and September 29, 2004. Requiring Defendants to collect, review and produce documents dated many months or years later is unlikely to lead to admissible evidence and is certain to impose an enormous burden on Defendants, who have already produced tens of millions of pages from the relevant time period. In any event, Defendants have already provided Plaintiffs with a number of categories of documents dated in 2005 or later—including documents from key scientists and Vioxx-related files from 2005 and 2006, as well as transcripts from depositions and trials through the present. (*See infra* at 11-13.)

*Fourth*, Plaintiffs seek to compel Defendants to collect, review and produce documents from 59 individuals—many of whom have already had their documents collected, reviewed and/or produced. (*See* Pls.' May 25 Ltr. at 16-18.) Again, this issue is not genuinely in dispute.  In their Request No. 53, Plaintiffs identified 79 custodians whom they believe may have

documents relating to Vioxx. Defendants agreed to determine (i) whether each such custodian's documents have already been collected, reviewed and/or produced, and (ii) if not, whether such custodian would be reasonably likely to have discoverable information responsive to Plaintiffs' Requests. (Pls.' Ex. 1 at 24-28; Pls.' Ex. 5 at 13-14.) In April 2012, Defendants informed Plaintiffs of the status of approximately half of those custodians' files, and Defendants continue to work through the additional names. (Pls.' Ex. 5 at 13-14.) On April 20, 2012, Plaintiffs submitted to Defendants another list of 48 names of potential custodians of documents responsive to Request Nos. 51 and 52, relating to Vioxx data from the custodial files of statisticians and statistical programmers. (Pls.' Ex. 7 at 10.) Defendants committed to reviewing that list, and are doing so. (Pls.' Ex. 4 at 8.) Finally, in their May 25 Letter to the Court, Plaintiffs identified still another list of 59 custodians, which overlaps with the prior lists—and included, for the first time, an Appendix setting forth why Plaintiffs believe such custodians may have responsive documents. Defendants are now reviewing that list, as they have the prior two. In light of this new list, Defendants submit that the most efficient course is for the parties to meet and confer with respect to Plaintiffs' narrowed list of 59 custodians, leaving the Court nothing to decide at this time. If, after conferring in good faith, the parties have a genuine dispute regarding any of these custodians, the parties will submit a joint letter setting forth their positions in accordance with the Court's rules. (*See infra* at 14-15.)

       Finally, Plaintiffs raise the issue of the production of documents from back-up tapes, while acknowledging that such an issue is not ripe for the Court's decision because the parties are still meeting and conferring. (*See* Pls.' May 25 Ltr. at 4-5.) Plaintiffs omit, however, that Defendants have always agreed to conduct a reasonable search for and to produce responsive, non-privileged documents from already restored back-up tapes. That review and production is ongoing. With respect to documents on the many thousands of Merck's unrestored back-up tapes, Defendants have set forth in detail to Plaintiffs the reasons why such documents are not "reasonably accessible." (*See* Pls.' Ex. 4 at 5-6; Pls.' Ex. 5 at 6-7); *see also* Fed. R. Civ. P. 26(b)(2)(B) ("A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost."). (*See infra* at 15.)

### THE CLAIMS AT ISSUE

       Because the Court is familiar with the underlying allegations in this litigation, Defendants set forth additional detail regarding the claims only insofar as it is relevant to Plaintiffs' May 25 Letter.[3] The Court has already dismissed a number of Plaintiffs' claims and, thus, has narrowed the issues that are now the subject of discovery. *See generally In re Merck & Co., Inc. Sec., Derivative, & ERISA Litig.*, Nos. 05-1151, 05-2367, 2011 WL 3444199 (D.N.J. Aug. 8, 2011). In its August 8, 2011 Opinion, the Court held that Plaintiffs could not state a

---

[3] As set forth in Defendants' motion to dismiss the Fifth Amended and Corrected Consolidated Class Action Complaint, dated June 18, 2010, and in Defendants' Answer, dated October 7, 2011, Defendants vehemently deny Plaintiffs' allegations. Except as necessary to the Court's consideration of the pending discovery disputes, Defendants will not burden the Court with a point-by-point response to the many erroneous and misleading points and allegations contained in Plaintiffs' May 25 Letter and the Appendix attached thereto.

claim based on, among other things, alleged misstatements made after Vioxx was withdrawn
from the market on September 30, 2004, finding that the withdrawal constituted a full corrective
disclosure and, accordingly, striking Plaintiffs' proposed November 1, 2004 loss causation date.
*See id.* at *17-18, *29-34. The Court also held that the alleged misstatements asserted on
September 30, 2004, were not actionable as a matter of law. *See id.* at *17-18. Indeed, in their
motion for class certification, filed on April 10, 2012, Plaintiffs seek certification of a class only
for the period from May 21, 1999, through September 29, 2004. (*See* Pls.' Mem. of Law in
Supp. of Mot. for Class Certification, Appointment of Class Representatives, and Appointment
of Class Counsel, Apr. 10, 2012, ECF No. 319 at 1 (proposing a class period of May 21, 1999 to
September 29, 2004).) It is against this narrowed set of claims that Plaintiffs' motion to compel
must be evaluated.

