# CRAVATH, SWAINE & MOORE LLP

STUART W. GOLD
JOHN W. WHITE
EVAN R. CHESLER
MICHAEL L. SCHLER
RICHARD LEVIN
KRIS F. HEINZELMAN
B. ROBBINS KIESSLING
ROGER D. TURNER
PHILIP A. GELSTON
RORY O. MILLSON
FRANCIS P. BARRON
RICHARD W. CLARY
WILLIAM P. ROGERS, JR.
JAMES D. COOPER
STEPHEN L. GORDON
DANIEL L. MOSLEY
PETER S. WILSON
JAMES C. VARDELL, III
ROBERT H. BARON
KEVIN J. GREHAN
STEPHEN S. MADSEN
C. ALLEN PARKER
MARC S. ROSENBERG
SUSAN WEBSTER

DAVID MERCADO
ROWAN D. WILSON
CHRISTINE A. VARNEY
PETER T. BARBUR
SANDRA C. GOLDSTEIN
THOMAS G. RAFFERTY
MICHAEL S. GOLDMAN
RICHARD HALL
JULIE A. NORTH
ANDREW W. NEEDHAM
STEPHEN L. BURNS
KEITH R. HUMMEL
DANIEL SLIFKIN
ROBERT I. TOWNSEND, III
WILLIAM J. WHELAN, III
SCOTT A. BARSHAY
PHILIP J. BOECKMAN
ROGER G. BROOKS
WILLIAM V. FOGG
FAIZA J. SAEED
RICHARD J. STARK
THOMAS E. DUNN
MARK I. GREENE
SARKIS JEBEJIAN

WORLDWIDE PLAZA
825 EIGHTH AVENUE
NEW YORK, NY 10019-7475

TELEPHONE: (212) 474-1000
FACSIMILE: (212) 474-3700

———

CITYPOINT
ONE ROPEMAKER STREET
LONDON EC2Y 9HR
TELEPHONE: 44-20-7453-1000
FACSIMILE: 44-20-7860-1150

WRITER'S DIRECT DIAL NUMBER

(212) 474-1422

DAVID R. MARRIOTT
MICHAEL A. PASKIN
ANDREW J. PITTS
MICHAEL T. REYNOLDS
ANTONY L. RYAN
GEORGE E. ZOBITZ
GEORGE A. STEPHANAKIS
DARIN P. MCATEE
GARY A. BORNSTEIN
TIMOTHY G. CAMERON
KARIN A. DEMASI
LIZABETHANN R. EISEN
DAVID S. FINKELSTEIN
DAVID GREENWALD
RACHEL G. SKAISTIS
PAUL H. ZUMBRO
JOEL F. HEROLD
ERIC W. HILFERS
GEORGE F. SCHOEN
ERIK R. TAVZEL
CRAIG F. ARCELLA
TEENA-ANN V. SANKOORIKAL
ANDREW R. THOMPSON
DAMIEN R. ZOUBEK

LAUREN ANGELILLI
TATIANA LAPUSHCHIK
ERIC L. SCHIELE
ALYSSA K. CAPLES
JENNIFER S. CONWAY
MINH VAN NGO
KEVIN J. ORSINI
MATTHEW MORREALE
J. WESLEY EARNHARDT
YONATAN EVEN
BENJAMIN GRUENSTEIN
JOSEPH D. ZAVAGLIA

———

SPECIAL COUNSEL

SAMUEL C. BUTLER
GEORGE J. GILLESPIE, III

———

OF COUNSEL

PAUL C. SAUNDERS

August 10, 2012

*In re Merck & Co., Inc. Securities, Derivative & ERISA Litigation*
The Consolidated Securities Action, No. 05-CV-02367

Dear Magistrate Judge Waldor:

   We represent Defendants (other than Dr. Scolnick) in the above-captioned action, and write in response to Plaintiffs' August 8, 2012 letter (the "August 8 Letter") to the Court regarding the parties' dispute over the number and scope of depositions to be taken in this case, in which Plaintiffs for the first time actually identify the persons whom they *may* wish to depose.[1]

