# CRAVATH, SWAINE & MOORE LLP

STUART W. GOLD
JOHN W. WHITE
EVAN R. CHESLER
MICHAEL L. SCHLER
RICHARD LEVIN
KRIS F. HEINZELMAN
B. ROBBINS KIESSLING
ROGER D. TURNER
PHILIP A. GELSTON
RORY O. MILLSON
FRANCIS P. BARRON
RICHARD W. CLARY
WILLIAM P. ROGERS, JR.
JAMES D. COOPER
STEPHEN L. GORDON
DANIEL L. MOSLEY
PETER S. WILSON
JAMES C. VARDELL, III
ROBERT H. BARON
KEVIN J. GREHAN
STEPHEN S. MADSEN
C. ALLEN PARKER
MARC S. ROSENBERG
SUSAN WEBSTER

DAVID MERCADO
ROWAN D. WILSON
CHRISTINE A. VARNEY
PETER T. BARBUR
SANDRA C. GOLDSTEIN
THOMAS G. RAFFERTY
MICHAEL S. GOLDMAN
RICHARD HALL
JULIE A. NORTH
ANDREW W. NEEDHAM
STEPHEN L. BURNS
KEITH R. HUMMEL
DANIEL SLIFKIN
ROBERT I. TOWNSEND, III
WILLIAM J. WHELAN, III
SCOTT A. BARSHAY
PHILIP J. BOECKMAN
ROGER G. BROOKS
WILLIAM V. FOGG
FAIZA J. SAEED
RICHARD J. STARK
THOMAS E. DUNN
MARK I. GREENE
SARKIS JEBEJIAN

WORLDWIDE PLAZA
825 EIGHTH AVENUE
NEW YORK, NY 10019-7475

TELEPHONE: (212) 474-1000
FACSIMILE: (212) 474-3700

———

CITYPOINT
ONE ROPEMAKER STREET
LONDON EC2Y 9HR
TELEPHONE: 44-20-7453-1000
FACSIMILE: 44-20-7860-1150

WRITER'S DIRECT DIAL NUMBER

(212) 474-1422

DAVID R. MARRIOTT
MICHAEL A. PASKIN
ANDREW J. PITTS
MICHAEL T. REYNOLDS
ANTONY L. RYAN
GEORGE E. ZOBITZ
GEORGE A. STEPHANAKIS
DARIN P. MCATEE
GARY A. BORNSTEIN
TIMOTHY G. CAMERON
KARIN A. DEMASI
LIZABETHANN R. EISEN
DAVID S. FINKELSTEIN
DAVID GREENWALD
RACHEL G. SKAISTIS
PAUL H. ZUMBRO
JOEL F. HEROLD
ERIC W. HILFERS
GEORGE F. SCHOEN
ERIK R. TAVZEL
CRAIG F. ARCELLA
TEENA-ANN V. SANKOORIKAL
ANDREW R. THOMPSON
DAMIEN R. ZOUBEK

LAUREN ANGELILLI
TATIANA LAPUSHCHIK
ERIC L. SCHIELE
ALYSSA K. CAPLES
JENNIFER S. CONWAY
MINH VAN NGO
KEVIN J. ORSINI
MATTHEW MORREALE
J. WESLEY EARNHARDT
YONATAN EVEN
BENJAMIN GRUENSTEIN
JOSEPH D. ZAVAGLIA

———

SPECIAL COUNSEL

SAMUEL C. BUTLER
GEORGE J. GILLESPIE, III

———

OF COUNSEL

PAUL C. SAUNDERS

October 3, 2012

*In re Merck & Co., Inc. Securities, Derivative & ERISA Litigation*
The Consolidated Securities Action, No. 05-CV-02367

Dear Judge Chesler:

       We represent Defendants (other than Dr. Scolnick) in the above-captioned action, and write in response to Plaintiffs' October 2, 2012 letter (the "October 2 Letter"), in which Plaintiffs request a 30-day extension to file their reply brief in further support of their April 10, 2012 Motion for Class Certification, Appointment of Class Representatives, and Appointment of Class Counsel (the "Motion").

       Although Plaintiffs claim that they need an additional 30 days to resolve "an open discovery issue" related to Professor Paul A. Gompers's September 11, 2012 deposition testimony (Oct. 2 Ltr. at 1), in fact the "issue" that Plaintiffs have raised is irrelevant to the substance of their reply brief, relates to non-discoverable information and, in any event, does not warrant a month-long foray into discovery so that Plaintiffs can pursue a meritless theory that has no support in the case law (as Plaintiffs' failure to cite any relevant case law in their October 2 Letter makes clear).

