## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

CHAMBERS OF
**CATHY L. WALDOR**
UNITED STATES MAGISTRATE JUDGE

MARTIN LUTHER KING COURTHOUSE
50 WALNUT ST.
ROOM 4040
NEWARK, NJ 07101
973-776-7862

October 5, 2012

### LETTER OPINION

Re:   In re Merck & Co., Inc. Securities, Derivative & ERISA Litigation,
      **The Consolidated Securities Action, No. 05-2367 (SRC)**

Presently before the Court is the informal request of Lead Plaintiffs the Public Employees' Retirement System of Mississippi, Steven LeVan, Jerome Haber and Richard Reynolds, and Plaintiff Rhoda Kanter (collectively, "Plaintiffs") to compel several categories of discovery from Defendants (collectively, "Merck" or "Defendants") and Merck's opposition to same. (Docket Entry No. 325 ("Pls.' Br.")); Docket Entry No. 337 ("Defs.' Br.")). Plaintiffs seek to compel the following categories of documents: (1) documents produced in connection with any government investigation; (2) documents concerning the decline in Merck's stock price on November 1, 2004; (3) specific categories of documents from outside a January 1, 1998 through December 31, 2004 time period; (4) custodial files concerning VIOXX® ("VIOXX"); (5) a complete set of "audit files" for Merck's statistical database files concerning VIOXX; and (6) responsive documents stored on Merck's shared drives. The Court has conducted a thorough review of the parties' submissions and will address each document category in turn.

### Background

The parties are intimately familiar with the facts giving rise to this action. As such, the Court will provide facts only insofar as they are relevant to the pending dispute. This action arises out of the allegedly material false and misleading statements and omissions that Merck made to investors from May 21, 1999 through September 30, 2004 (the "Class Period") concerning the cardiovascular ("CV") safety and commercial viability of VIOXX that allegedly inflated the price of Merck stock throughout the Class Period.

The current disputes concern Defendants' responses to Plaintiffs' First Set of Requests for the Production of Documents, served by Plaintiffs on January 13, 2012 (the "Requests"). Before serving these Requests, the parties conducted several in-person meet-and-confer sessions to discuss the scope of Defendants' prior document productions in other related Derivative and ERISA litigations (the "Related Actions"). Additionally, as of June 2012, Plaintiffs have sought and

obtained discovery of more than 24 million pages of documents relating to VIOXX. Discovery has since continued on a rolling basis. The following categories of document production remain contested.

**Documents Previously Produced to the Government:**

Plaintiffs request that Defendants produce any documents that they previously produced to the government and which are otherwise responsive to Plaintiffs' Requests. (Pls.' Br at 5-9).[1] Plaintiffs specifically seek to compel the following categories of documents: (1) privileged documents produced to the Department of Justice ("DOJ") or documents produced to the DOJ pursuant to a confidentiality and non-waiver agreement; (2) communications with the DOJ or documents created for the purpose of responding to the DOJ's investigation; and (3) documents sufficient to identify the Bates ranges, dates, search terms used, and custodians of any productions made to the government. (Id.).

    A.    Privileged Documents Produced to the DOJ Pursuant to a Confidentiality and Non-Waiver Agreement

Plaintiffs request privileged documents produced to the DOJ pursuant to a Confidentiality and Non-Waiver Agreement. Plaintiffs believe they are entitled to these documents despite the existence of a confidentiality agreement between Defendants and the DOJ. First, as Defendants have already produced the documents to the government, they are not privileged. To that end, the Third Circuit does not recognize the "selective waiver" doctrine. Accordingly, Merck's voluntary production of documents to the government operated as a complete waiver of any privilege that was otherwise applicable. Plaintiffs further argue that this production will not impose an undue burden on Defendants because Defendants have already gathered and produced the responsive documents. Defendants disagree with both of Plaintiffs' characterization of its agreement with the government and interpretation of the applicable case law. First, Merck's agreement with the DOJ was not simply a confidentiality agreement. Instead, Merck provided the DOJ with privileged documents pursuant to a confidentiality and non-waiver agreement. Second, Defendants submit that many circuits recognize selective waiver in similar suits where defendant's agreement with the government expressly preserved both confidentiality **and** the party's right to assert the privilege against third parties.

