# CRAVATH, SWAINE & MOORE LLP

STUART W. GOLD
JOHN W. WHITE
EVAN R. CHESLER
MICHAEL L. SCHLER
RICHARD LEVIN
KRIS F. HEINZELMAN
B. ROBBINS KIESSLING
ROGER D. TURNER
PHILIP A. GELSTON
RORY O. MILLSON
FRANCIS P. BARRON
RICHARD W. CLARY
WILLIAM P. ROGERS, JR.
JAMES D. COOPER
STEPHEN L. GORDON
DANIEL L. MOSLEY
PETER S. WILSON
JAMES C. VARDELL, III
ROBERT H. BARON
KEVIN J. GREHAN
STEPHEN S. MADSEN
C. ALLEN PARKER
MARC S. ROSENBERG
SUSAN WEBSTER

DAVID MERCADO
ROWAN D. WILSON
CHRISTINE A. VARNEY
PETER T. BARBUR
SANDRA C. GOLDSTEIN
THOMAS G. RAFFERTY
MICHAEL S. GOLDMAN
RICHARD HALL
JULIE A. NORTH
ANDREW W. NEEDHAM
STEPHEN L. BURNS
KEITH R. HUMMEL
DANIEL SLIFKIN
ROBERT I. TOWNSEND, III
WILLIAM J. WHELAN, III
SCOTT A. BARSHAY
PHILIP J. BOECKMAN
ROGER G. BROOKS
WILLIAM V. FOGG
FAIZA J. SAEED
RICHARD J. STARK
THOMAS E. DUNN
MARK I. GREENE
SARKIS JEBEJIAN

WORLDWIDE PLAZA
825 EIGHTH AVENUE
NEW YORK, NY 10019-7475

TELEPHONE: (212) 474-1000
FACSIMILE: (212) 474-3700

———

CITYPOINT
ONE ROPEMAKER STREET
LONDON EC2Y 9HR
TELEPHONE: 44-20-7453-1000
FACSIMILE: 44-20-7860-1150

WRITER'S DIRECT DIAL NUMBER

(212) 474-1422

DAVID R. MARRIOTT
MICHAEL A. PASKIN
ANDREW J. PITTS
MICHAEL T. REYNOLDS
ANTONY L. RYAN
GEORGE E. ZOBITZ
GEORGE A. STEPHANAKIS
DARIN P. MCATEE
GARY A. BORNSTEIN
TIMOTHY G. CAMERON
KARIN A. DEMASI
LIZABETHANN R. EISEN
DAVID S. FINKELSTEIN
DAVID GREENWALD
RACHEL G. SKAISTIS
PAUL H. ZUMBRO
JOEL F. HEROLD
ERIC W. HILFERS
GEORGE F. SCHOEN
ERIK R. TAVZEL
CRAIG F. ARCELLA
TEENA-ANN V. SANKOORIKAL
ANDREW R. THOMPSON
DAMIEN R. ZOUBEK

LAUREN ANGELILLI
TATIANA LAPUSHCHIK
ERIC L. SCHIELE
ALYSSA K. CAPLES
JENNIFER S. CONWAY
MINH VAN NGO
KEVIN J. ORSINI
MATTHEW MORREALE
J. WESLEY EARNHARDT
YONATAN EVEN
BENJAMIN GRUENSTEIN
JOSEPH D. ZAVAGLIA

———

SPECIAL COUNSEL

SAMUEL C. BUTLER
GEORGE J. GILLESPIE, III

———

OF COUNSEL

PAUL C. SAUNDERS

October 16, 2012

*In re Merck & Co., Inc. Securities, Derivative & ERISA Litigation*
The Consolidated Securities Action, No. 05-CV-02367

Dear Magistrate Judge Waldor:

We represent Defendants (other than Dr. Scolnick) in the above-captioned action. We write with respect to Plaintiffs' October 1, 2012 Subpoena *Duces Tecum* (the "Subpoena") to Cornerstone Research ("Cornerstone"), which has served as a non-testifying expert consultant to this firm, counsel for Merck & Co., Inc ("Merck") in this action. Because three Requests in the Subpoena (Request Nos. 2, 3, and 7) seek documents protected from disclosure by the work product doctrine and the non-testifying expert privilege, Defendants respectfully request that this Court quash the Subpoena with respect to those Requests.

