# Exhibit C

# CRAVATH, SWAINE & MOORE LLP

STUART W. GOLD
JOHN W. WHITE
EVAN R. CHESLER
MICHAEL L. SCHLER
RICHARD LEVIN
KRIS F. HEINZELMAN
B. ROBBINS KIESSLING
ROGER D. TURNER
PHILIP A. GELSTON
RORY O. MILLSON
FRANCIS P. BARRON
RICHARD W. CLARY
WILLIAM P. ROGERS, JR.
JAMES D. COOPER
STEPHEN L. GORDON
DANIEL L. MOSLEY
PETER S. WILSON
JAMES C. VARDELL, III
ROBERT H. BARON
KEVIN J. GREHAN
STEPHEN S. MADSEN
C. ALLEN PARKER
MARC S. ROSENBERG
SUSAN WEBSTER

DAVID MERCADO
ROWAN D. WILSON
CHRISTINE A. VARNEY
PETER T. BARBUR
SANDRA C. GOLDSTEIN
THOMAS G. RAFFERTY
MICHAEL S. GOLDMAN
RICHARD HALL
JULIE A. NORTH
ANDREW W. NEEDHAM
STEPHEN L. BURNS
KEITH R. HUMMEL
DANIEL SLIFKIN
ROBERT I. TOWNSEND, III
WILLIAM J. WHELAN, III
SCOTT A. BARSHAY
PHILIP J. BOECKMAN
ROGER G. BROOKS
WILLIAM V. FOGG
FAIZA J. SAEED
RICHARD J. STARK
THOMAS E. DUNN
MARK I. GREENE
SARKIS JEBEJIAN

DAVID R. MARRIOTT
MICHAEL A. PASKIN
ANDREW J. PITTS
MICHAEL T. REYNOLDS
ANTONY L. RYAN
GEORGE E. ZOBITZ
GEORGE A. STEPHANAKIS
DARIN P. MCATEE
GARY A. BORNSTEIN
TIMOTHY G. CAMERON
KARIN A. DEMASI
LIZABETHANN R. EISEN
DAVID S. FINKELSTEIN
DAVID GREENWALD
RACHEL G. SKAISTIS
PAUL H. ZUMBRO
JOEL F. HEROLD
ERIC W. HILFERS
GEORGE F. SCHOEN
ERIK R. TAVZEL
CRAIG F. ARCELLA
TEENA-ANN V. SANKOORIKAL
ANDREW R. THOMPSON
DAMIEN R. ZOUBEK

LAUREN ANGELILLI
TATIANA LAPUSHCHIK
ERIC L. SCHIELE
ALYSSA K. CAPLES
JENNIFER S. CONWAY
MINH VAN NGO
KEVIN J. ORSINI
MATTHEW MORREALE
J. WESLEY EARNHARDT
YONATAN EVEN
BENJAMIN GRUENSTEIN
JOSEPH D. ZAVAGLIA

SPECIAL COUNSEL
SAMUEL C. BUTLER
GEORGE J. GILLESPIE, III

OF COUNSEL
PAUL C. SAUNDERS

WORLDWIDE PLAZA
825 EIGHTH AVENUE
NEW YORK, NY 10019-7475

TELEPHONE: (212) 474-1000
FACSIMILE: (212) 474-3700

CITYPOINT
ONE ROPEMAKER STREET
LONDON EC2Y 9HR
TELEPHONE: 44-20-7453-1000
FACSIMILE: 44-20-7860-1150

WRITER'S DIRECT DIAL NUMBER

(212) 474-1513

September 28, 2012

*In re Merck & Co., Inc. Securities, Derivative & ERISA Litigation*
The Consolidated Securities Action, No. 05-CV-02367

Dear Adam:

   I write in response to your letter dated September 14, 2012 (the "September 14 Letter") regarding certain issues that you claim were raised during the September 11, 2012 deposition of Professor Paul A. Gompers.

