<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| IN RE MERCK & CO., INC. SECURITIES, DERIVATIVE & "ERISA" LITIGATION | : : : : | **MDL No. 1658 (SRC)** |
| | : : | **Civil Action No. 05-1151 (SRC)** **Civil Action No. 05-2367 (SRC)** |
| THIS DOCUMENT RELATES TO: THE CONSOLIDATED SECURITIES ACTION | : : : : : | **OPINION** |

<u>**CHESLER**</u>, District Judge

Plaintiffs in this consolidated securities fraud class action bring this motion for class certification pursuant to Federal Rule of Civil Procedure 23(b)(3).  Defendants have opposed the motion.  The Court has opted to rule on the motion without oral argument, pursuant to Federal Rule of Civil Procedure 78.  For the reasons set forth below, the motion will be granted.

I.    **BACKGROUND**

This securities fraud action arises out of Defendants' alleged misrepresentations and omissions with regard to the cardiovascular safety profile of Vioxx, a prescription pain medication manufactured and sold by Defendant Merck & Co., Inc. ("Merck") until it was withdrawn from the market on September 30, 2004.   Broadly stated, the Corrected Consolidated Fifth Amended Class Action Complaint (the "Class Action Complaint") alleges that Merck and

various individuals employed by Merck[1] overstated the commercial viability of Vioxx by

misstating or failing to disclose material facts concerning a possible link between Vioxx and an

increased risk of heart attack or other cardiovascular events. Plaintiffs, who invested in Merck

securities, contend that Defendants' false statements and omissions artificially inflated the value

of the securities, resulting in a loss to investors upon disclosure of corrective information

allegedly revealing the truth about Vioxx's safety profile and/or Merck's knowledge of that

subject.  Plaintiffs seek to certify the following class:

> All persons and entities who, from May 21, 1999 to September 29, 2004,
> inclusive (the "Class Period"), purchased or otherwise acquired Merck &
> Co., Inc. ("Merck") common stock or call options, or sold Merck put
> options, and were damaged thereby (the "Class").

(Pl. Br. at 1.)[2]

The Plaintiffs that this Court previously appointed to serve as Lead Plaintiffs pursuant to

the Private Securities Litigation Reform Act of 1995 ("PSLRA") wish to serve as representatives

of the proposed class.  They are the Public Employees' Retirement System of Mississippi

("MPERS"), Steven LeVan, Jerome Haber and Richard Reynolds (collectively, "Lead

---

[1] The Court will collectively refer to Merck and the individual defendants as "Merck" or "Defendants."

[2] Plaintiffs make clear in their motion that they have shortened the Class Period to conform to this Court's holding, made in connection with Defendants' Rule 12(b)(6) motion, that statements and omissions occurring on and after the date Vioxx was withdrawn from the market are not actionable for lack of materiality and lack of loss causation.  See In re Merck Sec. Derivative & ERISA Litig., No. 05-1151, 2011 WL 3444199, at *17-18, *33-34 (D.N.J. Aug. 8, 2011).  Thus, they have placed an end date of September 29, 2004 on the Class Period.  Plaintiffs note that, in so doing, they do not concede that their claims relating to the alleged corrective disclosure of November 1, 2004 do not support a § 10(b) claim and expressly reserve their right to seek reinstatement of those claims and to seek certification of a class based on a class period extending to October 29, 2004, the end date pled in the Class Action Complaint.

Plaintiffs"). MPERS is a $20 billion government defined benefit pension plan established for the benefit of current and retired public employees of the State of Mississippi. It is administered by a 10-person board and retains professional outside investment managers, to whom it delegates responsibility for making specific investment decisions with respect to the MPERS' portfolio. MPERS purchased shares of Merck common stock during the Class Period. Le Van is a 51-year-old, college-educated employee of a software company who purchased 500 shares of Merck common stock on June 21, 2001 and held them throughout the Class Period. He purchased Merck stock based on his understanding that it was a stable and prudent investment and based on the company's stock prices and online information. Reynolds is a 73-year-old retiree living in Florida with a decades-long history of investing in his own portfolio. He bought 2,000 shares of Merck common stock in November 2001 and another 1,000 shares in July 2002 through his living revocable trust. Reynolds is the revocable trust's settlor, and together with his wife, is the trust's co-trustee and co-beneficiary. He makes all investment decisions for the trust, including the decision to purchase Merck stock. Haber, now retired, worked for many years in private practice as a psychiatrist and also researching drugs for a large drug company. He purchased 1,500 shares of Merck common stock during the Class Period through an investment advisor, to whom Haber had delegated discretionary authority to make all investment decisions, including the decision to purchase Merck stock.

The Court's rulings on Defendants' motions pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(c) dismissed various claims asserted in the Class Action Complaint. Lead Plaintiffs move for certification under Rule 23(b)(3) as to the following remaining claims: (1) claims based on fraudulent statements and omissions in violation of Exchange Act § 10(b) and

Rule 10b-5, claims which survive only as to Merck and individual Defendants Edward Scolnick

and Alise Reicin; (2) control person claims under § 20(a) of the Exchange Act against the Officer

Defendants[3] and (3) insider trading claims under Exchange Act § 20A against Scolnick.  While

various claims under the Securities Act of 1933 remained in the case following dispositive

motion practice, and Plaintiffs' initial brief on this motion argued for certification of those

claims, Plaintiffs have since explicitly stated that they "no longer seek certification of any claims

under §§ 11, 12 or 15 of the Securities Act." (Pl. Reply Br. at 3 n.2.)  The Court thus proceeds to

examine whether the Exchange Act claims listed above may be certified pursuant to Rule

23(b)(3).


## II.   STANDARD FOR CERTIFICATION UNDER RULE 23

Rule 23 of the Federal Rules of Civil Procedure sets forth a two-pronged standard for

class certification.  To obtain certification, a plaintiff must demonstrate that the putative class

meets the threshold requirements of Rule 23(a) as well as one of the three Rule 23(b) categories

under which he wishes to proceed on behalf of a class. Fed. R. Civ. P. 23; Wal-Mart Stores, Inc.

v. Dukes, 131 S.Ct. 2541, 2548-49 (2011).  Rule 23(a) requires a showing of: (1) numerosity; (2)

commonality; (3) typicality; and (4) adequacy of representation. See Fed. R. Civ. P. 23(a);

Behrend v. Comcast Corp., 655 F.3d 182, 189 (3d Cir. 2011), cert. granted in part on other

grounds, 80 U.S.L.W. 3442 (U.S. June 25, 2012) (No. 11-864).  In this case, Plaintiffs seek

certification under Rule 23(b)(3), which applies when the putative class primarily seeks monetary

---

[3] The "Officer Defendants" are identified in the August 8, 2011 Opinion adjudicating the
Rule 12(b)(6) motion as to the Class Action Complaint (the "August 8 Opinion").  See In re
Merck, 2011 WL 3444199, at * 19.

relief. Dukes, 131 S.Ct. at 2558.  Rule 23(b)(3) sets forth two requirements: (1) "that the questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3).  "These requirements are known as predominance and superiority." Behrend, 655 F.3d at 190. Moreover, "[i]t has long been held that Rule 23 implicitly requires that prospective plaintiffs propose a class definition that is readily ascertainable based on objective criteria." Agostino v. Quest Diagnostics, Inc., 256 F.R.D. 437, 438 (D.N.J. 2009).