LEGAL STANDARD

The right to obtain discovery "is not unlimited and may be circumscribed." *Bayer
AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999). A party seeking discovery bears the
burden of "showing that the information sought is relevant to the subject matter of the action and
may lead to the production of admissible evidence." *PSN Illinois, Inc. v. Abbott Labs., Inc.*, No.
11-1577, 2011 WL 5508624, at *2 (D.N.J. Nov. 9, 2011) (internal citations and quotation marks
omitted). Though relevance is a broad inquiry at the discovery stage, "the scope of discovery . . .
is not boundless." *Id.* Indeed, "a discovery request may be denied if [the Court] finds that there
exists a likelihood that the resulting benefits would be outweighed by the burden or expenses
imposed as a consequence of the discovery." *Id.*; *see also N.J. Mfrs. Ins. Grp. v. Electrolux, Inc.*,
CIV. A. 10-1952 WJM, 2011 WL 5117781, at * 2 (D.N.J. Oct. 26, 2011). Rule 26 specifies that
a court "must limit the frequency or extent of discovery . . . if it determines that . . . the discovery
sought is unreasonably cumulative or duplicative." Fed. R. Civ. P. 26(b)(2)(C); *see also Barnes
Found. v. Twp. of Lower Merion*, No. CIV. A. 96-0372, 1997 WL 255534, at *3 (E.D. Pa.
May 8, 1997) (denying motion to compel discovery where "plaintiff has obtained discovery
relevant to the present action through discovery in the state court action") (quoting Fed. R. Civ.
P. 26(b)(2)). Further, "courts should [limit discovery] where . . . the discovering party has
already had an ample opportunity to obtain the information in question . . . ." *Bowers v. Nat'l
Collegiate Athletic Ass'n*, CIV. A. 97-2600 JBS, 2008 WL 1757929, at *4 (D.N.J. Feb. 27,
2008); *see also Abbott Labs.*, 2011 WL 5508624, at *4 (denying motion to compel the
production of documents where plaintiff had the "opportunity to otherwise discover the
information sought").

ARGUMENT

I.    PLAINTIFFS ARE NOT ENTITLED TO "ALL DOCUMENTS" PRODUCED IN
      CONNECTION WITH ANY GOVERNMENT INVESTIGATION.

Plaintiffs seek all documents that Merck produced in connection with any
government investigation.[4] Although such Requests were overly broad on their face,[5]

---

[4] During the meet-and-confer process, Defendants proposed to define "government" as "any
United States investigatory body that conducted an investigation relating to Vioxx, including
Congressional committees, the DOJ, the Office of Inspector General of the Department of Health

Defendants nevertheless agreed to review any documents created within the relevant time frame that were produced to any governmental investigatory body, and to produce non-privileged documents to the extent they were responsive to Plaintiffs' myriad other Requests. (*See* Pls.' Ex. 4 at 7.) Defendants are in the process of conducting that review and producing such documents.

Plaintiffs now seek to compel three additional categories of documents, which relate specifically to the Vioxx investigation by the DOJ: ███████████████████████ ; (ii) communications with the DOJ or documents created for the purpose of responding to the DOJ's investigation; and (3) documents sufficient to identify the Bates ranges, dates, search terms used, and custodians of any productions made to the government. (*See* Pls.' May 25 Ltr. at 4.) As set forth below, Plaintiffs are not entitled to any of these categories of documents.

A.  ████████████████████████████████



and Human Services, the SEC, State Attorneys General, and State Medicaid Fraud Control Units." (Pls.' Ex. 4 at 6.) Plaintiffs have not objected to this definition.

[5] Faced with a similar request in the products liability MDL, Judge Fallon found requests which broadly sought discovery of the documents that Merck provided to the government, and which were not tailored to the claims at issue, to be improper. (*See* Pls.' Ex. 8 at 3-4.)

[6] *Cf. Wawrzynek v. Gliatech, Inc.*, No. Civ. A. 03-5346, 2004 WL 887414, ███ (E.D. Pa. Mar. 26, 2004) ████████████████████ *Cooper Hosp./Univ. Med. Ctr. v. Sullivan*, 183 F.R.D. 119, ███ (D.N.J. 1998) ████████████████████████████████████████████ *In re Linerboard*

. *See In re Steinhardt Partners, L.P.*, 9 F.3d 230,

(2d Cir. 1993) [7]

*See, e.g., Police and Fire Ret. Sys. of the City of Detroit v. SafeNet, Inc.*, No. 06 Civ. 5797, 2010 WL 935317,        (S.D.N.Y. Mar. 12, 2010)

*In re Leslie Fay Cos., Inc. Sec. Litig.*, 161 F.R.D. 274,       (S.D.N.Y.