   Defendants respectfully submit that the number and scope of depositions to be taken in this case must be determined, and limited, in light of the massive body of existing testimony from hundreds of depositions taken previously (and many years closer in time to the events at issue) in actions that Plaintiffs acknowledge were "founded essentially on the same facts and circumstances that underpin" this action. (*See* Pls.' Mem. of Law in Supp. of Pls.' Mot. to Modify the PSLRA Disc. Stay 7, 17-19, No. 05-cv-1151, May 9, 2005, ECF No. 67.) Indeed, that is precisely the approach taken by this Court in the related ERISA action that is part of this MDL proceeding. In that case, this Court (following other courts that employed similar procedures in Vioxx-related litigation) so ordered a stipulation that permitted prior sworn testimony to be used as if taken in the Vioxx-ERISA case. (*See* Stipulation & Order Regarding Use of Prior Deposition Testimony, No. 05-cv-2369, Mar. 15, 2010, ECF No. 193 ("ERISA Order"), a copy of which is attached as Exhibit A.) Such an approach avoids needless duplication, minimizes the burden on witnesses—many of whom have been deposed under oath for multiple days on the very same topics for which Plaintiffs now seek their depositions—and conserves the resources of the Court, the witnesses, and the parties. Moreover, streamlining discovery in this manner will in no way prejudice Plaintiffs, who will have full use of the prior testimony *and* the ability to seek additional questioning of previously deposed witnesses on

---

[1] Defendant Dr. Edward M. Scolnick, who is separately represented, joins in this letter.

topics not covered in the witnesses' prior testimony. Indeed, Plaintiffs have offered no justification why they should be permitted to take duplicative depositions of numerous witnesses who have already testified, in many cases multiple times, on the very same issues.

## BACKGROUND

This securities class action is part of a consolidated multi-district shareholder litigation in which Plaintiffs allege that Merck & Co., Inc. ("Merck") and certain current and former officers and directors of Merck made materially false and misleading statements regarding the cardiovascular safety of one of Merck's products, VIOXX® ("Vioxx"). These MDL proceedings are some of the thousands of cases filed across the country in the wake of Merck's voluntary withdrawal of Vioxx on September 30, 2004, including (i) the derivative and ERISA litigations that are part of this MDL, (ii) a products liability MDL pending before the Honorable Eldon E. Fallon in the United States District Court for the Eastern District of Louisiana, and (iii) a consolidated products liability proceeding before the Honorable Carol E. Higbee in New Jersey Superior Court.

Recognizing the significant factual overlap between this case and the other Vioxx-related actions, Plaintiffs sought and obtained the production of more than 24 million pages of documents from other Vioxx-related cases—including more than 730 deposition transcripts from 472 witnesses who testified under oath, sometimes multiple times, in various Vioxx-related actions. The previously deposed witnesses include many of the named Defendants in this action, who provided some of the most comprehensive testimony on issues central to this case. For example:

- Dr. Edward Scolnick, head of Merck Research Laboratories during a portion of the relevant period, has testified for 7 days, providing more than 1950 pages of testimony;
- Dr. Alise Reicin, who held various positions within Merck Research Laboratories during the relevant time period, has testified for 9 days, providing more than 2200 pages of testimony;
- Mr. Raymond Gilmartin, Merck's Chief Executive Officer during the relevant period, has testified for 5 days, providing more than 1750 pages of testimony;
- Mr. David Anstice, Merck's President of Human Health, The Americas, during the relevant time period, has testified for 5 days, providing more than 1600 pages of testimony; and
- Dr. Peter Kim, head of Merck Research Laboratories during a portion of the relevant period, has testified for 5 days, providing more than 1200 pages of testimony.

Faced with the issue now before this Court of how best to streamline depositions and avoid duplication in light of this extensive prior testimony, the parties to the Vioxx-ERISA action entered into a stipulation, ordered by Magistrate Judge Shipp, regarding the parties' use of prior Vioxx-related deposition testimony. Under the ERISA Order, the depositions of certain identified witnesses were treated as if they had been taken in that case, and a party seeking to depose such a witness could conduct further questioning on topics not covered in any of the witness's previous sworn testimony. (ERISA Order, at 1, 2.) On that basis, ERISA plaintiffs

conducted only 16 additional depositions. This approach enabled the parties in the Vioxx-ERISA action to proceed efficiently with fact discovery without burdening previously deposed witnesses—many of whom were non-parties—with duplicative questioning on topics about which they had been previously examined. Indeed, the ERISA Order was based on similar cross-use procedures employed by Judge Fallon and Judge Higbee in the related products liability actions.[2]

In light of the available extensive prior testimony, the Court's January 3, 2012 Scheduling Order in this case required the parties "to meet and confer, in good faith, to attempt to agree on the number and scope of depositions that will be conducted in this Action and to determine whether, and to what extent, prior Vioxx-related deposition testimony may be used in this Action." (Jan. 3, 2012 Sched. Ord. at 2, ECF No. 309.) At the time that Scheduling Order was entered, Plaintiffs stated that they were unable to determine the number of depositions they would need, but represented that it would be "far less" than the 100 depositions per side they originally proposed. (Dec. 8, 2011 Proposed Joint Disc. Plan at 4, ECF No. 306.) Defendants stated that they were amenable to some reasonable number of depositions in excess of the ten-deposition limit under Federal Rule of Civil Procedure 30(a)(2), provided that any such number took into account, and made appropriate use of, any prior existing testimony of witnesses Plaintiffs sought to depose. (*Id.* at 6-8.)