       Pursuant to the Court's January 3, 2012 Scheduling Order, Plaintiffs' reply brief in support of the Motion is due no later than next Monday, October 8, 2012 (ECF No. 309 at 3)—nearly two months after Defendants filed their brief opposing the Motion, and the supporting report of Defendants' expert, Professor Paul A. Gompers, Ph.D.  On October 1, 2012, Plaintiffs' counsel contacted Defendants' counsel requesting a 30-day extension of time in which to submit their reply brief in support of the Motion.  To justify the requested extension, Plaintiffs asserted that they need discovery relating to certain payments that Professor Gompers has received from Cornerstone Research ("Cornerstone"), the non-testifying "firm that provides research assistance to [Professor Gompers] on this matter." (Ex. A, August 13, 2012 Expert Report of Paul A. Gompers, Ph.D. (the "Report"), ¶ 4.)  Although Defendants advised Plaintiffs' counsel that the information Plaintiffs were seeking was irrelevant to their reply brief and outside

the scope of discoverable information under the Federal Rules of Civil Procedure, as a courtesy, Defendants offered Plaintiffs a one-week extension of the deadline to file the reply brief. Plaintiffs responded by (1) serving a subpoena upon Cornerstone seeking a host of irrelevant and non-discoverable documents, (2) summarily rejecting Defendants' offer of a one-week extension, and (3) filing the October 2 Letter with the Court.

Plaintiffs have had nearly two months to draft their reply brief. Faced with the reality that a class cannot properly be certified in this action for the numerous reasons detailed in Defendants' Opposition to Plaintiffs' Motion (ECF No. 365), including that Plaintiffs' expert has failed to show that the markets for Merck stock and options were efficient during the relevant time period, Plaintiffs have manufactured a sideshow regarding a purported "open discovery issue" (Oct. 2 Ltr. at 1) to delay having to respond to the substantive arguments raised in Defendants' Opposition. Information regarding the payments that Professor Gompers receives from Cornerstone—not only a non-party but also a non-testifying expert—is plainly irrelevant to Plaintiffs' reply brief, and Plaintiffs' subpoena seeking such information is a fishing expedition. In any event, Professor Gompers's Report, his deposition testimony (Ex. A to Oct. 2 Ltr.) and Defendants' September 28, 2012 Letter to Plaintiffs (Ex. C to Oct. 2 Ltr.) contain ample information—indeed, far more than is required by the Federal Rules—concerning Professor Gompers's relationship with Cornerstone and any payments he has received from Cornerstone.

The vast majority of Plaintiffs' October 2 Letter focuses on payments that Professor Gompers periodically receives from Cornerstone. In his Report, Professor Gompers disclosed his hourly rate for his "time and services" on this matter and further disclosed that he also receives "periodic compensation from [Cornerstone]" which is made "entirely at [Cornerstone]'s discretion." (Ex. A, Gompers Report, ¶ 4.) He also disclosed his "understanding" that the "periodic compensation" is "based generally on [his] services for and work with [Cornerstone], including the level of fees generated on matters in which [Cornerstone] provide[s] support to [him]" but that the payments he receives from Cornerstone are "in no way based on the content of [his] opinions or the outcome of any matter." (*Id.*) Plaintiffs claim that such disclosures "do not satisfy the Federal Rules", but fail to explain how they fall short; Plaintiffs merely intone that the Report is "vague" as to the amount of payments Professor Gompers receives from Cornerstone. (Oct. 2 Ltr. at 2.) Plaintiffs' complaint about "vagueness" is unsustainable in light of the information that Professor Gompers and Defendants have already provided to Plaintiffs concerning payments he has received from Cornerstone. Moreover, there is no legal basis for Plaintiffs' insistence that Defendants disclose information that is either completely irrelevant, non-discoverable under the Federal Rules, or that Defendants have already represented to Plaintiffs does not exist.

As Plaintiffs acknowledged in their September 14, 2012 Letter to Defendants (Ex. B to Oct. 2 Ltr. at 1), the Federal Rules require only that a testifying expert witness provide "a statement of the compensation to be paid for the study and testimony *in the case*," Fed. R. Civ. P. 26(a)(2)(B)(vi) (emphasis added)—not an exhaustive list of all payments the expert has ever received in any litigation in which he has ever served as a testifying expert witness. Despite the unambiguously limited scope of the information that is required to be disclosed, Plaintiffs now seek discovery of any and all payments Professor Gompers has ever received from Cornerstone, regardless of whether they relate in any way to this action. (Ex. B, Notice of Subpoena *Duces Tecum* to Cornerstone Research, at Req. No. 3.) As Professor Gompers

explained during his deposition, he receives periodic payments from Cornerstone that are not based on a formulaic methodology, but instead are determined by Cornerstone in its discretion, based on his work on various matters, not just *this* matter, and also take into account his participation in speaking engagements and training sessions for Cornerstone staff.  (*See* Ex. A to Oct. 2 Ltr. at 17:9-18:21, 20:2-22:13.)