Plaintiffs rely heavily on the Third Circuit's decision in Westinghouse Elec. Corp. v. Republic of Philippines, 951 F.2d 1414, 1431 (3d Cir. 1991) in arguing that Defendants waived any privilege or confidentiality interests they may have had when they produced these documents to the

---

[1] During the meet-and-confer process, Defendants proposed to define "government" as "any United States investigatory body that conducted an investigation relating to Vioxx, including Congressional committees, the Department Of Justice, the Office of Inspector General of the Department of Health and Human Services, the SEC, State Attorneys General, and State Medicaid fraud Control Units." (Defs.' Br. at 5, n.4) (citing Pls.' Ex. 4, at 6). Plaintiffs do not object to this definition. (Id.).

government.  The Westinghouse Court addressed the question of:

> Whether a party that discloses information protected by the attorney-client privilege and the work-product doctrine in order to cooperate with a government agency that is investigating it waives the privilege and the doctrine only as against the government, or waives them completely, thereby exposing the documents to civil discovery in litigation between the discloser and a third party.

951 F.2d 1414, 1417 (3d Cir. 1991).

In Westinghouse, plaintiffs alleged that defendant had obtained a large power plant contract in the Philippines by bribing a former government official.  During discovery, the plaintiff sought documents generated during an internal investigation conducted by Westinghouse's outside counsel.  The internal inquiry was taken in response to the SEC's investigation into whether Westinghouse had obtained the contract with bribes.  Westinghouse disclosed the documents sought by the plaintiffs to the Securities and Exchange Commission ("SEC") and the DOJ in order to cooperate with their investigations.  The Third Circuit held that, despite Westinghouse's claim that it had disclosed the information to the SEC and the DOJ in order to cooperate with the investigations, Westinghouse's disclosures waived the protection because they did little to further the privilege's purpose.  That is, preservation would not "encourage clients to obtain informed legal assistance." Id. at 1425-26 (internal citations omitted)

The Westinghouse Court additionally rejected defendant's argument that attorney-client privilege was not waived because defendant reasonably expected the agencies to keep the documents it disclosed to them confidential:

> Westinghouse [contends] that the . . . SEC's regulations concerning confidentiality and the stipulated court order memorializing the confidentiality agreement between Westinghouse and the DOJ must be regarded as preserving the attorney-client privilege with respect to the information disclosed because of Westinghouse's expectations of confidentiality engendered thereby. We reject Westinghouse's argument that it did not waive the privilege because it reasonably expected that the SEC and the DOJ would maintain the confidentiality of the information that it disclosed to them.

Id. at 1426-27.[2]

---

[2] The Westinghouse Court equally rejected this argument with respect to work-product protection in finding that "[e]ven if we had found that the agencies had made such an agreement, . . . , it would not change our conclusion."  951 F.2d at 1430.

Merck bears the burden of establishing every element of attorney-client privilege, including that the communication was made in confidence and the privilege has not been waived. Schwarz Pharma., Inc. v. Teva Pharma. USA, Inc., No. 01-4995, 2007 WL 2892744, at *2 (D.N.J. Sept. 27, 2007). Merck must also prove it is entitled to work-product protection. Cooper Health System v. Virtua Health, Inc., 259 F.R.D. 208, 213 (D.N.J. 2009). Here, Defendants argue that privileged documents that it provided to the DOJ pursuant to a confidentiality and non-waiver agreement remain protected from disclosure in this action. On July 15, 2008, Merck entered into an agreement with the DOJ that provided that the government would maintain the confidentiality of the materials produced to it and expressly provided that "Merck does not extend [its] limited waiver of the attorney-client privilege and work product protection to any third party and/or private entity." (Defs.' Br. at 9) (citing Pls.' Ex. 9 at 2-3, ¶ 4). Merck concedes that the Westinghouse Court held that defendant's voluntary disclosure of privileged documents to the DOJ waived the privilege despite the existence of a confidentiality agreement between defendant and the DOJ. However, Merck contends Westinghouse left open the possibility that privilege would be preserved where, as here, the defendant entered into an *express confidentiality and non-waiver agreement* in connection with the government investigation. (Defs.' Br. at 6). Merck relies on the following language:

> We also note that the agreement between Westinghouse and the DOJ preserved Westinghouse's right to invoke the attorney-client privilege only as to the DOJ - *and does not appear in any way to have purported to preserve Westinghouse's right to invoke the privilege against a different entity in an unrelated civil proceeding* . . . .