**BACKGROUND**

On August 13, 2012, Defendants filed the Expert Report of Paul A. Gompers, Ph.D. (the "Report"), in support of their opposition to Plaintiffs' April 10, 2012 Motion for Class Certification, Appointment of Class Representatives, and Appointment of Class Counsel. In connection therewith, and pursuant to an agreement between the parties, Defendants provided to Plaintiffs the materials considered or relied upon by Professor Gompers in preparing his Report. (*See* Ex. A.) On September 11, 2012, Plaintiffs deposed Professor Gompers for more than seven hours regarding his Report and opinions.

Following the deposition, Plaintiffs sent a letter to Defendants seeking the production of numerous irrelevant and non-discoverable documents from both Merck and Cornerstone, the non-testifying expert firm that supports Professor Gompers. In their letter, Plaintiffs made baseless assertions regarding a supposed "incentive fee" agreement between Merck and Cornerstone, and sought information regarding *all* payments that Professor Gompers has ever received from Cornerstone, regardless of whether they pertain to this action. (*See* Ex. B at 1-2.) Defendants responded by explaining unambiguously and categorically to Plaintiffs that

no "incentive fee" arrangement exists between, or was ever discussed by, Merck and Cornerstone, and by providing Plaintiffs with additional information regarding certain discretionary payments that Professor Gompers has received from Cornerstone—even though such information has no bearing on Professor Gompers's Report and is well beyond what Professor Gompers is required to disclose under the Federal Rules. (*See* Ex. C at 2-3.) Notwithstanding Defendants' clear explanations and additional disclosures, Plaintiffs served Cornerstone with the Subpoena, which seeks the production of the same irrelevant and non-discoverable documents that Plaintiffs already requested from Defendants. (*See* Ex. D at 11-13.)

On October 12, 2012, Cornerstone served objections to each of the Requests in the Subpoena. (*See* Ex. E.) Although the Subpoena is directed to Cornerstone, Request Nos. 2, 3, and 7 pertain to documents that Cornerstone considered and created in connection with its services for Merck as a non-testifying expert in this matter. As shown below, such materials are plainly protected from disclosure under the work product rule and the non-testifying expert privilege that Merck asserts herein.

## LEGAL STANDARD

A court *must* quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(c)(3)(A)(iii). Where, as here, a party subpoenas documents from a third party over which the opposing party claims a "personal right or privilege with regard to the documents sought," the opposing party has standing to move to quash that subpoena. 9A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane & Richard L. Marcus, *Federal Practice & Procedure: Federal Rules of Civil Procedure* § 2459 (3d ed.); *see, e.g.*, *New Park Entm't L.L.C. v. Electric Factory Concerts, Inc.*, No. Civ. A. 98-775, 2000 WL 62315, at *4-5 (E.D. Pa. Jan. 13, 2000) (holding that defendants had standing to challenge subpoena issued to third party for "documents [that] contain confidential research, development and commercial information").

## ARGUMENT

I. CORNERSTONE'S WORK PRODUCT AND MATERIALS THAT IT CONSIDERED ARE NOT DISCOVERABLE (REQUEST NOS. 3 & 7).

The Subpoena's Request No. 3 seeks "[a]ll documents concerning . . . the engagements or other responsibilities to which [] payments [by Cornerstone to Professor Gompers] related" (Ex. D, Sched. A at 4), and Request No. 7 seeks "[a]ll documents concerning all documents or other materials, including data, considered, consulted or relied on *by Cornerstone* in performing its analyses related to Professor Gompers's Report" (*id.* at 8 (emphasis added). Such materials, to the extent they do not overlap with the already disclosed information that Professor Gompers considered for his Report, were considered or prepared (1) at the request of Merck's counsel, and/or (2) in connection with Cornerstone's role as a non-testifying expert. As explained below, materials considered or prepared by Cornerstone at the request of Merck's counsel are protected from disclosure by the work product rule, and materials considered or prepared by Cornerstone that otherwise reflect "facts known" or "opinions held" by Cornerstone in this matter are protected under the non-testifying expert privilege.