   *First*, we believe the requests set forth in the September 14 Letter far exceed what Plaintiffs are entitled to under Federal Rule of Civil Procedure 26(a)(2)(B)(vi). As your own letter makes clear, Rule 26(a)(2)(B)(vi) requires that a testifying expert witness provide "a statement of the compensation to be paid for the study and testimony *in the case*," Fed. R. Civ. P. 26(a)(2)(B)(vi) (emphasis added), not an exhaustive list of all payments that Professor Gompers has ever received in any litigation in which he has ever served as a testifying expert witness.

   In his report, Professor Gompers disclosed his hourly rate for his "time and services" on this matter and further disclosed that he also receives "periodic compensation from Cornerstone Research [('Cornerstone')]" which is made "entirely at [Cornerstone]'s discretion." (Expert Report of Paul A. Gompers, Ph.D., dated August 13, 2012 (the "Report"), ¶ 4.) He also disclosed his "understanding" that the "periodic compensation" is "based generally on [his] services for and work with [Cornerstone], including the level of fees generated on matters in which [Cornerstone] provide[s] support to [him]" but that the payments he receives from Cornerstone are "in no way based on the content of [his] opinions or the outcome of any matter." (*Id.*) Moreover, as Professor Gompers testified, the payments that he periodically receives from Cornerstone are based on his work on various matters—not just *this* matter—and also take into account his participation in speaking engagements and training sessions for Cornerstone staff. (*See* Gompers Tr. at 17:9-18:21, 20:2-22:13.) These payments are not determined by a formulaic "methodology," but are instead determined in the discretionary manner that Professor Gompers described at his deposition, taking into account, among other things, the level of fees generated

by Cornerstone in the matters on which Professor Gompers works.  (*Id.* at 33:6-35:5; Gompers Rpt. ¶ 4.)  Indeed, while Dr. Tabak has not disclosed whether he receives any bonuses or other discretionary compensation from NERA beyond the hourly rate he identified in his April 10, 2012 Declaration (the "Declaration"), Dr. Tabak testified that NERA makes "adjustments" to his compensation based on the amount of revenue he generates for NERA and that the level of his compensation "correlat[es]" with the level of his revenue generation for his firm.  (Tabak Tr. at 13:10-14.)  Yet Dr. Tabak's Declaration makes *no* mention of this additional compensation related to the revenue he will generate for NERA, including revenue from this case.  (*See* Tabak Decl. ¶ 9.)

During his deposition, Professor Gompers testified that Cornerstone sends him an "annual check" that he "usually" receives in April.  (*See* Gompers Tr. at 16:3-8, 19:12-13.)  Since his deposition, Professor Gompers has reviewed his records, and informed us that (1) while he typically receives a discretionary payment from Cornerstone in either March or April, he may receive discretionary payments from Cornerstone at other points during the year, and the payment in March or April is the final discretionary payment he receives in respect of the preceding year; and (2) in late August 2012, he received a mid-year discretionary payment from Cornerstone in the amount of $300,000 pre-tax.  Professor Gompers will clarify his deposition testimony in his errata sheet to reflect that this payment was the most recent periodic payment he has received from Cornerstone.  With respect to Plaintiffs' complaint that Professor Gompers did not state in his Report that "he will receive an additional payment from Cornerstone in April 2013 related to his work in this case" (Sept. 14 Ltr. at 1), we note that any future payment that Professor Gompers might receive from Cornerstone is "hypothetical"—as Plaintiffs' counsel acknowledged during Professor Gompers's deposition (Gompers Tr. at 24:16-25).

Cornerstone has no contractual obligation to make payments to Professor Gompers, and it has no written agreement with Professor Gompers related to such payments.  Any payments that Professor Gompers may receive from Cornerstone are discretionary, and are wholly unrelated to and in no way contingent upon the opinions offered by Professor Gompers or on the outcome of any case on which Professor Gompers works.