In moving for class certification, the plaintiff has the burden of proving by a preponderance of the evidence that all requirements of Rule 23 are met. General Telephone Co. of the Southwest v. Falcon, 457 U.S. 147, 161 (1982); In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 307 (3d Cir. 2009).  The Supreme Court emphasized in its class certification decision in Wal-Mart Stores, Inc. v. Dukes that Rule 23 does not set forth a mere pleading standard; the plaintiff must in fact prove that the rule's requirements have been satisfied.  Dukes, 131 S.Ct. at 2551.  In considering a motion for class certification, the court must conduct a rigorous analysis, which will frequently "entail some overlap with the merits of the plaintiff's underlying claims."  Id. (quoting Falcon, 457 U.S. at 160.)  "A class certification decision requires a thorough examination of the factual and legal allegations." Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 166 (3d Cir. 2001)); see also Dukes, 131 S.Ct. at 2551-52 (holding that Rule 23 analysis generally involves consideration of the factual and legal issues that comprise the plaintiff's cause of action).  It is essential that a court evaluate the elements of the legal claims "'through the prism' of Rule 23." Hydrogen Peroxide, 552 F.3d at

311 (quoting <u>Newton</u>, 259 F.3d at 181). The Rule 23 analysis indeed "may include a preliminary inquiry into the merits" insofar as the merits of the claim may be relevant to the class certification analysis.  <u>Hohider v. United Parcel Svc., Inc.</u>, 574 F.3d 169, 176 (3d Cir. 2009); <u>Hydrogen Peroxide</u>, 552 F.3d at 317.

The Court's authority to examine the merits of a case on a motion for class certification, however, should not be overstated.  While a district court may delve beyond the pleadings for the purpose of determining whether the plaintiff has satisfied Rule 23's requirements, it may not inquire into the merits in order to determine whether the elements of each claim may be satisfied. <u>Sullivan v. D.B. Investments, Inc.</u>, 667 F.3d 273, 305 (3d Cir. 2011); <u>see also</u> <u>Behrend</u>, 655 F.3d at 190 ("we are precluded from addressing any merits inquiry unnecessary to making a Rule 23 determination.")  In other words, "[a] court may inquire whether the elements of asserted claims are capable of proof through common evidence, but lacks authority to adjudge the legal validity or soundness of the substantive elements of asserted claims."  <u>Sullivan</u>, 667 F.3d at 305. Consistent with this understanding of a court's role in evaluating whether a class may be certified, the Third Circuit has held that factual findings of the court on a Rule 23 motion are restricted to the question of whether a class may be certified and "do not bind the factfinder on the merits."  <u>Hydrogen Peroxide</u>, 552 F.3d at 318.

If the Court finds that the action, or any portion thereof, warrants class certification, its order must "define the class and the class claims, issues, or defenses . . . ."  Fed.R.Civ.P. 23(c)(1)(B).  The Third Circuit has explained that a court cannot comply with this Rule 23 requirement unless the "precise parameters defining the class and a complete list of the claims, issues, or defenses to be treated on a class basis are readily discernible from the text either of the

certification order itself or of an incorporated memorandum opinion." <u>Wachtel v. Guardian Life Ins. Co. of Am.</u>, 453 F.3d 179, 184 (3d Cir. 2006).  The class certification order must not only define the certified class with precision but also include "a clear and complete summary of those claims, issues, or defenses subject to class treatment." <u>Id.</u>

## III.   DISCUSSION

### A.      Rule 23(a) Factors

Defendants argue that Plaintiffs do not carry their burden of actually demonstrating, as required by <u>Dukes</u>, that each requirement of class certification is present.  They point to an overall deficiency in the threshold Rule 23(a) certification criteria, contending that Plaintiffs do nothing more than base this aspect of their motion on conclusory statements. The Court will review each requirement of Rule 23(a) in turn.

#### 1.      <u>Numerosity</u>

While there is no strict rule regarding a minimum number of class members, the Third Circuit has recognized that "generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." <u>Marcus v. BMW of N. Am., LLC</u>, 687 F.3d 583, 595 (3d Cir. 2012).   The Third Circuit recently stressed in <u>Marcus</u> that a plaintiff seeking class certification must come forward with sufficient evidence of numerosity and cannot rely on conclusory statements or speculation.  <u>Id.</u> at 595-96. It held that "in the absence of direct evidence [of numerosity], a plaintiff must show sufficient circumstantial evidence specific to the products, problems, parties, and geographic areas actually covered by the

class definition to allow a district court to make a factual finding. Only then may the court rely on

'common sense' to forgo precise calculations and exact numbers." Id. at 596.

Plaintiffs in this case easily meet the numerosity requirement. The proposed class

consists of purchasers of Merck common stock, purchasers of call options and sellers of put

options. Plaintiffs have come forward with evidence showing that during the Class Period,

Merck had between 216,000 and 280,500 shareholders of record and over two billion shares of

common stock outstanding. This evidence clearly supports a common sense inference that

membership in the proposed class of investors exceeds 40 and is so numerous as to make joinder

impracticable.

2.    Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class."

Fed.R.Civ.P. 23(a)(2). "Commonality is informed by the defendant's conduct as to all class

members and any resulting injuries common to all class members." Sullivan, 667 F.3d at 297.

For example, the common issue binding a class together could be presented by a defendant's

course of conduct which subjects the entire class to the same harm. Baby Neal ex. rel. Kantor v.