*Antitrust Litig.*, 237 F.R.D. 373,        (E.D. Pa. 2006)

*See Wachtel v. Guardian Life Ins. Co.*, Nos. 01-4183, 03-1801, 2006 WL 1286188, at       (D.N.J. May 8, 2006)        *Shionogi Pharma, Inc. v. Mylan Pharm., Inc.*, No. 10-1077, 2011 WL 6651274, at       (D. Del. Dec. 21, 2011)

[7]        *See Diversified Indus., Inc. v. Meredith*, 572 F.2d 596,        (8th Cir. 1978).

*See In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289,        (6th Cir. 2002); *Permian Corp. v. United States*, 665 F.2d 1214,        (D.C. Cir. 1981).  The Ninth Circuit's recent decision in *In re Pacific Pictures Corp.*, No. 11-71844, 2012 WL 1640627 (9th Cir. May 10, 2012),        *Id.* at        Other Circuits have likewise not reached the precise question at issue here        *See, e.g., United States v. Massachusetts Inst. of Tech.*, 129 F.3d 681,        (1st Cir. 1997) (Boudin, J.) *In re Martin Marietta Corp.*, 856 F.2d 619,        (4th Cir. 1988)        *Dellwood Farms, Inc. v. Cargill, Inc.*, 128 F.3d 1122,        (7th Cir. 1997) (Posner, J.)        *In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179,        (10th Cir. 2006)        *Genentech, Inc. v. United States Int'l Trade Comm'n*, 122 F.3d 1409, 1417 (Fed. Cir. 1997) (finding waiver based on disclosure that was merely "the result of inadequate screening procedures").

1995) ███████████████████████████████████████████

██████████████; *Enron Corp v. Borget*, No. 88 Civ. 2828, 1990 WL 144879, ██████ (S.D.N.Y. Sept. 22, 1990) (upholding privilege where defendant had "specifically reserved all applicable legal privileges and rejected any implication of waiver from [its] submission"); *cf. United States v. Wilson*, 493 F. Supp. 2d 348, ██████ (E.D.N.Y. 2006) ████████████████████████████████
██████████████████ *Teachers Ins. and Annuity Ass'n of Am. v. Shamrock Broad. Co.*, 521 F. Supp. 638, 644-45 (S.D.N.Y. 1981) (noting that "disclosure to the [government] should be deemed to be a complete waiver of the attorney-client privilege unless the right to assert the privilege in subsequent proceedings is specifically reserved at the time the disclosure is made").  District courts within other circuits have taken a similar approach.[8]



        Further, Merck did not provide documents to the government "despite the absence of an established privilege[]."  (Pls.' May 25 Ltr. at 8 (quoting *Westinghouse*, 951 F.2d at 1426).)
████████████████████████████████████████████████████
████████████████████████████████████  Whatever the state of the law at the time *Westinghouse* was decided more than two decades ago, it can hardly be said today that there is an "absence of an established privilege" protecting documents disclosed to the government under circumstances like those here.  While the Third Circuit in *Westinghouse* did express reservations about the doctrine of selective waiver, a carefully drawn exception ensures that parties under government investigation are not faced with a stark choice between disclosure to the government—and, consequently, every conceivable private litigant—and no disclosure at all. Indeed, the bright-line waiver rule that Plaintiffs advocate would only discourage cooperation

---

[8] *See, e.g., Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, 244 F.R.D. 412, ██████ (N.D. Ill. 2006) ██████

████████████████████████████████ *In re M & L Bus. Mach. Co., Inc.*, 161 B.R. 689, ██████ (D. Colo. 1993) ██████████████████████████████████████
████████████████████████████████████

with the government and would ultimately obstruct the search for truth and dissemination of information to the public—the very goals cited by the Third Circuit in *Westinghouse*. Thus, Plaintiffs' motion to compel the production of Merck's privileged documents should be denied.

      B.      <u>Plaintiffs Are Not Entitled to Communications With the Government or Documents Created for the Purpose of Responding to Any Government Investigation.</u>

      Plaintiffs likewise are not entitled to "communications with the government, or documents created for the purpose of responding to any government investigation." (Pls.' May 25 Ltr. at 8.) Indeed, during the meet-and-confer process, the parties agreed (as described by Plaintiffs in their May 25 Letter) that Plaintiffs' Requests sought only Merck documents produced to the government that are responsive to Plaintiffs' Requests. (*See* Pls.' May 25 Ltr. at 6; Pls.' Ex. 7 at 8.) Defendants confirmed this understanding in their letter dated May 14, 2012. (Pls.' Ex. 4 at 7.) Thus, Defendants did not understand this to be a disputed issue until Plaintiffs raised it in their May 25 Letter—without ever having conferred further with Defendants.