On June 25, 2012, after Plaintiffs served certain deposition notices,[3] Defendants requested that the parties meet and confer on the number and scope of depositions. During the meet-and-confer, Defendants proposed that the parties enter into a cross-use agreement of the type successfully used in the Vioxx-ERISA action, and that the number of depositions in the case be determined with reference to that existing testimony. Plaintiffs have refused to consider such an approach—or any other case-wide proposal that would avoid duplicative questioning on common topics. Instead, Plaintiffs have proposed that they be permitted to depose anew approximately 60 witnesses—whom Plaintiffs repeatedly refused to identify during the meet-

---

[2] *See In re Vioxx Products Liability Litig.*, MDL No. 1657 (E.D. La., Fallon, J.), Pretrial Order # 9 dated Apr. 15, 2005 (attached as Exhibit B), at 6, 9 (ordering that plaintiffs "shall not, without good cause, re-notice the depositions of witnesses who have already been deposed" and providing a procedure to avoid duplicative depositions between the state and federal products liability litigations); *In re Vioxx Litig.*, No. 619 (N.J. Super. Ct., Higbee, J.), Order dated May 16, 2005 (attached as Exhibit C), at 3 (ordering that "no witness should be deposed on the same subject more than once in the New Jersey *In re Vioxx® Litigation*").

[3] To date, Plaintiffs have noticed the depositions of 12 non-party witnesses in this action, three of whom have been previously deposed. Defendants did not object to the nine remaining depositions, and indeed scheduled the depositions of the five witnesses represented by Defendants' counsel. Although those five depositions were not the subject of any dispute and were all ready to proceed, Plaintiffs unilaterally canceled them all—in one case only three days before the scheduled date. Defendants do not understand, and Plaintiffs have offered no legitimate reason, why Plaintiffs refused to proceed with the already arranged depositions of witnesses not previously deposed, thereby bringing deposition discovery to a standstill.

and-confer process, stating that it would be impossible to do so. As such, the parties were unable to reach an agreement with respect to these issues.

Two days ago, Plaintiffs submitted their August 8 Letter to this Court. There, Plaintiffs for the first time identified as "potential" deponents 53 non-parties as well as the 19 named Defendants. Of those 72 potential witnesses, 23 have previously been deposed.

## ARGUMENT

I. DEPOSITION DISCOVERY IN THIS ACTION SHOULD MAKE USE OF THE EXISTING SWORN TESTIMONY OF WITNESSES PREVIOUSLY DEPOSED.

To the extent Plaintiffs notice depositions of witnesses who have previously been deposed, the use of prior deposition testimony in this case is essential for the efficient and sensible management of fact depositions in this action. The use of prior deposition testimony will appropriately streamline discovery, avoid needless duplication of questions and topics already covered under oath, and minimize the burden of additional depositions on witnesses in this case—many of whom are non-parties to this action and have not had occasion to consider issues relating to Vioxx for many years. Indeed, to the extent prior testimony from a witness is available, such testimony is more reliable than any the same witness could provide now. In most cases, the prior testimony was taken many years closer in time to the events in question (some of which are a decade or more behind us). Thus, where a witness has already answered questions under oath on topics relevant to this case, there is no reason the same ground should be covered again with the same witness.

Such use of prior testimony will not prejudice Plaintiffs' ability to prosecute this case. Defendants' proposal expressly contemplates that, in addition to being able to use the prior testimony to the same extent as if taken in this case, Plaintiffs will have the opportunity to examine witnesses on topics not already covered in prior testimony. It is absurd to suggest that Plaintiffs would suffer any prejudice merely because they cannot ask a witness the same (or substantially the same) questions that very witness answered in prior sworn testimony to which Plaintiffs have access. Indeed, the Federal Rules of Civil Procedure specifically seek to protect witnesses from unreasonably cumulative or duplicative deposition testimony. *See* Fed. R. Civ. P. 26(b)(2)(C)(i). Moreover, Plaintiffs' counter-proposal to designate, two weeks before each previously deposed witness's deposition, "the prior testimony on which [Plaintiffs] plan to rely (while permitting Defendants to cross-designate testimony)" (*see* Pls.' Aug. 8 Ltr. at 3) is unworkable, inefficient, and virtually ensures that the parties will be forced to seek intervention from the Court before the deposition of every previously deposed witness. To the extent prior testimony exists, Plaintiffs should not be permitted, for purposes of fact discovery, to cherry-pick only the portions that Plaintiffs consider helpful to their case; instead, such testimony should be available in its entirety.