Plaintiffs complain that Professor Gompers did not recall from memory during his deposition the precise range of annual payments he has received from Cornerstone over the past four or five years and that he did not recall while sitting at the deposition that his most recent payment from Cornerstone was in August, as opposed to April, of this year.  This testimony was based on his best recollection on the day of his deposition, without having reviewed his records.  After his deposition, when Plaintiffs requested further information, Professor Gompers reviewed his records and, based on that review, provided the exact range of annual payments he has received from Cornerstone during the five years from 2007 to 2011, and when he received his last payment.  There is nothing "suspicious" about the fact that Professor Gompers could not recall the exact answers to questions that largely concern payments that indisputably have no relevance here—inasmuch as Professor Gompers was not retained to work on this case until February 2012.  Moreover, it is notable that Plaintiffs' expert, Dr. David Tabak, did not disclose in his April 10, 2012 Declaration (the "Declaration") in support of the Motion, whether he receives any bonuses or other discretionary compensation beyond his hourly rate from his support firm, NERA, but testified that NERA makes "adjustments" to his compensation based on the amount of revenue he generates for NERA and that the level of his compensation "correlat[es]" with the level of his revenue generation for his firm.  (Ex. C, Tabak Tr. at 13:10-14.)  Yet Dr. Tabak's Declaration makes *no* mention of this additional compensation related to the revenue he will generate for NERA, including revenue from this case.  (*See* Ex. D, Tabak Decl. ¶ 9.)

Also notable is Plaintiffs' failure to point to any authority to support the relevance, or discoverability, of such payments.  Plaintiffs instead cite to (1) an inapposite case concerning fact witnesses at a murder trial in a criminal case and the duty of the prosecutor to disclose evidence favorable to the accused, *see Lambert v. Blackwell*, 387 F.3d 210, 256 (3d Cir. 2004), and (2) an irrelevant motion to exclude Professor Gompers as an expert in another matter upon different grounds—a motion which was brought by the *same* counsel who represent Plaintiffs in this case, which has not been ruled upon and which is not based in any way on Professor Gompers's relationship with Cornerstone.  Moreover, in their September 14 Letter to Defendants, Plaintiffs stated that they "understand that at least one court has struck an expert who had the same compensation arrangement with Cornerstone in the past."  (Ex. B. to Oct. 2 Ltr. at 2.)  But unsurprisingly, neither the September 14 Letter nor the October 2 Letter to this Court cites to any such case and Plaintiffs have yet to inform Defendants of a case in which a court has stricken or refused to admit an expert's testimony *because* of that expert's compensation arrangement (or any other aspect of the expert's relationship) with Cornerstone (and not for some other reason unrelated to that expert's relationship with Cornerstone).  Indeed, Defendants specifically requested that Plaintiffs provide such information  (Ex. C. to Oct. 2 Ltr. at 4) and Plaintiffs have failed to do so.

Further, Plaintiffs persist in insinuating that Merck has agreed to pay Cornerstone a "success or contingent fee" based on the outcome of this case despite Defendants'

unambiguous and unqualified representations to the contrary.  (*See* Oct. 2 Ltr. at 2.)  In their September 28 Letter, Defendants informed Plaintiffs:

> "Merck and Cornerstone have never discussed an incentive agreement or arrangement of any sort.  Merck has not agreed to pay Cornerstone any kind of 'incentive payment' or 'success fee.'  Merck has paid and will continue to pay Cornerstone hourly fees for the time its employees spend performing non-testifying services at Merck's attorneys' direction.  Cornerstone's fees are in no way dependent upon any conclusions or findings that Professor Gompers may reach or the outcome of this case."

(Ex. C to Oct. 2 Ltr. at 3.)  Nonetheless, Plaintiffs have subpoenaed Cornerstone seeking to uncover an imaginary contingent fee arrangement between Merck and Cornerstone that does not exist.  (Ex. B, Notice of Subpoena *Duces Tecum* to Cornerstone Research, at Req. No. 2.)  Plaintiffs also continue to seek all "fee arrangements" between Professors Gompers and Cornerstone (*id.* at Req. No. 1), even though Defendants represented in their September 28 Letter that:

> "Cornerstone has no contractual obligation to make payments to Professor Gompers, and it has no written agreement with Professor Gompers related to such payments.  Any payments that Professor Gompers may receive from Cornerstone are discretionary, and are wholly unrelated to and in no way contingent upon the opinions offered by Professor Gompers or on the outcome of any case on which Professor Gompers works."