951 F.2d at 1427 (emphasis added).

Merck essentially asks this Court to adopt a "compromise position" with respect to selective waiver. This approach was discussed at length in In re Columbia/HCA Healthcare Corp. Billing Practices Litig., 293 F.3d 289 (6th Cir. 2002). Under this approach, privilege would be preserved "if the documents were produced to the SEC under a protective order, stipulation or other express reservation of the producing party's claim of privilege as to the material disclosed." Teachers Ins. & Annuity Association of America v. Shamrock Broadcasting Co., 521 F.Supp. 638, 646 (S.D.N.Y. 1981). Preservation would be appropriate because "[t]he disclosing party had made some effort to preserve the privacy of the privileged communication, rather than having engaged in abuse of the privilege by first making a knowing decision to waive the rule's protection and then seeking to retract that decision in subsequent litigation." Id.

The Second Circuit affirmed this position in 1993 in In re Steinhardt Partners, L.P., 9 F.3d 230 (2d Cir. 1993). Steinhardt involved an SEC investigation into irregularities in the treasuries market. Steinhardt voluntary disclosed a memorandum and exhibits concerning its involvement in the treasuries market. Id. at 232. The memorandum had been marked "FOIA [Freedom of Information Act] Confidential Treatment Requested," but the parties never formally entered a confidentiality agreement. Id. The Second Circuit found that Steinhardt waived any work product protection by voluntarily submitting the memorandum to the SEC. Id. at 235. In so holding,

however, the Court declined to adopt a *per se* rule that all voluntary disclosures to the government waive privilege. Instead, matters of privilege relating to governmental investigations must be done on a "case-by-case" basis as a "rigid rule would fail to anticipate situations . . . in which the SEC and the disclosing party have entered into an explicit agreement that the SEC will maintain the confidentiality of disclosed materials." Id. at 236. Courts in the Southern District of New York - relying on the language in Steinhardt - have suggested that waiver will not be found when documents are disclosed to the government pursuant to a confidentiality agreement. See In re Leslie Fay Companies, Inc. Sec. Litig., 161 F.R.D. 274, 284 (S.D.N.Y. 1995) ("We think that the [confidentiality] agreement satisfies the standard articulated in Steinhardt."); Police and Fire Ret. Sys. Of the City of Detroit v. SafeNet, Inc., 2010 WL 935317, at *1 (S.D.N.Y. Mar. 12, 2010) (Steinhardt prompts district courts within the Second Circuit "to give the existence of confidentiality agreements weighty consideration in rendering selective waiver discussions.").

This District has not expressly addressed this "some selective waiver" approach. Having reviewed the arguments and relevant case law, this Court declines to adopt this approach and finds that because Merck voluntarily disclosed these materials to the government, it cannot establish that these documents are privileged. First, the Second Circuit's position toward selective waiver, beginning with Steinhardt, is much broader than Westinghouse allows. In Steinhardt, and the cases to follow, the existence of a confidentiality agreement itself counseled in favor of preserving the privilege. However, the Westinghouse Court explicitly rejected the notion that privilege could be preserved if the non-moving party and the government entered into a confidentially agreement. Westinghouse, 951 F.2d at 1426-27 (rejecting defendant's argument that "the stipulated court order memorializing the confidentiality agreement between Westinghouse and the DOJ must be regarded as preserving the attorney-client privilege . . . ."). Second, Westinghouse remains the law of this Circuit and this District. United States v. Murray, 468 Fed.Appx. 104, 2012 WL 745617 (3d Cir. 2012); Wachtel v. Guardian Life Ins. Co., No. 01-4183, 2006 WL 1286188 (D.N.J. May 8, 2006); Wawrzynek v. Gliatech, Inc., No. 03-5346, 2004 WL 887414 (E.D.Pa. Mar. 26, 2004); Shionogi Pharma, Inc. v. Mylan Pharma, Inc., No. 10-1077, 2011 WL 6651274 (D.Del. Dec. 21, 2011). This Court declines to draw an exception or distinction to Westinghouse at this juncture. Accordingly, documents produced to the DOJ pursuant to a Confidentiality and Non-Waiver Agreement must be turned over to Plaintiffs.