2

A.  Materials Considered or Prepared by Cornerstone at the Request of Merck's Counsel Are Protected Under the Work Product Rule.

Plaintiffs are not entitled to discovery of any materials considered or prepared by Cornerstone at the request of Merck's counsel. Under Rule 26, a party may not discover materials that "are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney[or] consultant . . .)" without demonstrating a "substantial need" for such materials and the inability, "without undue hardship, [to] obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A); *Hickman v. Taylor*, 329 U.S. 495, 510-12 (1947). In particular, materials that reflect the "mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation," Fed. R. Civ. P. 26(b)(3)(B), which are often referred to as "core" work product, are "generally afforded near absolute protection from discovery" and are only discoverable under "extraordinary circumstances," *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 663-64 (3d Cir. 2003). As Rule 26 states and as the Third Circuit has made clear, materials considered or prepared by non-testifying experts retained in anticipation of litigation are fully protected under the work product rule because parties have an expectation that their communications with non-testifying experts will be confidential, enabling them to engage in "frank and open discussions" and permitting the experts to consider and prepare documents that may reflect "counsel's mental impressions, opinions, conclusions, and legal theories." *See id.* at 665, 667 (holding that non-testifying litigation consultants qualify as non-attorneys that are protected under the work product rule); *see also* Fed. R. Civ. P. 26(b)(3)(A) (including a party's "consultant" within the scope of the Rule). Such protection is necessary to avoid the "unfairness and sharp practices" that would result if these materials were "open to opposing counsel on mere demand." *Hickman*, 329 U.S. at 511. Merck is entitled to such protection here.

*First*, Plaintiffs cannot show a "substantial need" for the requested materials, which include "core" work product. Defendants have already produced all materials that Professor Gompers considered in drafting his Report, including various materials that Cornerstone also considered or analyzed in its supporting role. Recognizing that they are entitled to nothing more, Plaintiffs have concocted the theory that Cornerstone, not Professor Gompers, was the true author of the Report. (*See* ECF No. 400, at 1.) Plaintiffs' argument, however, is contradicted by Professor Gompers's own sworn testimony: "I drafted the report." (*See* Ex. F, Gompers Tr. at 13:2.) Professor Gompers also testified that "under [his] direction," Cornerstone performed certain tasks such as pulling research articles, collecting data, reviewing the analysis performed by Plaintiffs' expert, conducting analyses, and providing comments to the drafts of his Report. (*See id.* at 10:15-13:8.) None of this assistance from Cornerstone demonstrates that the Report is not "his."[1] Because Plaintiffs cannot offer any reason why they

---

[1] Indeed, Plaintiffs' own expert, Dr. Tabak, testified that "maybe half a dozen" people from NERA assisted him in preparing his Declaration and that he gave "broad direction" to those people who performed various tasks in support of his Declaration, including creating exhibits, "doing the underlying analyses," and reviewing his Declaration. (Ex. G, Tabak Tr. at 86:6-88:8, 91:3-16, 93:13-18, 94:21-95:16.) Thus, Plaintiffs' own expert used *his* supporting firm to perform the same types of tasks that Plaintiffs now claim taint Professor Gompers's Report.

are entitled to Cornerstone's work product, they cannot show any "need," let alone a "substantial need," for such discovery.

*Second*, Plaintiffs have, and had, adequate means to obtain substantially equivalent information from other sources. Indeed, the data underlying Professor Gompers's Report has already been disclosed to Plaintiffs. Further, Plaintiffs had ample opportunity to discover information regarding the analyses reflected in the Report directly from Professor Gompers, both through the disclosures made in connection with his Report and over the course of the more than seven hours during which Plaintiffs deposed him. *See Reckitt Benckiser LLC v. Amneal Pharm., LLC*, No. 11-6609 (FLW), 2012 WL 2871061, at *6 (D.N.J. July 12, 2012) (finding that where party could have obtained information by examining opposing expert's test results and by conducting its own tests, party can obtain substantially equivalent information without undue hardship). Unable to rebut Defendants' opposition to their class certification motion, Plaintiffs are now engaged in a fishing expedition for additional information from Cornerstone that is either protected by the work product doctrine or was already disclosed by other means. Such discovery is prohibited.