*Second*, Plaintiffs are not entitled to discovery of all payments that Professor Gompers has received "during the entire time period" that he has worked with Cornerstone.  (Sept. 14 Ltr. at 2.)  As Plaintiffs acknowledge, and as noted above, Rule 26(a)(2)(B)(vi) governs the disclosure of a testifying expert's compensation "for the study and testimony in *the case*" in which that testimony is offered.  (*Id.* (quoting Fed. R. Civ. P. 26(a)(2)(B)(vi) (emphasis added)).)  Disclosure of all payments that Professor Gompers has received from Cornerstone "during the entire time period" in which he has worked on any matters with Cornerstone is plainly irrelevant to the compensation he has received, or will receive, for his work related to *this case*.  Further, Rule 26(a)(2)(B)(vi) requires only that an expert's report disclose a "statement" of the expert's compensation; it does not provide for discovery of any *documents* related to such compensation.  Subject to and without waiver of Defendants' objection that Professor Gompers has no obligation to disclose all payments he has received "during the entire time period" that he has worked on any matters with Cornerstone, we note that Professor Gompers testified at his deposition that he believes the "annual compensation" he has received from Cornerstone over the past "four or five years . . . has been anywhere from say 100 to 250 thousand dollars."  (Gompers Tr. at 16:3-12.)  That was Professor Gompers's best estimate, at the time of his deposition, of the

annual payments he had received from Cornerstone in several prior years. Professor Gompers has since informed us that, based on his post-deposition review of his records, the actual range of annual amounts paid by Cornerstone to Professor Gompers during the calendar years from 2007 through 2011 was $155,000 to $545,000. Those annual payment amounts, which were not related, in whole, in part or in any way whatsoever to any work he has done on this case, are clearly irrelevant. Nonetheless, Professor Gompers will correct such figures in his errata sheet, as they were based on his best estimate and recollection at the time of his deposition, without the benefit of his having consulted his records, of the amounts of discretionary payments he had received from Cornerstone in the years from 2007 to 2011.

*Third*, Plaintiffs' insinuation that there exists an "incentive agreement" between Merck and Cornerstone is baseless. Merck and Cornerstone have never discussed an incentive agreement or arrangement of any sort. Merck has not agreed to pay Cornerstone any kind of "incentive payment" or "success fee." Merck has paid and will continue to pay Cornerstone hourly fees for the time its employees spend performing non-testifying services at Merck's attorneys' direction. Cornerstone's fees are in no way dependent upon any conclusions or findings that Professor Gompers may reach or the outcome of this case. Plaintiffs have provided no reason other than unsupported speculation as to why they are entitled to information regarding the relationship between Merck and Cornerstone, and your purported "need to explore" the fee arrangements has no basis in law and is nothing more than a fishing expedition.

*Fourth*, Plaintiffs are not entitled to discovery of Cornerstone, which has been retained by Merck as a non-testifying expert. *See* Fed. R. Civ. P. 26(b)(4)(D) (shielding non-testifying experts from discovery); *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 663-64 (3d Cir. 2003) (same). Cornerstone's non-testifying role not only precludes any discovery of Cornerstone's work product and underlying materials, but it also prohibits any deposition of Cornerstone's employees. Therefore, Defendants do not agree to make a representative of Cornerstone available for deposition in addition to the more than seven hours of deposition testimony that Plaintiffs elicited from Professor Gompers, nor do they agree to produce "[a]ll materials, including data, considered, consulted or relied on by Cornerstone in performing its analyses related to Professor Gompers' report." (Sept. 14 Ltr. at 2.)