Casey, 43 F.3d 48, 56-57 (3d Cir. 1994). A single common issue will suffice to render classwide

adjudication appropriate. Dukes, 131 S.Ct. at 2556. Merely raising common questions,

however, will not. Id. at 2551. The Supreme Court's decision in Dukes makes it clear that

commonality demands that a plaintiff demonstrate not only that the claims are based upon a

common contention but that the contention is "of such a nature that it is capable of classwide

resolution – which means that determination of its truth or falsity will resolve an issue that is

central to the validity of each one of the claims in one stroke." Id. The commonality analysis

8

must therefore be conducted with reference to the merits of the claims upon which a plaintiff is basing its plea for classwide relief.  Id. at 2551-52.

The elements of a private action under Exchange Act § 10(b) for a Rule 10b-5(b) violation are  "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." Stoneridge Investment Partners, LLC v. Scientific–Atlanta, Inc., 552 U.S. 148, 157 (2008).  In this action, each class member's claim under § 10(b) of the Exchange Act depends upon the same factual contentions: Defendants made misrepresentations about the safety profile of Vioxx and/or concealed material information about this topic; Plaintiffs purchased Merck securities, in reliance on the public information about Vioxx as incorporated into the stock price; and Plaintiffs suffered a loss when their artificially inflated stock dropped in price upon the disclosure of corrective information about Vioxx.  Determining the truth of falsity of these common contentions will advance the resolution of each class member's § 10(b) claim in one stroke. Indeed, the class's § 10(b) claims are based on common questions of both fact and law.

The same capacity for common resolution is demonstrated by the Plaintiffs' control person claims, which are all predicated upon the alleged  § 10(b) violations committed by Merck. As to each Officer Defendant against whom the control person claim is asserted, the merits of each class member's claim will be determined by a common resolution of the same issues: the Officer Defendant's control over Merck, Merck's commission of a primary securities fraud violation and the Officer Defendant's culpable participation in the alleged fraud.  Likewise, the class's insider trading claims against Scolnick share the same legal and factual basis, namely, the

§ 10(b) violations allegedly committed by Scolnick himself and his transaction in Merck stock during the Class Period.

Plaintiffs, in short, have demonstrated that resolving the merits of their claims will depend upon common answers to legal and factual questions. The claims target the same alleged misconduct by Defendants, and the injuries to class members are the alleged result of such uniform misconduct. For these reasons, the Court finds the commonality requirement of Rule 23(a) satisfied as to each of the Exchange Act claims Plaintiffs seek to certify.

       3.    <u>Typicality</u>

Typicality, the third prong of the Rule 23(a) analysis, tends to merge with the concept of commonality. <u>Falcon</u>, 457 U.S. at 157 n. 13; <u>Baby Neal</u>, 43 F.3d at 56. It is, however, a distinct requirement. While commonality "looks at the relationship among the class members generally," typicality focuses on "the relationship between the proposed class representative and the rest of the class." 1 W. Rubenstein, Newberg on Class Actions, § 3:26 (5th ed. 2011). To meet the typicality requirement, the proposed class representative must show his claims "[arise] from the same event or practice or course of conduct that gives rise to the claims of the class members" and are "based on the same legal theory." <u>Baby Neal</u>, 43 F.3d at 58; <u>see also</u> <u>In re Schering Plough Corp. ERISA Litig.</u>, 589 F.3d 585, 599 (3d Cir. 2009). Moreover, for the class representative's claims to be considered typical of the class claims, his claims "must not be subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation." <u>Schering Plough</u>, 589 F.3d at 599. If these criteria are met, the named plaintiff's claims may be considered typical, in common sense terms, of the claims of the class, notwithstanding factual differences between the named plaintiff's claims and those of the

absent class members. <u>Baby Neal</u>, 43 F.3d at 58; <u>see also</u> <u>Beck v. Maximus, Inc.</u>, 457 F.3d 291, 295-96 (3d Cir. 2006) (citing <u>Baby Neal</u> for typicality standard).

For reasons discussed above, this Court finds that the typicality requirement is easily met in this case. Lead Plaintiffs' claims arise from the very same alleged Exchange Act violations as those that give rise to the claims of the absent class members, including those who transacted in options contracts. Defendants argue that because none of the Lead Plaintiffs purchased a call option or sold a put option, they have no "standing" to litigate Rule 10b-5 claims on behalf of absent class members who traded in options contracts. The Court, however, discerns no significant difference in the nature of the securities transactions that would destroy typicality or otherwise cause Lead Plaintiffs not to be similarly situated to purchasers of call options or sellers of put options. These investors allegedly suffered a loss as a result of the effect of Defendants' misconduct on the price of Merck stock, and thus Lead Plaintiffs and all absent class members share an interest in proving Defendants' liability for the alleged Exchange Act violations. The Third Circuit's explanation of put and call options is instructive on how the value of an option contract is tied to the market price of the underlying stock:

> Under these [option] contracts a seller agrees to sell or a purchaser agrees to buy a security at a fixed price on or before a fixed date in the future. Such contracts permit investors to hedge against future movements in the market price of securities . . . The option contract gives its owner the right to buy (call) or sell (put) a fixed number of shares of a specified underlying stock at a given price (the striking price) on or before the expiration date of the contract. For this option a premium is paid, and the contract is worth more or less than the premium depending upon the direction of the market price of the underlying stock relative to the striking price. The market price for options is directly responsive, therefore, to changes in the market price of the underlying stock, and to information affecting that price.

11

Deutschman v. Beneficial Corp., 841 F.2d 502, 504 (3d Cir. 1988).  Purchasers of call options and sellers of put options profit if the underlying stock maintains or increases in value relative to the strike price.  See, e.g., In re Scientific-Atlanta Sec. Litig., 571 F. Supp. 2d 1315, 1330 (N.D. Ga. 2007) (noting that put options seller, like purchaser of stock, profits if the stock price holds steady or increases because in that circumstance an options buyer will not exercise and seller therefore profits the premium paid).  In other words, the value of their securities decreases if the underlying stock price falls, and thus the option traders included in the class definition are similarly situated to purchasers of Merck common stock.  The class claims, whether based on common stock purchases or options trading, arise out of the same conduct – transactions in Merck securities that were based on an allegedly artificially inflated stock price as a result of Defendants' misrepresentations and omissions concerning the safety profile of Vioxx.  Lead Plaintiffs' claims and those of the class they seek to represent are based on the same course of conduct by Merck and the other defendants and seek relief under the same legal theories.