      In any event, Plaintiffs are not entitled to such documents, as this Court has already ruled with respect to a similar request in the Vioxx-related ERISA litigation. *First*, a party's communications with the government during the course of a grand jury investigation are protected from discovery by Federal Rule of Criminal Procedure 6(e) as matters occurring before a grand jury. *See, e.g.*, *In re Grand Jury Matter*, 697 F.2d 511, 512 (3d Cir. 1982) ("Rule 6(e)(2) applies to anything which may reveal what occurred before the grand jury") (internal quotation marks omitted). The scope of Rule 6(e) is "necessarily broad" and encompasses anything that would reveal, among other things, "the strategy or direction of the investigation." *Fund for Constitutional Gov't v. Nat'l Archives & Records Serv.*, 656 F.2d 856, 869-70 (D.C. Cir. 1981). Here, revealing communications between Merck and the DOJ would necessarily reveal the direction and strategy of the grand jury investigation. Such discovery, therefore, is prohibited. *See In re Milk Prods. Antitrust Litig.*, 84 F. Supp. 2d 1016, 1026-27 (D. Minn. 1997) (denying motion to compel disclosure of documents on grounds that disclosure would reveal the "direction" of the investigation in violation of Rule 6(e) (quoting *In re Grand Jury Proceedings Relative to Perl*, 838 F.2d 304, 307 (8th Cir. 1988)), *aff'd on other grounds*, 195 F.3d 430 (8th Cir. 1999).

      *Second*, communications exchanged in the course of negotiating a resolution are protected from disclosure by the settlement privilege. *See Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 979-83 (6th Cir. 2003) (affirming, on basis of settlement privilege, district court's denial of motion to compel discovery relating to settlement negotiation); *Cook v. Yellow Freight Sys., Inc.*, 132 F.R.D. 548, 554-55 (E.D. Cal. 1990) (denying, on basis of settlement privilege, motion to compel production of documents relating to settlement discussion), *overruled on other grounds by Jaffee v. Redmond*, 518 U.S. 1 (1996). Such a privilege ensures that parties are able to have frank and open negotiations with the government, free of any concern that such communications might later be discoverable by third parties. *See Ford Motor Co. v. Edgewood Props., Inc.*, 257 F.R.D. 418, 424 (D.N.J. 2009) (observing that the disclosure of confidential discussions with the government "could tend to have a chilling effect on negotiations between government entities . . . and potentially

responsible parties"); *Lesal Interiors, Inc. v. Resolution Trust Corp.*, 153 F.R.D. 552, 561-64 (D.N.J. 1994) (denying motion to compel discovery of settlement communications based on the settlement privilege). Thus, district courts within this Circuit recognize the "very strong policy reasons for maintaining the confidentiality of settlement negotiations." *United States ex. rel. Underwood v. Genentech, Inc.*, No. 2:03-CV-03983, slip op. at 1, 3 (E.D. Pa. Oct. 7, 2010) ("If parties fear that the substance of their settlement negotiations might be disclosed, they will not negotiate earnestly or candidly. This, in turn, will make settlements far less likely. . . . If investigated parties withheld information from the [government] during settlement negotiations for fear of later disclosure, settlement negotiations would be truncated and active litigation would ensue in matters that may have been resolved had there been a more fulsome exchange of positions." (internal quotation marks omitted)), attached hereto as Ex. 3. Indeed, it was precisely on these grounds that this Court refused to compel the production of certain communications between Merck and the DOJ when plaintiffs in the related Vioxx-ERISA action sought to compel their production. (Jan. 10, 2011 Order after Telephonic Conference before M.J. Shipp.) The Court should follow its own prior ruling here.

Nor does the resolution of the DOJ investigation negate these protections. Rather, grand jury matters and settlement negotiations remain secret even after a resolution is reached. *See Douglas Oil Co. v. Petrol Stops Nw.*, 441 U.S. 211, 222 (1979) (explaining that disclosure of grand jury material to third parties is permitted only if "the material they seek is needed to avoid a possible injustice in another judicial proceeding, . . . the need for disclosure is greater than the need for continued secrecy, and . . . their request is structured to cover only material so needed"); *Goodyear*, 332 F.3d at 978-82 (affirming denial of motion to compel production of statements made in settlement discussions that had occurred at least one year earlier, because "some future third party" might use the information discussed to the detriment of the negotiating parties). Thus, even after the investigation has ended, the materials remain protected from disclosure.