II. ONCE AN AGREEMENT REGARDING THE USE OF PRIOR DEPOSITION TESTIMONY HAS BEEN REACHED, THE PARTIES SHOULD BE PERMITTED NO MORE THAN 30 DEPOSITIONS PER SIDE.

Although Defendants agree that some relaxation of the presumptive ten-

deposition limit is appropriate in this case, Plaintiffs' proposal of nearly 60 unrestricted depositions is unreasonable.[4] Rule 30 requires that an expansion of the presumptive ten-deposition limit be consistent with the principles stated in Rule 26(b)(2), which seeks to avoid "unreasonably cumulative or duplicative" discovery. Fed. R. Civ. P. 26(b)(1); 26(b)(2)(C)(i). With an appropriate agreement regarding the use of prior testimony in place to assure that depositions are not "unreasonably cumulative or duplicative," Defendants believe that the parties should be able to complete fact discovery with no more than 30 depositions per side.

Finally, although the Court need not decide this issue now, Defendants do not agree that Plaintiffs should automatically be permitted to depose each of the 19 named Defendants. As discussed above, many of the named Defendants have given voluminous prior testimony on substantially overlapping topics. As for those named Defendants who have not previously been deposed, most are current and former independent (non-employee) directors of Merck who were named as defendants only as to Plaintiffs' claims under the Securities Act of 1933 and solely because they signed registration statements. Indeed, Plaintiffs' Appendix A provides a virtually identical basis for requiring each director's testimony. Because these claims have no scienter element, and indeed, the director's state of mind is irrelevant, Plaintiffs do not need to depose each director. Moreover, there is no justification for taking the depositions of other named Defendants based on claims that have been dismissed from this case (*e.g.*, the insider trading claims).

\* \* \*

Defendants, therefore, respectfully request that deposition discovery in this action be designed to make efficient use of prior, sworn deposition testimony, and that the parties be limited to 30 depositions per side.

Respectfully submitted,

Robert H. Baron

---

[4] Plaintiffs' assertion that their proposed total number is "reasonable" in light of the fact that 427 witnesses were deposed in the other Vioxx-related actions (Pls.' Aug. 8 Ltr. at 3) is misleading. The 427 witnesses were examined in proceedings covering hundreds, if not thousands, of individual cases, and many of the deponents were case-specific. For assessing the appropriate number of depositions in this case, a far more apt comparison would be to the related Vioxx-ERISA action, where Plaintiffs took 16 depositions after the entry of the ERISA Order.

Honorable Cathy L. Waldor, U.S.M.J.
   United States District Court
      District of New Jersey
         Martin Luther King, Jr. Federal Building
         & U.S. Courthouse
           50 Walnut Street
              Newark, NJ 07101

VIA ELECTRONIC FILING

Copies to:

David A. P. Brower, Esq.
   Brower Piven
      A Professional Corporation
         488 Madison Avenue, Eighth Floor
           New York, New York 10022


Salvatore J. Graziano, Esq.
   Bernstein Litowitz Berger & Grossmann LLP
      1285 Avenue of the Americas
         New York, NY 10019

Mark Levine, Esq.
   Stull, Stull & Brody
      6 East 45th Street, 5th Floor
         New York, NY 10017

Richard H. Weiss, Esq.
   Milberg LLP
      One Pennsylvania Plaza
         New York, NY 10119

Paul B. Brickfield, Esq.
   Brickfield & Donahue
      70 Grand Avenue
         River Edge, NJ 07661

James E. Cecchi, Esq.
   Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein
      5 Becker Farm Road
         Roseland, NJ 07068

Alfred C. Decotiis, Esq.
   Decotiis, Fitzpatrick & Cole LLP
      Glenpointe Centre West
         500 Frank W. Burr Boulevard
           Teaneck, NJ 07666

Geoffrey C. Jarvis, Esq.
   Grant & Eisenhofer P.A.
      485 Lexington Avenue, 29th Floor
         New York, NY 10017

John A. Kehoe, Esq.
   Kessler Topaz Meltzer & Check LLP
      280 King of Prussia Road
         Radnor, PA 19087

William H. Gussman, Jr., Esq.
   Schulte Roth & Zabel LLP
      919 Third Avenue
         New York, NY 10022


Eric S. Parnes, Esq.
   Hughes Hubbard & Reed LLP
      1775 I Street, NW
         Washington, DC 20006

VIA EMAIL PDF