(Ex. C to Oct. 2 Ltr. at 2.)  Plaintiffs' desire to go fishing for non-existent information cannot justify an extension of the existing briefing schedule.

Recognizing that the purported payments "issue" does not justify any discovery or extension, Plaintiffs now disingenuously suggest (for the first time) in their October 2 Letter to the Court that Professor Gompers's Report is not "his" because Cornerstone supposedly played a "significant role in the creation of [the] Report" by "conduct[ing] the analyses in the [] Report and provid[ing] comments on the text of the [] Report."  (Oct. 2 Ltr. at 1.)  In fact, as Professor Gompers made abundantly clear during his deposition, he drafted his own Report.  (Ex. A to Oct. 2 Ltr. at 10:13-14, 12:23-13:2.)  He also testified that "under [his] direction," Cornerstone performed certain tasks such as pulling research articles, collecting data, reviewing the analysis performed by Plaintiffs' expert, conducting analyses, and providing comments to the drafts of his Report.  (*See id.* at 10:15-13:8.)  None of this assistance from Cornerstone demonstrates that the Report is not "his."  As Professor Gompers testified:  "I drafted the report."  (*See id.* at 13:2-8.)

Lest there be any doubt that Plaintiffs' latest argument is just a futile attempt to manufacture discovery issues in order to buy more time to file their reply brief, we note that Plaintiffs' own expert, Dr. Tabak, testified that "maybe half a dozen" people from NERA have assisted him with his Declaration in this case and that he gave "broad direction" to those people who performed various tasks in support of his Declaration, including creating exhibits, "doing

the underlying analyses" and reviewing his Declaration. (Ex. C, Tabak Tr. at 86:6-88:8, 91:3-16, 93:13-18, 94:21-95:16.) Thus, Plaintiffs' own expert had *his* supporting firm, NERA, perform precisely the same type of tasks performed by Cornerstone to provide support to Professor Gompers—the very tasks that Plaintiffs now suggest taint Professor Gompers's Report.

In short, there is no basis in law or fact for a 30-day extension of the filing deadline for Plaintiffs' reply brief. Accordingly, Defendants respectfully request that Plaintiffs' request for a 30-day extension be denied or, in the alternative, that Plaintiffs be granted only one additional week to file their reply brief in further support of their Motion.[1]

Respectfully submitted,

Robert H. Baron

Honorable Stanley R. Chesler, U.S.D.J.
   United States District Court
      District of New Jersey
         Martin Luther King, Jr. Federal Building
            & U.S. Courthouse
               50 Walnut Street
                  Newark, NJ 07101

VIA ELECTRONIC FILING

Copies to:

David A. P. Brower, Esq.
   Brower Piven
      A Professional Corporation
         488 Madison Avenue, Eighth Floor
            New York, New York 10022

---

[1] Further, Defendants respectfully submit that to the extent Plaintiffs persist in seeking to exclude any portion of Professor Gompers's testimony and Report, such a motion would be subject to a separate briefing schedule (just as any motion to exclude Dr. Tabak's testimony would be) and does not relate to the substance of Plaintiffs' reply brief or to any reply declaration that Dr. Tabak may seek to submit. Defendants reserve the right to respond to any such additional motion.

Salvatore J. Graziano, Esq.
   Bernstein Litowitz Berger & Grossmann LLP
      1285 Avenue of the Americas
         New York, NY 10019

Mark Levine, Esq.
   Stull, Stull & Brody
      6 East 45th Street, 5th Floor
         New York, NY 10017

Richard H. Weiss, Esq.
   Milberg LLP
      One Pennsylvania Plaza
         New York, NY 10119

Paul B. Brickfield, Esq.
   Brickfield & Donahue
      70 Grand Avenue
         River Edge, NJ 07661

James E. Cecchi, Esq.
   Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein
      5 Becker Farm Road
         Roseland, NJ 07068

Alfred C. Decotiis, Esq.
   Decotiis, Fitzpatrick & Cole LLP
      Glenpointe Centre West
         500 Frank W. Burr Boulevard
            Teaneck, NJ 07666

Geoffrey C. Jarvis, Esq.
   Grant & Eisenhofer P.A.
      485 Lexington Avenue, 29th Floor
         New York, NY 10017

John A. Kehoe, Esq.
   Kessler Topaz Meltzer & Check LLP
      280 King of Prussia Road
         Radnor, PA 19087

William H. Gussman, Jr., Esq.
   Schulte Roth & Zabel LLP
      919 Third Avenue
         New York, NY 10022

Eric S. Parnes, Esq.
Hughes Hubbard & Reed LLP
1775 I Street, NW
Washington, DC 20006

VIA EMAIL PDF