      B.      Communications with the Government or Documents Created for the Purpose of Responding to Any Government Investigation

Plaintiffs additionally request communications with the government, or documents created for the purpose of responding to any government investigation. Merck objects to this request. First, Merck contends that the parties previously agreed that these documents would not be subject to turnover. (Defs.' Br. at 9). Second, Merck argues that a party's communications with the government during the course of a grand jury investigation are protected from discovery under Federal Rule of Criminal Procedure 6(e) as matters occurring before a grand jury. (Id.). Third, Merck argues that communications exchanged in the course of negotiating a resolution are protected from disclosure by the settlement privilege. (Id. at 9-10).

First, to the extent the documents Plaintiffs seek involve Merck's communications with the government during the course of a grand jury investigation, those documents need not be produced. Disclosure of grand jury material is contrary to the "long established policy that maintains the secrecy of grand jury proceedings in the federal courts." U.S. v. Jackson, No. 00-138, 2009 WL 1578939, at *2-3 (D.N.J. Jun. 4, 2009) (internal quotation omitted). This principle is codified in Rule 6(e) of the Federal Rules of Criminal Procedure ("Rule 6(e)"). Rule 6(e) applies "not only to information drawn from transcripts of grand jury proceedings, but also to anything which may reveal what occurred before the grand jury." Id. (internal quotation omitted). There are exceptions to Rule 6(e). Courts may authorize disclosure "preliminarily to or in connection with a judicial proceeding." FED. R. CRIM. P. 6(e)(3)(E)(i). A party seeking disclosure of grand jury materials under this exception must show (1) that the materials sought are necessary to avoid possible injustice in another proceeding, (2) the need for disclosure is greater than the need for secrecy, and (3) the request is structured to cover only those materials satisfying the first two requirements. Douglas Oil Co. v. Petrol Stops Nw., 441 U.S. 211, 222, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979). Once the party seeking disclosure makes this showing, the district court "must weigh the competing interests and order so much disclosure as needed for the ends of justice." In re Grand Jury Matter (Catania), 682 F.2d 61, 65 (3d Cir. 1982). Plaintiffs do not address Rule 6(e) in their moving papers. The party moving for court-ordered disclosure bears a heavy burden of demonstrating that an exception applies. Jackson, 2009 WL 1578939, at *3. As Plaintiffs do not even discuss Rule 6(e) in their papers, they cannot satisfy this heavy burden.

Additionally, Courts have reiterated the need to maintain grand jury secrecy even after an investigation has concluded. See U.S. ex rel. Underwood v. Genentech, Inc., No. 03-3983, 2010 WL 3955786 (E.D.Pa. Oct. 5, 2010) (quoting Douglas Oil, 441 U.S. at 222) ("For in considering the effects of disclosure on grand jury proceedings, the courts must consider not only the immediate effects upon a particular grand jury, but also the possible effect upon the functioning of future grand juries . . . . Thus, the interests in grand jury secrecy, although reduced, are not eliminated merely because the grand jury has ended its activities."). Accordingly, the fact that Merck has settled with the government, thus concluding the government investigation, does not change this Court's analysis.

Second, Merck argues that communications exchanged in the course of negotiating a resolution with the government are protected from disclosure. Plaintiffs' request implicates the tension between Federal Rule of Evidence 408 and Federal Rule of Civil Procedure 26. Pursuant to FED. R. EVID. 408, settlement negotiations may not be admissible at trial. FED. R. EVID. 408. In contrast, discovery rules are meant to be construed liberally so as to permit the discovery of any information which is relevant and is reasonably calculated to lead to the discovery of admissible evidence. FED. R. CIV. P. 26. "Courts in this circuit and others, to effectuate the goals of both [Rule 26 and Rule 408] have required a more 'particularized showing' that the evidence sought is relevant and calculated to lead to the discovery of admissible evidence." Block Drug Co. v. Sedona Labs., Inc., No. 06-350, 2007 WL 1183828, at *1 (D. Del. Apr. 19, 2007) (citing Lesal Interiors, Inc. v. Resolution Trust Corp., 153 F.R.D. 552, 562 (D.N.J. 1994)). Plaintiffs' papers fail to make this 'particularized showing.' Merck need not produce any communications regarding settlement

negotiations with the government. [3]

        C.      Bates Ranges, Dates, Search Terms Used, and Custodians of Any Productions Made to the Government

Lastly, Plaintiffs request (1) documents sufficient to identify the Bates numbers and dates of production of documents that Defendants produced to the government in connection with any VIOXX-related investigation and (2) documents sufficient to identify the Merck custodians whose documents Merck has produced to the Government, the date ranges covered by each such custodial productions and the search terms used to collect and produce such documents. (Pls.' Br. at 9) (citing Ex. 1, Request Nos. 9-11). Plaintiffs argue any responsive documents will reveal or clarify the overlap between documents Merck previously produced to the government and documents produced here thus avoiding unnecessary duplication and needless controversy. Merck contends that this disclosure is similarly inappropriate as permitting Plaintiffs to reconstruct the grand jury investigation through Bates ranges, dates, search terms, and custodians would violate Rule 6(e). (Defs.' Br. at 10). Moreover, Merck argues that it has already agreed to produce responsive, non-privileged documents previously provided to the government. As such, the requested disclosure serves no purpose. (Id. at 10-11).