      B.      Materials Considered and Documents Prepared by Cornerstone Are Also Protected Under the Non-Testifying Expert Privilege.

Even if the material Plaintiffs seek were not subject to work product protection, materials considered or prepared by Cornerstone in connection with this action would be protected from disclosure by the non-testifying expert privilege. Unlike testifying experts, who may be deposed and must make certain disclosures, *see* Fed. R. Civ. P. 26(a)(2)(B), (b)(4)(C), non-testifying experts are only subject to discovery under "exceptional circumstances." Fed. R. Civ. P. 26(b)(4)(D). Where a party has retained an expert in anticipation of litigation or to prepare for trial and that expert is not expected to be called at trial, the "facts known" and "opinions held" by that expert are broadly shielded from discovery. *Vanguard Sav. & Loan Ass'n & VSL Serv. Corp. v. Banks*, No. CIV. A. 93-4627, 1995 WL 71293, at *3 (E.D. Pa. Feb. 17, 1995). A party seeking to defeat these protections faces a "heavy burden." *Id.*

Because Merck's counsel have retained Cornerstone solely in this protected capacity, the "facts known" and "opinions held" by Cornerstone, which are reflected in the materials that Plaintiffs seek, are shielded from discovery by Rule 26(b)(4)(D). And Plaintiffs cannot carry the "heavy burden" of showing that "exceptional circumstances" exist that could possibly warrant disclosure of this plainly protected material. As Rule 26 makes clear, "exceptional circumstances" exist only when "it is impracticable for the party to obtain facts or opinions on the same subject by other means," a limitation which echoes the underlying policy that counsel should be free "to obtain the expert advice they need to properly evaluate and present their clients' positions without fear that every consultation with an expert may yield grist for the discovery mill." *In re Cendant Corp. Sec. Litig.*, 343 F.3d at 664 n.7 (quoting 6 James Wm. Moore et al., *Moore's Federal Practice* § 26.80[2]); *see also Comm'r of Dept. of Planning and Natural Res. v. Century Aluminum Co.*, 279 F.R.D. 317, 318-19 (D.V.I. 2012); *Vanguard*, 1995 WL 71293, at *3. Moreover, even if exceptional circumstances were present, and they are not, a court must still "analyze the policy considerations underlying the rule to determine whether they outweigh the exceptional circumstances." *In re Cendant Corp. Sec. Litig.*, 343 F.3d at 664 n.7.

The information that Plaintiffs seek—analyses performed by a non-testifying expert using publicly available data—is precisely the type of information that Rule 26(b)(4)(D) was designed to protect.  Cornerstone has no greater access to information regarding the financial markets and the markets for Merck securities than Plaintiffs do, and Plaintiffs have had ample opportunity to discover such information directly from Professor Gompers, both through the disclosures made in connection with his Report and during his deposition.  *See Doe v. District of Columbia*, 231 F.R.D. 27, 41 (D.D.C. 2005) (holding that opportunity to depose testifying expert "as to the basis of her opinions and expert report" constituted "other means" by which party could discover information gathered by non-testifying expert); *Lowery v. Circuit City Stores, Inc.*, 158 F.3d 742, 765 (4th Cir. 1998) (same), *vacated on other grounds*, 527 U.S. 1031 (1999).  Instead, by serving this Subpoena, Plaintiffs attempt to access the privileged analyses that Merck's counsel directed its non-testifying expert consultant to perform in order to "properly evaluate and present [its] client['s] position[]."  *In re Cendant Corp. Sec. Litig.*, 343 F.3d at 664 n.7 (quoting 6 James Wm. Moore et al., *Moore's Federal Practice* § 26.80[2]).  Such tactics are plainly prohibited by Rule 26, and Plaintiffs' Requests for materials considered and prepared by Cornerstone in connection with its non-testifying expert services should be quashed.

II.     DOCUMENTS CONCERNING THE RETENTION AGREEMENT BETWEEN MERCK'S COUNSEL AND CORNERSTONE ARE NOT DISCOVERABLE (REQUEST NO. 2).