Further, it should be noted that Plaintiffs are seeking materials from Defendants' *non-testifying* expert when Plaintiffs themselves have failed to produce similar materials from their own *testifying* expert. In my letter dated April 24, 2012 (the "April 24 Letter"), I requested that Plaintiffs produce "all materials, including any data, relied upon or *considered* by Dr. Tabak" (Apr. 24 Ltr. at 1 (emphasis added)). In response, Dr. Tabak produced only those materials explicitly cited (or the underlying materials for what is cited) in his Declaration. Dr. Tabak did not produce *any* materials that he considered but did not include in his Declaration. And Dr. Tabak's testimony from his deposition shows that he performed work that was not produced to Defendants. Dr. Tabak testified during his deposition that, in addition to the analyses described in his Declaration, he also conducted a "directional test" on the price response of Merck's stock to certain earnings announcements. (Tabak Tr. at 146:4-147:12.) None of Dr. Tabak's data, analyses, results or conclusions from this additional "directional test" was ever produced to Defendants, despite my request for such materials in the April 24 Letter. Rather than making blunderbuss requests, without any basis in the law or the Rules, for materials

considered by Defendants' non-testifying expert, Cornerstone, Plaintiffs should promptly produce all materials that Dr. Tabak considered, as the Federal Rules require.

*Fifth*, Defendants are not aware of any "instances in which a court has disqualified or criticized an expert" *because* of the "nature of the expert's fee arrangement with Cornerstone" or the expert's alleged "failure to fully disclose [such arrangement]." (Sept. 14 Ltr. at 2.) Your September 14 Letter cryptically asserts that Plaintiffs "understand that at least one court has struck an expert who had the same compensation arrangement with Cornerstone in the past." (*Id.*) If that statement is intended to mean that Plaintiffs are aware of a case in which a court has stricken or refused to admit an expert's testimony *because* of that expert's compensation arrangement (or any other aspect of the expert's relationship) with Cornerstone (and not for some other reason unrelated to that expert's relationship with Cornerstone), please let us know in which case that occurred and provide us with the citation and/or court documents supporting such an assertion.

*Sixth*, you have also asked whether Ms. Iris Jiang was physically present during Dr. Tabak's July 12, 2012 deposition. (Sept. 14 Ltr. at 3.) Like your co-counsel, Mr. Levine, Ms. Jiang arrived late to the deposition and was physically present for a portion of Dr. Tabak's testimony. Defendants note that while the fact of Mr. Levine's arrival does appear in the deposition transcript (*see* Tabak Tr. at 184:4-5), he never announced his arrival to opposing counsel.

Regards,

Christopher D. Belelieu

Adam Wierzbowski, Esq.
   Bernstein Litowitz Berger & Grossman LLP
      1285 Avenue of the Americas
         New York, NY 10019

BY EMAIL PDF

Copies to:

David A. P. Brower, Esq.
   Brower Piven
     A Professional Corporation
        488 Madison Avenue, Eighth Floor
          New York, New York 10022

Salvatore J. Graziano, Esq.
   Bernstein Litowitz Berger & Grossmann LLP
      1285 Avenue of the Americas
         New York, NY 10019

Mark Levine, Esq.
   Stull, Stull & Brody
      6 East 45th Street, 5th Floor
         New York, NY 10017

Richard H. Weiss, Esq.
   Milberg LLP
      One Pennsylvania Plaza
         New York, NY 10119

Paul B. Brickfield, Esq.
   Brickfield & Donahue
      70 Grand Avenue
         River Edge, NJ 07661

James E. Cecchi, Esq.
   Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein
      5 Becker Farm Road
         Roseland, NJ 07068

Alfred C. Decotiis, Esq.
   Decotiis, Fitzpatrick & Cole LLP
      Glenpointe Centre West
         500 Frank W. Burr Boulevard
            Teaneck, NJ 07666

Geoffrey C. Jarvis, Esq.
   Grant & Eisenhofer P.A.
      485 Lexington Avenue, 29th Floor
         New York, NY 10017

John A. Kehoe, Esq.
   Kessler Topaz Meltzer & Check LLP
      280 King of Prussia Road
         Radnor, PA 19087

William H. Gussman, Jr., Esq.
   Schulte Roth & Zabel LLP
      919 Third Avenue
         New York, NY 10022

Eric S. Parnes, Esq.
 Hughes Hubbard & Reed LLP
  1775 I Street, NW
   Washington, DC 20006

BY EMAIL PDF