Defendants further argue that even if these fundamental aspects of typicality apply to the Lead Plaintiffs' claims, any alignment between the focus of Lead Plaintiffs' claims and those of the absent class members is undone by what Defendants contend to be unique defenses. Specifically, as to Lead Plaintiff Haber, Defendants maintain that the record demonstrates that his investment decisions were made by his investment advisor, thus subjecting Haber to the unique defense that he did not rely on the market price in making his purchase of Merck stock. As to Lead Plaintiff Reynolds, Defendants contend that his purchases of Merck stock after the corrective disclosures about Vioxx together with his admitted motivation for stock trades as driven by price action alone subject him to the unique defense that he would have purchased the

Merck stock regardless of the alleged fraud.  Similarly, Defendants challenge the typicality of MPERS's securities fraud claims based on their post-corrective disclosure purchases of Merck stock, a fact which Defendants maintain could be argued at trial to rebut MPERS's assertion of reliance on the alleged fraud in making purchases.  These arguments, the Court finds, are unavailing.

The nuances of Lead Plaintiffs' purchases of Merck stock amount to no more than minor factual differences.  They do not destroy the fundamental similarity between Lead Plaintiffs' and the absent class members' claims of injury as a result of Merck's misrepresentations and omissions about Vioxx.  Schering Plough, 589 F.3d at 598 (holding that "factual differences between the proposed representative and other members of the class do not render the representative atypical 'if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members.'") (quoting Hoxworth v. Blinder, Robinson & Co., 980 F.2d 912, 923 (3d Cir.1992)).  The typicality requirement of Rule 23(a) does not demand that the class representatives' claims be identical in every respect to those of the absent class members but rather reflects a concern that the circumstances be sufficiently similar such that the representative will not be preoccupied with the unique aspects of his claim at the expense of issues common to the class.  Id.

Far from threatening to become the focus of the litigation, the purported differences do not necessarily give rise to defenses at all.  For example, the post-disclosure purchases by Reynolds and MPERS have "no bearing on whether or not [they] relied on the integrity of the market during the class period."  City of Livonia Employees' Retirement Sys. v. Wyeth, 284 F.R.D. 173, 178 (S.D.N.Y. 2012) (rejecting the defendants' argument that a putative class

representative in a securities fraud class action was atypical or inadequate because it had purchased the defendant's stock after the corrective disclosures were made).  Morever, even if, as Defendants maintain, Reynolds had made his purchases based solely on his analysis of Merck's stock price, he would not be precluded from asserting the same reliance theory as the rest of the class, that is, the fraud-on-the market doctrine.  That doctrine, which the Court will discuss in further detail below, in fact uses stock price as a proxy for demonstrating actual and direct reliance on a fraudulent statement or omission, since it is "'based on the hypothesis that, in an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business.'"  Basic, Inc. v. Levinson, 485 U.S. 224, 242 (1988) (quoting Peil v. Speiser, 806 F.2d 1154, 1160 (3d Cir. 1986)). Proposed class representative Haber's purchases of Merck securities through an investment advisor given discretionary authority to make investment decisions similarly fails to distinguish his circumstances from those of the absent class members with regard to the fraud-on-the-market theory.  Rejecting a defendant's argument that a named plaintiff's typicality was defeated because it had purchased the securities at issue through investment advisors who were given "no input" from the plaintiff, the Southern District of New York held that "it is well established that "'reliance on the advice of third parties does not, in and of itself, constitute non-reliance, so long as the third party, in turn, relied on the integrity of the market.'" In re Pfizer Sec. Litig., 282 F.R.D. 38, 45 (S.D.N.Y. 2012); see also Wyeth, 284 F.R.D. at 179 (holding that a plaintiff's Rule 10b-5 claim is not rendered atypical because the investor has delegated responsibility and discretionary authority over investment decisions to an investment manager).  Merck does not suggest, and there is no indication, that the decisions of Haber's investment advisor were

14

divorced from the market price for Merck stock.  In short, it proffers no evidence to controvert

Plaintiffs' sufficient demonstration of the typicality of each named Plaintiff.

Finally, on this subject, the Court addresses Defendant Scolnick's additional argument

that Lead Plaintiff MPERS cannot represent investors with § 20A insider trading claims against

him because, according to him, it did not trade contemporaneously with Scolnick, as required by

§ 20A.  See 15 U.S.C. § 78t-1(a) (conferring standing to sue for insider trading violation on "any

person who, contemporaneously with the purchase or sale of securities that is the subject of such

violation, has purchased . . . securities of the same class.").  The Court has already held that

MPERS has stated a sufficient insider trading claim, including adequate pleading of

contemporaneity, based on its purchase of Merck stock on the same day that Scolnick sold

381,200 Merck common stock.  In re Merck, 2011 WL 3444199, at *37.  Scolnick argues,

however, that MPERS will not be able to satisfy the contemporaneity element of the claim at trial

because the evidence shows that (1) MPERS and Scolnick traded in Merck stock at different

prices and (2) the size of MPERS's purchase of 15,600 shares as one block on October 25, 2000

does not correspond with Scolnick's sales on that same day, which executed in three separate

transactions of 600, 600 and 200,000 shares.  Without making any finding as to whether Scolnick

is correct, the Court is not swayed by this argument on this motion for class certification.

Scolnick attacks the merits of MPERS's insider trading claim based on his view of what the law

requires to prove contemporaneous transactions under § 20A.  Such an argument is not relevant

to the Court's assessment of whether a class should be certified under Rule 23.  "An analysis into

the legal viability of asserted claims is properly considered through a motion to dismiss under

Rule 12(b) or summary judgment pursuant to Rule 56, not as part of a Rule 23 certification

process." <u>Sullivan</u>, 667 F.3d at 305.  An examination of the elements of a plaintiff's claims may

be conducted only insofar as needed to determine whether the requirements of Rule 23 are met.

<u>Id.</u> at 306.  Here, Scolnick attempts to apply his argument that MPERS "lacks standing" to assert

a § 20A claim to the Rule 23(a) requirements by maintaining that without standing "it necessarily

follows that the typicality requirement cannot be met."  (Scolnick Br. at 10.)  Again, the Court

has already held that MPERS states a plausible insider trading claim, and Scolnick gives no

indication that the deficiency he perceives with regard to establishing the merits of the claim

affects typicality.

The Court accordingly concludes that Lead Plaintiffs have met their burden of

demonstrating that their claims are typical of the class claims, as required by Rule 23(a)(3).