    C.    <u>Plaintiffs Are Not Entitled to Bates Ranges, Dates, Search Terms Used, and Custodians of Any Productions Made to the Government.</u>

Finally, Plaintiffs seek Merck documents sufficient to identify the Bates ranges, dates, search terms used, and custodians of any productions made to the government. (Pls.' May 25 Ltr. at 9.) Such documents are protected from disclosure for the same reasons set forth above. Such a production would allow Plaintiffs essentially to recreate the set of documents that Merck provided to the DOJ and thereby reveal the scope and direction of the investigation undertaken by the District of Massachusetts grand jury. Such an inquiry, which serves no legitimate purpose in discovery here, is plainly prohibited. *See, e.g., Application of State of Cal.*, 195 F. Supp. 37, 40 (D.C. Pa. 1961) (denying motion to disclose "a list of the documents requested by the Government to be inspected by the Grand Jury" because it would "indirectly . . . upset the secrecy of the grand jury") (internal citations and quotation marks omitted); *In re Sealed Case*, 801 F.2d 1379, 1381 (D.C. Cir. 1986) (Scalia, J.) ("Disclosure of which documents the grand jury considered reveals, at the very least, the direction of the grand jury's investigation and the names of persons involved, and thus falls within Rule 6(e)(2)."). Permitting Plaintiffs to reconstruct the grand jury investigation through Bates ranges, dates, search terms, and custodians—under the guise of "clarify[ing] the overlap" between that production and the one here (Pls.' May 25 Ltr. at 9)—would plainly violate Rule 6(e) and would

serve no purpose here, where Defendants have already agreed to produce responsive, non-privileged documents from the set of materials produced to the government.

II.     PLAINTIFFS ARE NOT ENTITLED TO DOCUMENTS CONCERNING THE
        DECLINE IN MERCK'S STOCK PRICE ON NOVEMBER 1, 2004.

        Plaintiffs seek to compel the production of documents, including "all discussions, Communications or analysis(es)," concerning the change in Merck's stock price following the publication of the November 1, 2004 *Wall Street Journal* article. (*See* Pls.' May 25 Ltr. at 9.) This Court's own rulings, however, render documents relating to the change in Merck's stock price on November 1, 2004, irrelevant. In its decision on Defendants' motion to dismiss, the Court held that "as a matter of law, the [November 1, 2004] corrective disclosure . . . cannot form the basis of loss causation related to the fraud alleged in the Complaint." *In re Merck*, 2011 WL 3444199, at *31. Indeed, Plaintiffs' May 25 Letter and their motion for class certification, in which they seek to certify the class period of May 21, 1999, through September 29, 2004, acknowledge that the Court has dismissed November 1, 2004 as a loss causation date. (*See* Pls.' May 25 Ltr. at 10; Pls.' Mem. of Law in Supp. of Mot. for Class Certification, Appointment of Class Representatives, and Appointment of Class Counsel at 4 n.3, April 10, 2012, ECF No. 319.) "[R]ulings granting dispositive motions . . . define, and narrow, the scope of permissible discovery." *Breslin v. Dickinson Tp.*, No. 1:09-CV-1396, 2011 WL 3292924, at *7 (M.D. Pa. Aug. 1, 2011). Accordingly, Plaintiffs are not entitled to documents concerning the decline in Merck's stock price on November 1, 2004.

        Further, Plaintiffs' assertion that "internal Merck documents, including its communications with market analysts, that discussed the November 1, 2004 article and the article's impact on the market and Merck's stock price" are "potentially relevant to proving the Defendants' scienter" is wrong. (Pls.' May 25 Ltr. at 10.) The issue in this case is what Defendants knew and believed at the time they made the alleged misstatements *during* the class period—not their opinions regarding the November 1, 2004 article.

III.    THE RELEVANT TIME PERIOD FOR THE PRODUCTION OF DOCUMENTS
        RESPONSIVE TO THE MAJORITY, IF NOT ALL, OF PLAINTIFFS' REQUESTS IS
        JANUARY 1, 1998 THROUGH SEPTEMBER 30, 2004, AND PLAINTIFFS ARE NOT
        ENTITLED TO DOCUMENTS DATED AFTER DECEMBER 31, 2004.

        Plaintiffs next seek to compel the production of documents dated many years after the end of the proposed class period—in many cases "to the present." (Pls.' May 25 Ltr. at 10-16.) Defendants maintain that the appropriate date range for the production of documents in this case is January 1, 1998, through September 30, 2004, based on the allegations in the Complaint, the claims sustained by the Court on Defendants' motion to dismiss, and Plaintiffs' proposed class period in their motion for class certification. The pertinent issue in this case is what Defendants knew and believed at the time they made the alleged misstatements between May 21, 1999, and September 29, 2004, that are the subject of Plaintiffs' allegations. However, in the spirit of compromise, Defendants have offered to produce responsive, non-privileged documents dated through December 31, 2004—a full quarter after the end of the proposed class period. (*See* Pls.' May 25 Ltr. at 11.) That offer is more than reasonable. *See Stuebler v. Xcelera.com, Inc.*, CIV.A. 00-11649-RWX, 2006 WL 1888323, at *1 (D. Mass. July 10, 2006) (denying plaintiffs'

motion to compel "the production of documents for a period more than two years after the end of the class period" and finding that defendants' production of documents "five months after the close of the class period is . . . reasonable").