The Court finds that disclosing the Bates ranges, dates, search terms used, and any productions made to the government may reveal what occurred before the grand jury. Rule 6(e) thus governs the disclosure of these materials. In re Grand Jury Matter, 697 F.2d 511, 512 (3d Cir. 1982) ("Rule 6(e)(2) applies to anything which may reveal what occurred before the grand jury") (internal quotation omitted). For the reasons stated above, Rule 6(e) similarly prohibits this Court from granting Plaintiffs' request.

**Documents Regarding the November 1, 2004 Decline in Merck's Stock Price:**

Plaintiffs' Request No. 71 seeks documents concerning any and all discussions, communications or analysis(es) of why the price of Merck securities declined following the publication of a November 1, 2004 *Wall Street Journal* article quoting internal documents that revealed to the market that Merck executives were aware of the CV risks of VIOXX. (Pls.' Br. at 9-10). Plaintiffs argue that responsive documents are highly relevant to both Plaintiffs' loss causation claim and Defendants' scienter as these discussions and/or communications may reflect scienter-related facts referenced in said communications. Additionally, Plaintiffs contend that such scienter facts may impact the duration of the Class Period likely to be certified by the Court, potentially extending through November 1, 2004. (Id. at 10).

Defendants submit that this request is irrelevant because, in ruling on Defendants' motion

---

[3] The Court may reconsider this request should Plaintiffs make the required particularized showing. Additionally, to the extent Plaintiffs seek communications this Court has not specifically addressed, Plaintiffs are free to submit a supplemental informal motion to compel those communications.

to dismiss, the Court found that Plaintiffs had not adequately pled loss causation for the November 1, 2004 corrective disclosure. (Defs.' Br. at 11). In other words, as the issue is no longer pending before the Court, discovery on this issue is improper.

Plaintiffs are not entitled to documents regarding the November 1, 2004 decline in Merck's stock price. At the outset, it is clear that Rule 26's broad definition of what can be obtained through discovery sets a liberal parameter for this Court when determining whether discovery is relevant. Oppenheimer Fund, Inc. v. Sanders, 473 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978) (relevancy is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."). Discovery cannot, however, be obtained without limit. Discovery of matter not "reasonably calculated to lead to the discovery of admissible evidence" is not within Rule 26(b)(1)'s broad scope. Id. at 2390.

Here, Judge Chesler has ruled that, "as a matter of law, the [November 1, 2004] corrective disclosure identified by Plaintiffs, which post-dates the withdrawal of Vioxx from the market, cannot form the basis of loss causation related to the fraud alleged in the Complaint." In re Merck, Nos. 05-1151. 05-2367, 2011 WL 3444199, at *31 (D.N.J. Aug. 8, 2011). "[P]arties may only obtain discovery regarding issues properly presented and pending in the lawsuit. Thus it is proper to deny discovery of matter that is relevant only to claims or defenses that have been stricken. Therefore, rulings granting dispositive motions also define, and narrow, the scope of permissible discovery." Breslin v. Dickinson Tp., No. 09-1396, 2011 WL 3292924, at *7 (M.D.Pa. Aug. 1, 2011) (internal quotation omitted). Accordingly, documents relating to the change in Merck's stock price on November 1, 2004 are presently irrelevant as the Court has already decided that the Complaint failed to allege a plausible connection between the publication of the *Wall Street Journal* article and loss. In re Merck, 2011 WL 3444199, at *31. Any remaining relevance as to, for example, scienter or intent, is outweighed by the burden production will impose upon the parties and the Court.

Plaintiffs additionally argue that they intend to file an amended complaint in this action that would re-allege a class period extending through November 1, 2004. (Pls.' Br. at 10). The Court cannot compel discovery based on anticipated filings. To find otherwise would result in inefficiency for both the parties and the Court, particularly when the discovery sought may prove irrelevant. Plaintiffs' request is thus denied.