The Subpoena's Request No. 2 seeks "[a]ll documents concerning any fee agreements between Merck and Cornerstone related to [this action], including any communications concerning such fee agreements."  (Ex. D, Sched. A at 4.)  The retention agreement between Merck's counsel and Cornerstone—and any documents related to that agreement—are subject to the non-testifying expert privilege.  The agreement between Cravath and Cornerstone governs Cornerstone's relationship with Merck's counsel, and its disclosure would necessarily reveal confidential communications between Merck's counsel and its non-testifying expert consultant.  As such, the agreement, including documents and communications related to the agreement, are protected from discovery.  *See Genentech, Inc. v. Tr. of Univ. of Penn.*, No. C 10-2037 LHK (PSG), 2011 WL 6002501, at *3 n.24 (N.D. Cal. Nov. 30, 2011) (denying discovery of communications regarding consulting agreement between party and non-testifying expert, including records of payments); *Synopsys, Inc. v. Ricoh Co., Ltd.*, Nos. C-03-2289 MJJ (EMC), C-03-4669 MJJ (EMC), 2006 WL 2458721, at *2 (N.D. Cal. Aug. 22, 2006) (denying discovery of consulting agreement itself and documents related to payments made to non-testifying expert).  Indeed, Plaintiffs offer no basis for why they are entitled to documents relating to this agreement, other than unsupported speculation about "incentive payments" made to Cornerstone, which Defendants have unqualifiedly represented do not exist.  (*See* Ex. C at 3; Ex. H at 3-4.)  Moreover, in the course of corresponding with Plaintiffs regarding the fee agreement between Merck's counsel and Cornerstone, Defendants have made clear that Cornerstone's fee arrangement is a pure hourly fee arrangement.  (*See* Ex. C at 3.)  Plaintiffs are entitled to nothing more.  As such, Plaintiffs' Request for documents concerning Cornerstone's retention and fee agreement should be quashed.

For the reasons set forth above, Defendants respectfully request that the Subpoena to Cornerstone be quashed with respect to Request Nos. 2, 3 and 7.

Respectfully submitted,

Robert H. Baron

Honorable Cathy L. Waldor, U.S.M.J.
   United States District Court
      District of New Jersey
         Martin Luther King, Jr. Federal Building
         & U.S. Courthouse
            50 Walnut Street
               Newark, NJ 07101

VIA ELECTRONIC FILING

Copies to:

David A. P. Brower, Esq.
   Brower Piven
      A Professional Corporation
         488 Madison Avenue, Eighth Floor
            New York, New York 10022

Salvatore J. Graziano, Esq.
   Bernstein Litowitz Berger & Grossmann LLP
      1285 Avenue of the Americas
      New York, NY 10019

Mark Levine, Esq.
   Stull, Stull & Brody
      6 East 45th Street, 5th Floor
         New York, NY 10017

Richard H. Weiss, Esq.
   Milberg LLP
      One Pennsylvania Plaza
         New York, NY 10119

Paul B. Brickfield, Esq.
   Brickfield & Donahue
      70 Grand Avenue
         River Edge, NJ 07661

James E. Cecchi, Esq.
   Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein
      5 Becker Farm Road
         Roseland, NJ 07068

Alfred C. Decotiis, Esq.
   Decotiis, Fitzpatrick & Cole LLP
      Glenpointe Centre West
         500 Frank W. Burr Boulevard
            Teaneck, NJ 07666

Geoffrey C. Jarvis, Esq.
   Grant & Eisenhofer P.A.
      485 Lexington Avenue, 29th Floor
         New York, NY 10017

John A. Kehoe, Esq.
   Kessler Topaz Meltzer & Check LLP
      280 King of Prussia Road
         Radnor, PA 19087

William H. Gussman, Jr., Esq.
   Schulte Roth & Zabel LLP
      919 Third Avenue
         New York, NY 10022

Eric S. Parnes, Esq.
   Hughes Hubbard & Reed LLP
      1775 I Street, NW
         Washington, DC 20006

VIA EMAIL PDF