4. <u>Adequacy</u>

The adequacy requirement of Rule 23(a)(4) encompasses two concerns: "(a) the

plaintiff's attorney must be qualified, experienced and generally able to conduct the proposed

litigation, and (b) the plaintiff must not have interests antagonistic to those of the class."  <u>Wetzel</u>

<u>v. Liberty Mut. Ins. Co.</u>, 508 F.2d 239, 247 (3d Cir. 1975); <u>see also</u> <u>Dewey v. Volkswagen</u>

<u>Aktiengesellschaft</u>, 681 F.3d 170, 181 (3d Cir. 2012) (holding same).  In this case, Defendants do

not challenge the first component of the adequacy requirement. They do contend, however, that

none of the Lead Plaintiffs can adequately protect the interest of the class.  The burden falls on

the party challenging class representation to prove inadequacy.  <u>Wilson v. County of Gloucester</u>,

256 F.R.D. 479, 487 (D.N.J. 2009) (citing <u>Varacallo v. Mass. Mut. Life Ins. Co.</u>, 226 F.R.D. 207,

233 (D.N.J. 2005) and <u>In re Prudential Ins. Co. of Am. Sales Practices Litig.</u>, 962 F.Supp. 450,

519 (D.N.J. 1997)).  Defendants have not met this burden.

The Third Circuit has held that alignment of interests and incentives between the class representative and the absent class members is the "linchpin" of the adequacy requirement. Dewey, 681 F.3d at 183.  Importantly, in Dewey, it stressed that not all conflicts between representatives and absentees render a representative unable to meet Rule 23(a)(4).  Id. at 183-84. The Dewey court observed that the interests of the representative plaintiffs may diverge from those of the unnamed class members due to "certain intra-class conflicts" and reasoned that goal of the adequacy requirement is to "ferret out" such conflicts.  Id.  To defeat the adequacy requirement, the conflict must be "fundamental."  Id. at 184.  "A fundamental conflict exists where some class members claim to have been harmed by the same conduct that benefitted other members of the class."  Id. (quoting Valley Drug. Co. v. Geneva Pharms., Inc., 350 F.3d 1181, 1189 (11th Cir. 2003)).

Defendants' indications of minor factual variations in the circumstances giving rise to the Lead Plaintiffs' claims, discussed to some degree in the analysis of typicality above, do not remotely approach the level of fundamental conflict required to demonstrate inadequacy.  The involvement of Lead Plaintiff MPERS as a lead or representative plaintiff in several other securities class actions does not cast doubt on its ability to devote sufficient time, attention and control over the instant litigation, especially in light of the fact that it is an institutional investor with ample resources to handle the litigation, including direction of the litigation by the Office of Mississippi's Attorney General.  Though Defendants protest that Lead Plaintiff Le Van has no knowledge of this action beyond the information he obtains from his attorneys, Defendants' criticisms of Le Van's lack of sophisticated legal understanding or independent knowledge concerning this action are completely inapposite to an evaluation of his adequacy.  See Lewis v.

Curtis, 671 F.2d 779, 789 (3d Cir.1982), abrogated on other grounds by Kamen v. Kemper Fin.

Serv., Inc., 500 U.S. 90 (1991).  The Third Circuit has held that "the adequacy-of-representation

test is not concerned [with] whether plaintiff personally derived the information pleaded in the

complaint or whether he will personally be able to assist his counsel."  Id.  Indeed, it is to be

expected in a complex lawsuit such as the one at bar that a litigant may rely heavily on his

counsel.   The same types of challenges to Lead Plaintiff Reynolds's adequacy, that is, his

purported confusion and insufficient understanding of the facts and law of this action, similarly

fail to carry Defendants' burden of demonstrating that Reynolds fails to meet the Rule 23(a)(4)

standard.  A "class representative need only possess a minimal degree of knowledge necessary to

meet the adequacy standard."  New Directions Treatment Servs. v. City of Reading, 490 F.3d

293, 313 (3d Cir. 2007).  At most, the deposition testimony by Reynolds reflects his confusion

about some of the facts of this case, such as the start date of the class period.   Precise knowledge

of the facts related to a class action suit is not required to serve as a representative of the class.

Mueller v. CBS, Inc., 200 F.R.D. 227, 238 (W.D.Pa. 2001) ("The legal knowledge of the putative

class representatives is not an issue in determining their suitability to act on behalf of the other

members, nor are they expected to be completely knowledgeable as to all the facts related to the

class as a whole.") (citing Surowitz v. Hilton Hotels Corp., 383 U.S. 363, 366 (1966)); see also

Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp., 222 F.3d 52, 61 (2d Cir. 2000) ("The

Supreme Court in Surowitz v. Hilton Hotels Corp., 383 U.S. 363, 370–37 (1966) expressly

disapproved of attacks on the adequacy of a class representative based on the representative's

ignorance.").

None of Defendants' criticisms of Lead Plaintiffs raises an intra-class conflict, much less a fundamental one, which the Third Circuit emphasized in <u>Dewey</u> to be the touchstone of the adequacy analysis.   Defendants point to no facts in the record that would cast doubt on Lead Plaintiffs' ability to represent and protect the interests of the class nor indicate any reason why their interests would be antagonistic to those of the absent class members.

Accordingly, the Court finds that Lead Plaintiffs MPERS, Reynolds, Haber and Le Van satisfy Rule 23(a)(4) and may be appointed as class representatives.

**B.      Rule 23(b) Factors**

1.     <u>Predominance</u>

Rule 23(b)(3) certification requires that issues common to the class predominate over those affecting only individual class members.   Predominance is similar to Rule 23(a)(2)'s requirement of commonality in that both are concerned with ensuring that the putative class presents common questions of law or fact.   Indeed, the Rule 23(a) commonality requirement is generally regarded as subsumed by the more stringent Rule 23(b)(3) predominance requirement. <u>Sullivan</u>, 667 F.3d at 297.   Predominance, however, imposes a "far more demanding standard," as it "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." <u>In re Ins. Brokerage Antitrust Litig.</u>, 579 F.3d 241, 266 (3d Cir. 2009) (quoting <u>Amchem Prods., Inc. v. Windsor</u>, 521 U.S. 591, 623-24 (1997)).   The Third Circuit has emphasized the stringent nature of the predominance requirement, explaining that it may be satisfied only when the plaintiffs "demonstrate that the element[s] of their claim [are] capable of proof at trial through evidence that is common to the class rather than individual to its members." <u>Hydrogen Peroxide</u>, 552 F.3d at 311-12.