Plaintiffs have identified no legitimate basis for requiring Defendants to undertake a time-consuming, expensive, and burdensome search for documents dated many months—indeed, years—after the close of the putative class period.[9]  Indeed, courts routinely limit the temporal scope of discovery requests that are "overbroad as to the time period." *Barkley v. Olympia Mortg. Co.*, 04-CV-875, 2007 WL 656250, at *5 (E.D.N.Y. Feb. 27, 2007).  Though some courts permit limited post-class period discovery, they generally decline to do so where, as here, a party has already received a multitude of documents.  That is because "[a] voluminous prior production makes it considerably more likely that further discovery will be duplicative." *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, 02 C 5893, 2006 WL 3445742, at *3 (N.D. Ill. Nov. 22, 2006) (affirming magistrate's denial of motion to compel discovery of post-class period documents where "plaintiffs have already received over four million pages of documents, including thousands of documents from the post-Class Period").[10]

---

[9] Plaintiffs try to justify their motion to compel documents dated "to the present" by asserting that "numerous important events occurred after December 31, 2004 . . . that are highly relevant to Plaintiffs' claims" and citing to a series of publications dated in 2005 and later. (Pls.' May 25 Ltr. at 11-12.)  These articles—certain of which are self-serving, postmortem articles co-authored by plaintiff-side experts in the products liability cases—are not "important," "highly relevant" events.  Instead, as noted in the author disclosures contained in those articles, they are merely summaries of those paid experts' trial testimony and reports in the product liability cases (the complete transcripts of which have all been produced to Plaintiffs).  The central factual issue in this case involves statements made by Defendants between May 21, 1999, and September 30, 2004—not the later-published views of paid experts many years later.

[10] The cases Plaintiffs cite in support of their proposition that "courts routinely hold that the start and end dates of a class period should not dictate a defendant's production" are inapposite. (Pls.' May 25 Ltr. at 11.)  For example, *Nairobi Holdings Ltd. v. Brown Brothers Harriman & Co.*, 02 CIV. 1230, 2005 WL 742617 (S.D.N.Y. Mar. 18, 2005), involved an *individual* plaintiff's suit—not a class action in which a finite class period had been defined.  Further, Plaintiffs' citation to *Owens v. Sprint/United Management Co.* conveniently omits the portion of the quotation in which the court limits its statement that "discovery of information both before and after the liability period . . . may be relevant" to "Title VII lawsuit[s]." 221 F.R.D. 649, 655 (D. Kan. 2004).  Indeed, courts in this district have noted that "[c]ases examining the scope of discovery in a Title VII action [generally] permit discovery for a time period that predates the plaintiff's claims." *Bell v. Lockheed Martin Corp.*, 270 F.R.D. 186, 193 (D.N.J. 2010), *aff'd*, CIV. 08-6292, 2010 WL 3724271, at *194 (D.N.J. Sept. 15, 2010).  Finally, citing to *In re Control Data Corp. Sec. Litig.*, No. 3-85-1241, 1988 WL 92085 (D. Minn. Feb. 22, 1988), Plaintiffs fail to mention that the court found 11 of the plaintiffs' document requests to be overbroad, and judicially narrowed the relevant time period for those requests to conclude at the end of the next quarter following the class period, just as Defendants have offered to do here. *Id.* at *4, *8.

Moreover, notwithstanding that the relevant time period should end on September 30, 2004, Defendants have in fact already produced myriad responsive documents from 2005, 2006, and later.  Without conceding the relevance of any specific post-withdrawal event, Defendants have taken a reasonable and pragmatic approach to documents post-dating the withdrawal of Vioxx in September 2004.  For example:

- Defendants' production includes many documents created through October 14, 2004; such productions are more than adequate in many areas, such as sales and marketing of Vioxx, which effectively ceased upon the withdrawal on September 30, 2004.

- Defendants have produced more than 275,000 documents dated later than October 14, 2004, including documents from many key science and regulatory sources.  For example, Defendants have produced regulatory submissions to the FDA and to European regulators at least through early 2007.

- Defendants have produced documents from key scientists with varying end dates, including several, such as Dr. Reicin's, ending in 2006.  Defendants likewise produced post-2004 documents from, for example, Bettina Oxenius and Thomas Cook, regarding the analysis of the APPROVE trial and its extension.

- Defendants produced more than 66,000 documents dated later than October 14, 2004, from Merck regulatory affairs personnel such as Ned Braunstein and Philip Huang.