### Documents Responsive to Specific Requests from Outside the Class Period:

The parties dispute the cut-off date for certain of Plaintiffs' Requests. Plaintiffs ask that responsive documents from after the end of the Class Period be produced for certain Requests through either June 30, 2005, June 30, 2006, or through the present. (Pls.' Br. at 15-16). In support, Plaintiffs argue that courts routinely hold that the start and end dates of a class period should not dictate a defendant's production of responsive documents. (Id. at 11 citing Nairobi Holdings Ltd. v. Brown Bros. Harriman & Co., 2005 WL 742617, at *2-3 (S.D.N.Y. Mar. 17, 2005); Owens v. Sprint/United Mgmt. Co., 221 F.R.D. 649, 655 (D. Kan. 2004); In re Control Data Corp. Sec. Litig., 1988 WL 92085, at *3 (D.Minn. Dec. 10, 1987)). Second, Plaintiffs contend that numerous

important events have occurred well after the end of the Class Period that are highly relevant to Plaintiffs' claims; namely, Merck's response to SEC notifications, comments made by Merck scientists at an FDA Advisory Committee meeting, Defendant Raymond Gillmartin's early retirement as Merck's Chairman and CEO, and various articles published in the *New York Times*, the *New England Journal of Medicine*, and the *Journal of the American Medical Association*. (Pls.' Br. at 11-14). Plaintiffs believe documents related to these events and disclosures are potentially relevant to Plaintiffs' claims that Defendants were not candid with either investors or the medical community about the risks of VIOXX and are additionally relevant to showing Defendants' state of mind. (Id. at 14).

In contrast, Defendants maintain that Plaintiffs are not entitled to documents dated after December 31, 2004. (Defs.' Br. at 11-13). Merck argues that the pertinent issue in this case is what Defendants knew and believed at the time they made the alleged misstatements - not what they might have known or believed after the close of the Class Period. Accordingly, the publications to which Plaintiffs have cited, for example, are merely self-serving postmortem articles co-authored by plaintiff-side experts that do not bear on the pertinent issue in this action. (Id. at 12, n. 9). In an effort to compromise, however, Defendants have offered to produce documents through the end of the following quarter, *i.e.*, December 31, 2004. In sum, Defendants submit that they have already produced numerous documents post-dating the Class Period and should thus not be required to undertake the enormous burden and expense that will result if they comply with Plaintiffs' Requests.

The class period is not always determinative of what is relevant for discovery. Grossman, et al. v. First Pennsylvania Corp., No. 89-9234, 1992 WL 38402, at *2 (E.D.Pa. Feb. 24, 1992) (citing In re Control Data Sec. Litig., No. 3-85-1241, 1988 WL 92085 (D.Minn. Feb. 22, 1988)). A scheme to defraud under the securities laws may include efforts to conceal the fraud or avoid detection. Id. (citing S.E.C. v. Holschuh, 694 F.2d 130, 143 (7th Cir. 1982). As such, there are numerous instances in which post-offering statements, documents, or conduct, for example, have been treated as admissible evidence on the issue of scienter, intent and knowledge. In re Control Data Sec. Litig., 1988 WL 92085, at *3. Where intent is a critical issue, "there is no hard and fast rule fixing a relevant discovery time period." Grossman, 1992 WL 38402, at *2; In re Control Data Sec. Litig., 1988 WL 92085, at *3 ("[t]here is no rule fixing discovery in class-action litigation to the class period.") (internal citation omitted).

Although relevance is a critical factor in determining whether to compel discovery, the Court must also balance the relevance of the discovery sought with the burden the requested production will cause the non-moving party, here Merck. District courts have broad discretion in deciding discovery matters, to both ensure that a party is not burdened with producing insufficiently probative information and to ensure that the court's resources are allocated in the most judicious and efficient manner. Jaffee Pension Plan v. Household Int'l, Inc., No. 02 C 5893, 2006 WL 3445742, at * 3 (N.D.Ill. Nov. 22, 2006). Federal Rule of Civil Procedure 26(b)(2) specifically requires courts to limit discovery where "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive" and where "the burden or expense of the proposed discovery outweighs its likely benefit, considering the

needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." FED. R. CIV. P. 26(b)(2)(C)(i) & (ii).