Defendants' concentrate their opposition to this motion on the predominance requirement of Rule 23(b)(3) as it relates to Exchange Act § 10(b)'s element of reliance.  To establish Merck's liability on the § 10(b) claim, Plaintiffs must prove that the Class Period stock purchases and options-related transactions were made in reliance on material misrepresentations and omissions regarding Vioxx's safety profile.  Basic, 485 U.S. at 243. "Reliance provides the requisite causal connection between a defendant's misrepresentation and a plaintiff's injury." Id. Defendants argue that establishing this essential causal connection between the alleged misleading statements and omissions and each class member's injury cannot be accomplished on a classwide basis but rather would require individualized examinations of the circumstances of each subject stock purchase or options transaction.  Plaintiffs' inability to point to any common proof as to § 10(b)'s reliance element, Defendants maintain, precludes class certification as to the § 10(b) claim as well as the other Exchange Act claims, which are predicated upon the primary violations of § 10(b) and Rule 10b-5 allegedly committed by Merck (control person claim) and Scolnick (insider trading claim).  Plaintiffs argue that the entire class is entitled to a presumption of reliance based on the trading of Merck stock on an efficient market, and as such, maintain that they have met their burden of demonstrating that the elements of their Exchange Act claims are capable of proof through common issues of law and fact.

Lead Plaintiffs' demonstration that common evidence of reliance will predominate over any individual questions as to each class member and each separate transaction turns on the applicability of the presumption of reliance, adopted by the Supreme Court in Basic v. Levinson. "[W]hen the presumption of reliance is successfully invoked, the predominance requirement is met with respect to the element of reliance." In re DVI, Inc. Sec. Litig., 639 F.3d 623, 631 (3d

Cir. 2011). The Court thus reviews <u>Basic</u>'s discussion concerning the presumption's rationale and requirements to determine whether it applies here.

In <u>Basic v. Levinson</u>, the Supreme Court expressed a specific concern that establishing the requisite causal connection on a Rule 10b-5 claim in the class action setting would threaten to overwhelm the action with individualized issues as to proof of each class member's reliance on the alleged misrepresentation.  <u>Basic</u>, 485 U.S. at 242.  Requiring positive proof of reliance, the Court reasoned, would render it impossible to satisfy Rule 23(b)(3)'s predominance requirement and thus impede class certification in § 10(b) actions.  <u>Id.</u>  Noting that presumptions are a useful device to address situations in which direct proof is difficult to achieve, the Supreme Court established a rebuttable presumption of class-wide reliance based on the fraud-on-the-market theory. <u>Id.</u> at 244-47. It held as follows:

> An investor who buys or sells stock at the price set by the market does so in reliance on the integrity of that price. Because most publicly available information is reflected in market price, an investor's reliance on any public material misrepresentations, therefore, may be presumed for purposes of a Rule 10b-5 action.

<u>Id.</u> at 247.  The presumption takes into consideration the difference between a traditional face-to-face transaction that may underlie a common law fraud claim and an impersonal transaction in the modern securities market, where millions of shares are traded on a daily basis.  <u>Id.</u> at 243-44. It is premised on the hypothesis that "the market price of shares traded on well-developed markets reflects all publicly available information, and, hence any material misrepresentations." <u>Id.</u> at 246; <u>see also</u> <u>DVI</u>, 639 F.3d at 631 (summarizing efficient capital market hypothesis on which fraud-on-the-market theory is based).  Thus, the Third Circuit has held that, under <u>Basic</u>,

plaintiffs asserting Rule 10b-5 claim are entitled to a presumption of reliance where they can demonstrate that the subject securities traded on an efficient market and the misrepresentations at issue became public.  <u>DVI</u>, 639 F.3d at 631.

Merck argues that Plaintiffs may not invoke the presumption of reliance because they have not established by a preponderance of the evidence that the market on which Merck trades is efficient, a showing they maintain must be made according to the factors set forth in <u>Cammer v. Bloom</u>, 711 F. Supp. 1264 (D.N.J. 1989).  In this case, however, a <u>Cammer</u> analysis is not required for Plaintiffs to establish market efficiency.  It is undisputed that Merck stock trades on the New York Stock Exchange ("NYSE"), consistently recognized by courts - including the Third Circuit and other United States Courts of Appeals - as "open and developed" and thus "well suited for application of the fraud on the market theory." <u>DVI</u>, 639 F.3d at 634 (quoting <u>Oran v. Stafford</u>, 226 F.3d 275, 282 (3d Cir.2000) and <u>Freeman v. Laventhol & Horwath</u>, 915 F.2d 193, 199 (6th Cir.1990)); <u>see also</u> <u>In re PHP Healthcare Corp.</u>, 128 F. App'x 839, 848 (3d Cir. 2005) ("PHP stock traded on the New York Stock Exchange, *one of the most efficient capital markets in the world*.") (emphasis added).  The Third Circuit held in <u>DVI</u> that indeed "the listing of a security on a major exchange such as the NYSE or the NASDAQ weighs in favor of a finding of market efficiency."  <u>Id.</u> The <u>Cammer</u> factors may be useful to determine efficiency if the market on which a security is traded is less open and well-developed than the NYSE. <u>Id.</u> The facts of this case, however, do not call for such an analysis. This case involves the common stock of a company which not only trades on a major and efficient exchange, but in fact is a component

 of the Dow Jones 30 Industrial Average.  These facts more than suffice to meet Plaintiffs'

burden on this motion of demonstrating market efficiency.

      Moreover, insofar as the alleged Rule 10b-5 violations are predicated on put or call

options transactions, the trading of Merck stock on the efficient NYSE suffices to establish that

the options also traded on an efficient market.  In Deutschman v. Beneficial, a § 10(b) action, the

Third Circuit observed that given the nature of an option to buy or sell a particular stock, the

value of an option is related to the stock price and therefore, it further reasoned, material

misstatements affecting the market price of the stock affect the "necessarily related market price

of the option contract."  Deutschman, 841 F.2d at 504.  It concluded that "[t]he market price for

options is directly responsive, therefore, to changes in the market price of the underlying stock,

and to information affecting that price."  Id.  Clearly, the security underlying the options

contracts entered into by class members, that is Merck stock, traded on an efficient market.

Thus, it is logical and appropriate to apply the same presumption of reliance to class members

who exercised options that were derivatives of that stock and whose value depended on the value

of the Merck stock.  See, e.g., In re Enron Corp. Secs., 529 F. Supp. 2d 644, 754 (S.D. Tex.

2006) (applying fraud-on-the-market presumption to class's § 10(b) claims based on options,

reasoning that "[t]he value of these derivative securities depended upon the value of Enron

common stock, and all the information about the stock was readily available to investors and

factors affecting the price of the stock were incorporated into the determination of the value of

the call and put options.").