- Defendants have produced all adjudications of clinical trial adverse CV experiences, as well as post-marketing adverse event reports—without any date restriction.

- At Plaintiffs' request, Defendants have agreed to produce post-2004 Board minutes and communications among certain custodians relating specifically to Raymond Gilmartin's departure from Merck on May 5, 2005.

- Defendants have agreed to produce, through the present, documents responsive to Request Nos. 1-8, which include deposition and trial testimony and exhibits.

Thus, Plaintiffs already have myriad documents from the post-2004 time period, and can easily determine what they have because Defendants have produced the documents in electronically searchable form with metadata that includes a date field.  Plaintiffs have offered no legitimate reason to impose upon Defendants the enormous burden and expense of going back to the thousands of Merck employees from whom documents have already been collected to determine whether they have any additional responsive documents that originated in 2005 or after.  Nor are such searches reasonably likely to lead to the discovery of admissible evidence that is not duplicative or cumulative of what has already been produced.  The time, expense, and burden that will certainly be required to search for and produce additional post-2004 documents far outweigh whatever speculative benefit this monumental task could possibly generate.

IV.   DEFENDANTS ARE PERFORMING A REASONABLE SEARCH IN RESPONSE TO
      PLAINTIFFS' REQUESTS, INCLUDING REVIEWING THE CUSTODIANS
      PLAINTIFFS HAVE IDENTIFIED IN THEIR REQUESTS AND SUBSEQUENT
      LETTERS.

            Plaintiffs baldly assert that "Defendants have repeatedly refused to agree to search
the files of additional Merck custodians." (Pls.' May 25 Ltr. at 3.)  That is flatly untrue.  To date,
Defendants have received three different lists of potential custodians from Plaintiffs:  (i) a list of
79 individuals identified in Plaintiffs' Request No. 53, (ii) a list of 48 statisticians identified by
Plaintiffs' in a letter on April 20, 2012, and (iii) a "limited" list of 59 individuals identified
(without prior notice to Defendants) in Plaintiffs' May 25 Letter and accompanying Appendix A.
With respect to both (i) and (ii), Defendants previously agreed to review the list of individuals to
determine which have already been the subject of collection, review, and production, and which
custodians might be appropriate for additional collection, review and—if responsive, non-
privileged documents exist—production.  As Defendants have informed Plaintiffs, many of the
individuals on Plaintiffs' various lists have already been the subject of a reasonable collection
and review, and where responsive, non-privileged documents exist, they have been produced.
For example, contrary to Plaintiffs' assertion (Pls.' May 25 Ltr. at 17), documents from the
custodial files of three individuals listed in Appendix A have already been produced to
Plaintiffs.[11]  Additionally, Defendants have already informed Plaintiffs that at least 12
individuals listed in Appendix A have been the subject of a reasonable search and collection, and
Defendants are reviewing those custodians' documents for responsiveness to Plaintiffs'
Requests.  (See Pls.' Ex. 5 at 13-14; Pls.' Ex. 4 at 9-10.)  Similarly, of the original list of 79
custodians in Plaintiffs' Request No. 53, Defendants informed Plaintiffs that 34 had already been
the subject of a collection, search and—where non-privileged responsive documents existed—
production.  (Pls.' Ex. 5 at 13.)  Further, Defendants have begun searching and collecting
documents from additional custodians, including individuals in lists (i) and (ii) above, whose
documents have not been previously produced to Plaintiffs.  Defendants do not, therefore,
understand the parties to be in dispute on this issue.

            Given that Plaintiffs have now narrowed their various lists of potential custodians
to the 59 individuals identified in Appendix A, and given that Plaintiffs have now—for the first
time—articulated why they believe these custodians may have documents likely to lead to the
discovery of admissible evidence, Defendants propose that the most productive course is for the
parties to meet and confer with respect to the list of 59 potential custodians to attempt to agree
upon what additional custodial searches are appropriate.  Such a meeting is plainly necessary; for
example, one of the individuals that Plaintiffs specifically mention in their May 25 Letter and
Appendix A, Dr. Elizabeth Seidenberg, has no custodial file to produce.  (Pls.' May 25 Ltr.
at 17.)  Dr. Seidenberg left Merck in March 2000—more than a decade ago, and before the start
of any litigation relating to Vioxx.  Defendants have performed a reasonable search to determine
whether any responsive, custodial documents exist, but did not discover any such documents.
Defendants believe that the parties are likely to benefit from good faith negotiations with respect
to the 59 potential custodians on Plaintiffs' latest list.  If, after conferring in good faith, the

---

[11]  Defendants have produced documents to Plaintiffs from the files of Qinfen Yu, Hongwei
Wang, and the Vioxx Product Development Team, each of which is listed in Appendix A.

parties have a genuine dispute regarding any of these custodians, the parties will submit a joint letter setting forth their positions in accordance with the Court's rules.