Here, the Court finds that the burden of the proposed discovery outweighs the benefit it could potentially generate. Plaintiffs have submitted approximately thirty (30) requests for documents through either June 30, 2005, June 30, 2006, or the present. (Pls.' Br. at 15-16). The requests range from "Merck Board of Director minutes concerning VIOXX" to "documents concerning VIOXX and work performed by public relations or media consulting firms, etc." (See Request Nos. 74 and 83). The sheer breadth of these requests, the time, burden, and expense it will cause Merck, and the potential burden it will impose upon the Court all counsel against compulsion. Jaffee, 2006 WL 334572, at *2. Next, with respect to the series of publications post-dating the Class Period, the Court is not persuaded that said publications were particularly significant events. Merck maintains that the aforementioned articles are, generally, summaries of prior expert reports in related Merck actions. (Defs.' Opp. Br. at 12, n.9). Merck has produced the complete transcripts of this testimony. (Id.). The Court finds that any potentially responsive documents would likely be cumulative and/or duplicative.

Moreover, Merck has already produced over 24 million pages of documents (including numerous documents that post-date the withdrawal of VIOXX in September 2004). (Id. at 13). Although the quantity of production is not determinative, "a voluminous prior production makes it considerably more likely that further discovery will be duplicative." Jaffee, 2006 WL 334572, at *2. "[T]he volume of prior discovery is a useful resource for estimating the burden that will be imposed on defendants by requiring them to repeat procedures similar to those that resulted in the prior production." Id. Lastly, as noted, Defendants have produced post-class period discovery through December 31, 2004, a quarter after the close of the Class Period end date. This further militates against requiring Merck to conduct additional searches for relevant discovery as, again, production will likely be duplicative and cumulative. FED. R. CIV. P. 26(b)(2). Defendants need not produce documents responsive to Plaintiffs' Requests that are dated after December 31, 2004.

**Documents From the Files of Additional Custodians:**

Next, Plaintiffs have requested responsive documents from the custodial files of relevant statisticians, statistical programmers, other additional relevant employees and former employees of Merck, and of any individual Defendants whose custodial files had not been produced. (Pls.' Br. at 16). Specifically, Plaintiffs seek custodial documents from fifty-nine (59) individuals. (Id. at 17). Plaintiffs have attached an Appendix to their deficiency letter identifying each individual statistician and statistical programmer, along with a discussion of why each individual is reasonably likely to have possessed documents relevant to Plaintiffs' claims in their respective custodial files. (Id.). Defendants, who are now in receipt of said Appendix, propose that the parties meet-and-confer with respect to the fifty-nine listed individuals to attempt to agree to a reasonable production. The Court believes this is a prudent path. Accordingly, the parties shall engage in good faith negotiations with respect to the additional custodians listed on Plaintiffs' Appendix. The parties are to submit a joint

letter to the Court if the meet and confer proves unsuccessful in resolving the above dispute regarding any of these custodians.

### Audit Files:

Plaintiffs have additionally requested that Defendants produce a set of "audit files" for any databases concerning the results of any VIOXX-related clinical trials or analyses, including the audit files for specific database files called CTS and SAS. (Pls.' Br. at 18). Defendants maintain that Plaintiffs' request is overly broad and unduly burdensome. (Defs.' Br. at 15). Defendants have nonetheless agreed to produce any SAS audit files collected on a rolling basis. (Id.). In light of Defendants' representation, the Court need not rule on this category of documents at this time. The parties are instructed to submit a joint letter setting forth their position if the parties are ultimately unable to resolve this dispute without further assistance from the Court.

### Shared Drive Documents:

Lastly, Plaintiffs move to compel the production of responsive documents form Merck's shared drives and databases. (Pls.' Br. at 19). Defendants have agreed to search its shared drive files and shall produce any responsive documents to Plaintiffs. (Defs.' Br. at 15). Again, the parties are instructed to reach out to the Court for assistance should they be unable to resolve this dispute.

### Conclusion

For the foregoing reasons, Merck is to turn over purportedly privileged documents previously produced in connection with government investigations concerning VIOXX. Merck need not produce any other documents at this time. The parties are to inform the Court if further intervention is required. The Court will hold an in-person status conference on November 2, 2012 at 12:30 p.m. in Courtroom 4C to address any remaining discovery disputes.

**SO ORDERED.**

                                                  s/Cathy L. Waldor
                                                Cathy L. Waldor, U.S.M.J.