Plaintiffs have satisfied both criteria for invoking the fraud on the market theory of reliance – the trading of Merck stock on the indisputably efficient market of the NYSE and the public nature of the misrepresentations and non-disclosures at issue.  While the presumption of reliance may be rebutted, Defendants have not come forward with evidence that would establish that the market for Merck stock was inefficient, that the market did not respond to the alleged misrepresentations or any other basis for upsetting the Court's determination that the presumption applies based on the fraud on the market theory.  See DVI, 639 F.3d at 637-38 (discussing various ways in which presumption of reliance in securities fraud case may be rebutted).  The Court concludes that, for purposes of certification of their Rule 10b-5 claims, the entire proposed class of plaintiffs is entitled to a presumption of reliance on the integrity of the market price of Merck common stock.   Plaintiffs have thus shown that the reliance of all class members, including those who traded in Merck stock as well as those who engaged in options transactions, on Merck's alleged misrepresentations and omissions about Vioxx is capable of proof at trial through common evidence.

For the sake of a complete Rule 23(b)(3) analysis, the Court further holds that, though not challenged by Merck, the other elements of the Rule 10b-5 claim are also based on evidence that is common to the class.  The alleged wrongdoing giving rise to the claim is uniform as to the entire class.  Proving Defendants' liability will depend on the same evidence relating to the materiality of the misstatements and omissions at issue and Defendants' state of mind in making such statements or failing to disclose certain information about Vioxx. In addition to the allegedly deceptive statements and omissions and Defendants' scienter, loss causation for the

putative class is also capable of proof through common evidence.  Each class member's claim for relief is based on the same corrective disclosures that allegedly caused Merck's stock value to drop.  Plaintiffs, in short, have demonstrated that they may litigate the proposed class's asserted right to § 10(b) relief based on classwide proof.

Likewise, Lead Plaintiffs' attempt to establish control person liability as to the entire class of investors will be based on common evidence of each § 20(a) Defendant's alleged exercise of control over Merck and whether his or her conduct constitutes culpable participation in Merck's Rule 10b-5 violations, assuming they are proven at trial.  The same predominance of legal and factual questions applies to the proposed class's insider trading claim against Scolnick.

### B.    Superiority

In evaluating whether a proposed class action satisfies Rule 23(b)(3)'s superiority requirement, the Court must consider whether a trial of the claims by representation would pose difficulties such that some other method of adjudication would be superior to class certification. *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 309 (3d Cir. 2005).    Rule 23(b)(3) lists four factors that may be relevant to a court's evaluation of the requirements for certification under that subsection.  They are:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

> (D) the likely difficulties in managing a class action.

Fed.R.Civ.P. 23(b)(3).

The Court concludes that litigating the securities fraud claims at issue in this lawsuit through the class action form is superior to other methods, such as the joinder of claims or pursuit of various individual lawsuits.   This is a complex action requiring significant costs to take to trial.  Yet, many investors who form part of the putative class have not been damaged to a degree that would make it either practicable or worthwhile to prosecute their own case.  Separate actions threaten to leave many individuals who might otherwise have a meritorious claim without relief, given the disincentive to undertake the expensive task of developing and proving these Exchange Act claims.  Indeed, the leading treatise on class actions has noted that federal securities actions are "well suited" for litigation under Rule 23, observing that "[t]he Supreme Court as well as every circuit that has confronted the issue of class certification in the area of securities litigation has recognized its utility and necessity in a society where geographically dispersed shareholders cannot individually challenge violations by powerful and wealthy corporate defendants because of their small holdings and the unyielding costs of securities litigation."  7 W. Rubenstein, A. Conte & H. Newberg, Newberg on Class Actions, § 22:1 (4th ed. 2002) (citing, among others, Phillips Petroleum Co. v. Shutts, 472 U.S. 797 (1985) and Eisenberg v. Gagnon, 766 F.2d 770, 775 (3d Cir. 1985)).

Of added significance in this action is the enormous inefficiency that individual actions would create.  "One of the primary considerations in evaluating whether the class action device is superior to other methods for fair and efficient adjudication of a controversy, is the number of persons injured by defendants' alleged wrongful conduct."  Zinberg v. Washington Bancorp, Inc.,

26

138 F.R.D. 397, 410 (D.N.J. 1990).  Based on the billions of shares of Merck stock traded during the Class Period, Lead Plaintiffs represent to the Court that the persons and entities allegedly aggrieved by Defendants' wrongdoing number in the thousands.  These thousands of investors claim a loss as a result of the same alleged violations of the securities laws revolving around Merck's misstatements and omissions of material fact concerning the safety profile of Vioxx. Pursuing such claims through individual actions that would involve similar if not identical evidence and certainly identical legal theories would result in the needless waste of both private and judicial resources.  It would also raise the risk of inconsistent adjudications.  In contrast, through the class action approach, Plaintiffs have proposed a cohesive and manageable manner of trying thousands of claims for alleged securities fraud violations.

For these reasons, the Court finds that Plaintiffs have demonstrated, by a preponderance of the evidence, that the Rule 23(b)(3) requirements have been met in this action.

## IV.   CLASS DEFINITION

The Court now turns its attention to two issues concerning the definition of the class to be certified.  To reiterate Plaintiffs' class definition, the "Class" consists of:

> All persons and entities who, from May 21, 1999 to September 29, 2004, inclusive (the "Class Period"), purchased or otherwise acquired Merck & Co., Inc. ("Merck") common stock or call options, or sold Merck put options, and were damaged thereby (the "Class").

The first issue involves the length of the Class Period.  Defendants argue that the class period can begin no earlier than March 22, 2000 because the alleged misstatements and omissions made before that date have not been attributed to any Individual Defendants allegedly

possessing the requisite scienter to have committed an actionable Rule 10b-5 violation. Defendants point out that according to this Court's August 8 Opinion, only two Individual Defendants, Scolnick and Reicin, were alleged to have scienter sufficient to state a § 10(b) claim. Yet, they argue, the statements attributable to Scolnick and Reicin were made on or after March 22, 2000.  Defendants maintain that consistent with the Third Circuit's rejection of the group pleading doctrine in Winer Family Trust v. Queen, which held that broad allegations about the collective wrongdoing of corporate employees in group-published documents could not give rise to cognizable § 10(b) claims against corporate officers and directors, Merck cannot be exposed to § 10(b) liability unless the scienter of the individual speaker responsible for the misstatements or omission is sufficiently pled.  In other words, Defendants maintain that liability for an alleged misrepresentation or omission by a corporate entity defendant, such as Merck, cannot be based on "collective scienter."