## V.      THE OTHER ISSUES PLAINTIFFS RAISE ARE NOT IN DISPUTE.

Plaintiffs' May 25 Letter raises three other issues, none of which is in dispute or requires the Court's attention.

*First*, Plaintiffs move to compel the production of SAS audit files. (Pls.' May 25 Ltr. at 18-19.) While Defendants maintain that Plaintiffs' Request for "all" audit files is overly broad and unduly burdensome, Defendants have nonetheless confirmed that "Defendants are currently conducting a search for SAS audit files," and they will produce any SAS audit files collected on a rolling basis. (Pls.' Ex. 5 at 11.)

*Second*, Plaintiffs move to compel the production of responsive documents from Merck's shared drives and databases. (Pls.' May 25 Ltr. at 19.) Again, Defendants have agreed to search such files, and are doing so. Indeed, Defendants made clear at the March 15 Meet-and-Confer and confirmed in their May 14, 2012 letter to Plaintiffs that "Defendants . . . will conduct a reasonable search for documents responsive to the Requests, and will assess with respect to each Request to what extent a reasonable search includes any shared drive or database." (Pls.' Ex. 4 at 6.)

Further, Plaintiffs mischaracterize Defendants' prior search for and collection of documents from shared drives and databases, asserting that "Merck's prior custodian-based searches did not include searches of 'shared drives or databases to which the individual [custodians] may have [had] access.'" (Pls.' May 25 Ltr. at 3.) As Defendants have explained to Plaintiffs, *custodial* file collection and production did not (by definition) include shared drives and databases. Defendants' search and collection *included many shared drives and databases*. In fact, Defendants have produced to Plaintiffs documents from numerous shared drives and databases, including the VIOXX NDA, CLIC (the Clinical Literature Information Center database), KMDR (Knowledge Management Document Repository), and NWAES (Merck's adverse event report database), among numerous others, which are all listed in the index of the productions made to Plaintiffs as of October 26, 2011, the date Defendants provided the index to Plaintiffs. (*See* Ex. 2 at 4 & enclosure.)

*Third*, Plaintiffs' May 25 Letter raises the issue of the production of documents from back-up tapes, while acknowledging that there is no issue for the Court to resolve. As set forth above, the parties are meeting and conferring with respect to the reasons why documents located on unrestored back-up tapes are not "reasonably accessible." Fed. R. Civ. P. 26(b)(2)(B); *See Major Tours, Inc. v. Colorel*, Civ. No. 05-3091 (JBS/JS), 2009 WL 3446761, at *2-3 (D.N.J. Oct. 20, 2009), *aff'd*, 720 F. Supp. 2d 587 (D.N.J. 2010) (holding that e-mails stored on backup tapes were not reasonably accessible because of "the nature of defendants' storage media" and "the substantial burden and cost to retrieve the e-mails"). And Defendants have always agreed to conduct a reasonable search for, and to produce, responsive, non-privileged documents from already restored back-up tapes. That search and production is ongoing.

<u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' motion to compel the production of certain categories of documents should be denied in its entirety.

Respectfully submitted,

Karin A. DeMasi

Honorable Michael A. Shipp, U.S.M.J.
    United States District Court
        District of New Jersey
            Martin Luther King, Jr. Federal Building
            & U.S. Courthouse
                50 Walnut Street
                    Newark, NJ 07101

VIA ELECTRONIC FILING

Copies to:

David A. P. Brower, Esq.
    Brower Piven
        A Professional Corporation
            488 Madison Avenue, Eighth Floor
                New York, New York 10022

Salvatore J. Graziano, Esq.
    Bernstein Litowitz Berger & Grossmann LLP
        1285 Avenue of the Americas
        New York, NY 10019

Mark Levine, Esq.
    Stull, Stull & Brody
        6 East 45th Street, 5th Floor
            New York, NY 10017

Richard H. Weiss, Esq.
    Milberg LLP
        One Pennsylvania Plaza
            New York, NY 10119

Paul B. Brickfield, Esq.
    Brickfield & Donahue
        70 Grand Avenue
            River Edge, NJ 07661

James E. Cecchi, Esq.
    Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein
        5 Becker Farm Road
            Roseland, NJ 07068

Alfred C. Decotiis, Esq.
    Decotiis, Fitzpatrick & Cole LLP
        Glenpointe Centre West
            500 Frank W. Burr Boulevard
                Teaneck, NJ 07666

William H. Gussman, Jr., Esq.
    Schulte Roth & Zabel LLP
        919 Third Avenue
            New York, NY 10022

Eric S. Parnes, Esq.
    Hughes Hubbard & Reed LLP
        1775 I Street, NW
            Washington, DC 20006

BY EMAIL PDF