Defendants' attempt to truncate the Class Period is unavailing for two reasons.  First, it amounts to a misplaced effort to attack the merits of the § 10(b) claim on this motion for class certification.  The Court has previously ruled on both Rule 12(b)(6) and Rule 12(c) motions challenging the sufficiency of the Class Action Complaint, and this argument was not presented by Defendants in either motion.  The instant motion for class certification does not provide a further opportunity to seek dismissal of certain claims, namely the § 10(b) claims which are predicated on statements made by corporate defendant Merck through its agents, in the guise of limiting the Class Period.  Second, Defendants have provided no binding authority holding that a corporation's liability under § 10(b) for its alleged false statements and omissions is

28

circumscribed by the imputed scienter of identifiable corporate agents.  While in Winer Family

Trust v. Queen, the Third Circuit held that group pleading as to statements and omissions would

not suffice to state a § 10(b) claim against officers and directors who are not particularly

associated with the alleged fraud, it did not reach a conclusion about corporate scienter.  Winer

Family Trust v. Queen, 503 F.3d 319, 335-37 (3d Cir. 2007).  Plaintiffs, in response to

Defendants' argument, point to a number of other Circuit Courts of Appeals which have held that

unlike the prohibition on group pleading as inconsistent with the PSLRA, "it is possible to draw

a strong inference of corporate scienter without being able to name the individuals who

concocted and disseminated the fraud."  Makor Issues & Right, Ltd. v. Tellabs, Inc., 513 F.3d

702, 710 (7th Cir. 2008) (recognizing Winer's holding on group pleading and distinguishing

element of scienter); see also Matrix Cap. Mgmt. Fund L.P. v. BearingPoint, Inc., 576 F.3d 172,

189-90 (4th Cir. 2009) (agreeing with Seventh Circuit's holding regarding sufficient pleading of

corporate scienter and holding that  "[a] complaint that alleges facts giving rise to a strong

inference that at least one corporate agent acted with the required state of mind satisfies the

PSLRA even if the complaint does not name the corporate agent as an individual defendant or

otherwise identify the agent."); Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital

Inc., 531 F.3d 190, 195-96 (2d Cir. 2008) (agreeing with Seventh Circuit's conclusion that a §

10(b) plaintiff may "raise the required inference [of scienter] with regard to a corporate defendant

without doing so with regard to a specific individual defendant.").

The second issue regarding the proposed definition concerns its limitation to investors

who "were damaged" by their Class Period transaction in Merck common stock or options.  The

problem with that language is that imposes a merits determination on class membership.  In other

words, as currently drafted, the class definition does not permit the Court and prospective

plaintiffs themselves to identify who is in the class without reaching a conclusion concerning

Defendants' alleged liability for the loss of value of Merck securities during the Class Period.  It

is a fundamental requirement that a Rule 23 class be defined in such a way as to allow a court to

ascertain its membership in some objective manner.  Agostino v. Quest Diagnostics Inc., 256

F.R.D. 437, 478 (D.N.J. 2009); Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane,

Federal Practice and Procedure § 1760 at 139-140 (3d ed. 2005) ("the requirement that there be a

class will not be deemed satisfied unless the class description is sufficiently definite so that it is

administratively feasible for the court to determine whether a particular individual is a member.")

A proper class definition must not require a merits determination to identify the potential

plaintiffs encompassed by the Rule 23 action.  Agostino, 256 F.R.D. at 478 (holding that a court

must reject a proposed class or subclass definition that 'inextricably intertwines identification of

class members with liability determinations.'") (quoting Pichler v. UNITE, 228 F.R.D. 230, 247

(E.D.Pa.2005), aff'd, 542 F.3d 380 (3d Cir.2008)).

In this case, however, the merits determination inherent in the current class definition's

phrase "and were damaged thereby" need not thwart class certification.  Rather than deny

Plaintiffs' motion for Rule 23(b)(3) certification on these grounds, the Court may exercise its

discretion to modify the class definition.  Robidoux v. Celani, 987 F.2d 931, 937 (2d Cir.1993);

Davoll v. Webb, 194 F.3d 1116, 1146 (10th Cir. 1999) (citing Moore's Federal Practice § 23-

21[7] at 23-62.2 (3d ed. 1999); see also Chiang v. Veneman, 385 F.3d 256, 268 (3d Cir.2004)

(defining class to remove ambiguity regarding membership); In re Monumental Life Ins. Co., 365

F.3d 408, 414 (5th Cir.2004) ("[C]ourts are permitted to limit or modify class definitions to

provide the necessary precision.").   The Court will simply remove the language calling for a

merits determination and certify the following class:[4]

> All persons and entities who, from May 21, 1999 to September 29, 2004,
> inclusive (the "Class Period"), purchased or otherwise acquired Merck &
> Co., Inc. ("Merck") common stock or call options, or sold Merck put
> options (the "Class").

## V.   CLASS COUNSEL

Finally, having concluded that the proposed class meets all of the requirements for Rule

23(b)(3) certification, the Court must appoint class counsel, as required by Rule 23(g).  Plaintiffs

ask that the law firms that this Court has previously appointed to serve a Lead Counsel in this

action pursuant to the PSLRA be appointed as Rule 23(g) Class Counsel.  Those firms are

Bernstein Litowitz Berger & Grossmann; Brower Piven; Milberg; and Stull, Stull & Brody. The

Court indeed finds that proposed Class Counsel are well-suited to represent the class and litigate

the action.  The attorneys seeking to be appointed as class counsel have extensive experience in

prosecuting class action securities claims.  Based on their litigation of this action as well as their

considerable practice representing and advising other clients, the Court finds that proposed Class

Counsel clearly have sophisticated and substantial knowledge of the field of federal securities

---

[4] Moreover, the certification order will set forth the express exclusions from the Class
that Plaintiffs set forth in both their Complaint and this Rule 23 motion.  Those exclusions are as
follows: Defendants; Merck's affiliates and subsidiaries; the officers and directors of Merck and
its subsidiaries and affiliates at all relevant times; members of the immediate family of any
excluded person; the legal representatives, heirs, successors, and assigns of any excluded person
or entity; and any entity in which any excluded person or entity has or had a controlling interest.

law and will commit ample resources to represent this Class.  The Court is satisfied that the

attorneys Plaintiffs have selected to serve as Class Counsel will vigorously advocate for the

members of the class.


**VI.**     **CONCLUSION**

The Court accordingly finds that the claims for relief under Exchange Act §§ 10(b), 20(a),

and 20A warrant certification under Rule 23(b)(3).  The Court will issue an order certifying a

class action as to those claims, as more fully described above.  Pursuant to Rule 23(c)(1), the

accompanying order will also define the Class to be certified and appoint Class Counsel under

Rule 23(g).


                                    s/ Stanley R. Chesler
                                    STANLEY R. CHESLER
                                    United States District Judge


Dated: January 30, 2013