REDACTED VERSION

**CRAVATH, SWAINE & MOORE LLP**
Evan R. Chesler
Robert H. Baron
Karin A. DeMasi
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

**HUGHES HUBBARD & REED LLP**
James C. Fitzpatrick
Charles W. Cohen
One Battery Park Plaza
New York, NY 10004
(212) 837-6000

*Counsel for Defendants Merck & Co., Inc. and Alise S. Reicin*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE MERCK & CO., INC., SECURITIES, DERIVATIVE & "ERISA" LITIGATION | MDL No. 1658 (SRC) |
| THIS DOCUMENT RELATES TO:<br>THE CONSOLIDATED SECURITIES ACTION,<br>      THE DIRECT ACTIONS: | Case No. 05-CV-01151-SRC-CLW<br>Case No. 05-CV-02367-SRC-CLW |
| *Stichting Pensioenfonds ABP v. Merck & Co., Inc.*; | No. 05-cv-5060-SRC-CLW |
| *AFA Livförsäkringsaktiebolag v. Merck & Co., Inc.*; | No. 07-cv-4024-SRC-CLW |
| *Norges Bank v. Merck & Co., Inc.*; | No. 07-cv-4021-SRC-CLW |
| *Deka Investment GmbH v. Merck & Co., Inc.*; | No. 07-cv 4022-SRC-CLW |
| *Union Asset Mgmt. Holding, AG v. Merck & Co., Inc.*; | No. 07-cv-4023-SRC-CLW |
| *DWS Investment GmbH v. Merck & Co., Inc.*; and | No. 07-cv-4546-SRC-CLW |
| *KBC Asset Mgmt. NV v. Merck & Co., Inc.* | No. 11-cv-6259-SRC-CLW |
| | **ORAL ARGUMENT REQUESTED**<br>Motion Date:  April 21, 2014 |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

April 11, 2014

REDACTED VERSION

## CITATION CONVENTIONS[1]

**Parties, Actions and Entities**

"Direct Actions":  *Stichting Pensioenfonds ABP v. Merck & Co., Inc.*, No. 05-cv-5060;
*AFA Livförsäkringsaktiebolag v. Merck & Co., Inc.*, No. 07-cv-4024;
*Norges Bank v. Merck & Co., Inc.*, No. 07-cv-4021;
*Deka Investment GmbH v. Merck & Co., Inc.*, No. 07-cv-4022;
*Union Asset Mgmt. Holding, AG v. Merck & Co., Inc.*, No. 07-cv-4023;
*DWS Investment GmbH v. Merck & Co., Inc.*, No. 07-cv-4546; and
*KBC Asset Mgmt. NV v. Merck & Co., Inc.,* No. 11-cv-6259.

"Direct-Action Plaintiffs":  Plaintiffs in the Direct Actions, collectively.

"AFA Sick Pay":  AFA Sjukförsäkringsaktiebolag

"TSL":  Kollektivavtalsstiftelsen Trygghetsfonden TSL

"AMF Pension":  AMF Pension Fondförvaltning AB

"Danske":  Danske Invest Management A/S

"OKAG":  Oppenheim Kapitalanlagegesellschaft mbH

"OPAM":  Oppenheim Asset Management Services S.à.r.l.

"Pioneer Germany":  Pioneer Investments Kapitalanlagegesellschaft mbH

"Robur":  Swedbank Robur Fonder AB

"SEB Bank":  Skandinaviska Enskilda Banken AB

"Union":  Union Asset Management Holding AG

"WSV":  Wiener Städtische Versicherung AG Vienne Insurance Group

"Merck":  Defendant Merck & Co., Inc.

"Dr. Reicin":  Individual Defendant Dr. Alise S. Reicin, M.D.

"Dr. Scolnick":  Individual Defendant Dr. Edward M. Scolnick, M.D.

---

[1] All other proper names and abbreviations have the same meaning as set forth in our opening memorandum.

REDACTED VERSION

**Pleadings and Court Submissions**

"Defendants' Class Action Motion":  Defendants' Memorandum of Law in Support of Defendants' Motion for Summary Judgment, dated January 17, 2014

"Defendants' Class Action Reply":  Defendants' Memorandum of Law in Further Support of Defendants' Motion for Summary Judgment, dated April 11, 2014

"Br.":  Defendants' Memorandum of Law in Support of Defendants' Motion for Summary Judgment, dated January 24, 2014

"OpP":  Direct-Action Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, dated March 14, 2014

"¶":  Defendants' Statement of Undisputed and Material Facts Pursuant to Local Civil Rules 56.1 in Support of Defendants' Motion for Summary Judgment, dated January 24, 2014

"P.56.1":  Direct-Action Plaintiffs' Counterstatement of Material and Disputed Facts Pursuant to Local Civil Rule 56.1, dated March, 14, 2014

"R. ¶":  Defendants' Response to Direct-Action Plaintiffs' Counterstatement of Material and Disputed Facts, filed April 11, 2014

## TABLE OF CONTENTS

Table of Contents ............................................................................................................. iii

Table of Authorities ......................................................................................................... iv

Preliminary Statement ........................................................................................................1

Argument .............................................................................................................................2

I.     NONE OF THE DIRECT-ACTION PLAINTIFFS HAS RAISED A
       TRIABLE ISSUE OF FACT AS TO DEFENDANTS' SCIENTER OR
       DAMAGES. ..............................................................................................................2

II.    THE STANDING PLAINTIFFS CANNOT ESTABLISH STANDING
       UNDER ARTICLE III AND THE RELEVANT STATUTORY
       PROVISIONS. ...........................................................................................................3

       A.    Rule 17 Does Not Cure the Standing Plaintiffs' Jurisdictional
             Deficiencies. ..................................................................................................4

       B.    Even if Rule 17 Ratification Could Cure Standing Defects, The
             Standing Plaintiffs' Ratifications Are Untimely and Not the Result
             of an Honest Mistake. ....................................................................................6

       C.    Direct-Action Plaintiffs' Dilatory and Prejudicial Behavior
             Warrants Exclusion Of Their Belatedly Obtained Assignments and
             Ratifications ...................................................................................................8

       D.    Summary Judgment Should Be Entered in Defendants' Favor with
             Respect to the Standing Plaintiffs' Claims Because None Can
             Prove Article III Standing. ............................................................................9

             1.    SEB Bank ............................................................................................9

             2.    AFA Sick Pay on behalf of TSL ......................................................11

             3.    Danske ...............................................................................................12

             4.    Robur .................................................................................................12

             5.    Pioneer Germany ..............................................................................13

             6.    WSV ..................................................................................................14

             7.    Union .................................................................................................14

             8.    OPAM ................................................................................................15

             9.    OKAG ...............................................................................................15

III.   DIRECT-ACTION PLAINTIFF AMF PENSION AND 157 FUNDS
       HAVE FAILED TO ADDUCE EVIDENCE OF DAMAGES TO
       DEFEAT SUMMARY JUDGMENT. .....................................................................16

Conclusion .........................................................................................................................18

REDACTED VERSION

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)..................................................................................................17

*Clarex Ltd. v. Natixis Securities America LLC*,
No. 12 Civ. 0722 (PAE), 2012 WL 4849146 (S.D.N.Y., 2012).................................. 5

*Cortlandt Street Recovery Fund v. Deutsche Bank, London Branch*,
No. 12 Civ. 9351 (JPO), 2013 WL 3762882 (S.D.N.Y. July 18, 2013) ....................5

*CWCapital Asset Mgmt., LLC v. Chicago Prop., LLC*,
610 F.3d 497 (7th Cir. 2010) ....................................................................................10

*Disability Advocates, Inc. v. N.Y. Coal. for Quality Assisted Living, Inc.*,
675 F.3d 149 (2d Cir. 2012)........................................................................................6

*Franco v. Connecticut Gen. Life. Ins. Co.*,
Civ. A. No. 07-6039 (SRC), 2013 WL 5934539 (D.N.J. Nov. 1, 2013) ...................8

*Gen. Nutrition Corp. v. Gardere Wynne Sewell, LLP*,
727 F.Supp.2d 377 (W.D. Pa. 2010) ...................................................................10, 14

*Hildebrand v. Dentsply Intern, Inc.*,
No. 06-5439, 2011 WL 4528343 (E.D. Pa., Sept. 30, 2011)......................................5

*In re Able Labs. Sec. Litig.*,
425 F. Supp. 2d 562 (D.N.J. 2006) ...........................................................................15

*In re Bernard L. Madoff Investment Securities LLC*,
721 F.3d 54 (2d Cir. 2013)......................................................................................4, 9

*In re Herley Industries Inc. Securities Litigation*,
Civil Action No. 06-2596, 2009 WL 3169888 (E.D. Pa. Sept. 30, 2009) ...............9

*In re KB Toys Inc.*,
736 F.3d 247 (3d Cir. 2013).....................................................................................14

*In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*,
MDL No. 1658, 2013 WL 2395035 (D.N.J. May 29, 2013) ....................................17

*In re Merck*,
 MDL No. 1658 (SRC), 2011 WL 3444199 (D.N.J. Aug. 8, 2011)..........................15

REDACTED VERSION

**Page(s)**

*In re Spree.com Corp.*,
    295 B.R. 762 (E.D. Pa. June 26, 2003) ................................................................5

*In re Vivendi Universal, S.A. Sec. Litig.*,
    605 F. Supp. 2d 570 (S.D.N.Y. 2009) ........................................................7, 12, 15

*Liberty Int'l Underwriters Canada v. Scottsdale Ins. Co.*,
    955 F. Supp. 2d. 317 (D.N.J. 2013) ...............................................................14

*Lincoln Property Co. v. Roche*,
    546 U.S. 81 (2005) ....................................................................................5

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ...................................................................................4

*MCI Worldcom Network Services, Inc. v. Graphnet, Inc.*,
    No. Civ. 00-5255 (WHW), 2005 WL 1116163 (D.N.J. May 11, 2005) ............................6, 7

*Mecklenburg Farm v. Anheuser-Busch, Inc.*,
    250 F.R.D. 414 (E.D. Mo. May 22, 2008) ...........................................................5

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    259 F.3d 154 (3d Cir. 2001) .........................................................................18

*Nicholas v. Pa. State Univ.*,
    227 F.3d 133 (3d. Cir. 2000) .........................................................................8

*Ortho-McNeil-Janssen Pharms., Inc. v. Watson Labs., Inc.*,
    No. 08-5103, 2011 WL 254313 (D.N.J. Jan. 25, 2011) ...........................................16

*Perry v. Vill. of Arlington Heights*,
    186 F.3d 826 (7th Cir. 1999) ........................................................................11

*Shareholder Representative Servs. LLC v. Sandoz Inc.*,
    No. 12 Civ. 6154, 2013 WL 4015901 (S.D.N.Y. Aug. 7, 2013) ................................7, 11

*Tool-Plas Sys., Inc. v. Camaco, LLC*,
    No. 09-12003, 2010 WL 1347686 (E.D. Mich. Mar. 31, 2010) .....................................8

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche*,
    549 F.3d 100 (2d Cir. 2008) ...................................................................3, 6, 11

Defendants Merck & Co., Inc. ("Merck") and Dr. Alise S. Reicin respectfully submit this memorandum of law in further support of their Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(a).

**PRELIMINARY STATEMENT**

The seven Direct Actions, filed by 26 foreign investment entities, set forth substantially the same allegations as those in the Class Action.  Thus, for all the reasons set forth in Defendants' Class Action Motion and Defendants' Class Action Reply, summary judgment should likewise be entered in Defendants' favor in each of the Direct Actions.  (*See infra* Part I.)

Separately, as Direct-Action Plaintiffs concede, the Standing Plaintiffs have not suffered a personal "injury in fact" and were not assigned the claims of beneficial owners of Merck securities prior to the commencement of the litigation; nor can the Standing Plaintiffs establish the elements for the third-party standing exception to Article III's "injury in fact" requirement.  Indeed, it is undisputed that the Standing Plaintiffs do not have standing to bring their claims.  Rather, the Standing Plaintiffs spend the majority of their opposition brief arguing that Rule 17 of the Federal Rules of Civil Procedure obviates their need to have established standing at the outset of the litigation.  They are wrong:  Rule 17 cannot revive subject matter jurisdiction where none existed in the first place.  And post-hoc assignments and ratifications are similarly insufficient to circumvent the constitutional requirement that plaintiffs have standing at the *commencement* of the litigation.  Accordingly, summary judgment as to the claims of the Standing Plaintiffs should be entered in Defendants' favor.  (*See infra* Part II.)

Finally, as the undisputed record shows,  for 157 of Direct-Action Plaintiffs' funds (the "157 Funds") and for Direct-Action Plaintiff AMF Pension.  These funds have failed to prove *any* damages – a

prerequisite to pursuing claims under Section 10(b).  Thus, summary judgment as to the claims

of the 157 Funds and AMF Pension should be entered in Defendants' favor.  (*See infra*, Part III.)

ARGUMENT

I.   **NONE OF THE DIRECT-ACTION PLAINTIFFS HAS RAISED A TRIABLE ISSUE OF FACT AS TO DEFENDANTS' SCIENTER OR DAMAGES.**

Summary judgment should be entered in Defendants' favor as to all claims

brought by the Direct-Action Plaintiffs for precisely the reasons stated in Defendants' Class

Action Motion and Defendants' Class Action Reply.[2]  (*See generally* Defs.' Class Action

Motion; Defs.' Class Action Reply.)[3]

*First*, the undisputed record shows that Direct-Action Plaintiffs have not adduced

evidence that Defendants acted with scienter.  None of the purported "negative information" in

Merck's possession pre-VIGOR was sufficient to show that Merck knew or recklessly

disregarded a known CV risk of Vioxx in its 4 public pre-VIGOR statements (Stmts. 1-4) –

indeed such a risk was only "conjecture".  (*See* Defs.' Class Action Reply at Part I.A.)  Likewise,

with respect to the 29 post-VIGOR statements (Stmts. 5-33), the undisputed evidence

demonstrates that Defendants subjectively – and reasonably – believed what they stated with

respect to both the naproxen hypothesis and the fact that Merck's review of its extensive clinical

---

[2] Defendants' Response to Direct-Action Plaintiffs' Counterstatement of Material and Disputed Facts Pursuant to Local Civil Rule 56.1 and Defendants' Reply to Direct-Action Plaintiffs' Consolidated Response Pursuant to Local Civil Rule 56.1 to Defendants' Statements of Putatively Undisputed Material Facts, are submitted together herewith in support of Defendants' Motion for Summary Judgment.

[3] Defendants also incorporate, as if fully stated herein:  (i) Defendants' Class Action Motion, dated January 17, 2014; (ii) Defendants' Class Action Reply, dated April 11, 2014; (iii) Defendants' Response to Lead Plaintiffs' Corrected Counterstatement of Material Disputed Facts, dated April 11, 2014; (iv) Defendants' Reply to Lead Plaintiffs' Response to Defendants' Statement of Undisputed and Material Facts, dated April 11, 2014; (v) the Compilation of Merck Statements, dated April 11, 2014 and (vi) the Timeline of Relevant Vioxx Events, dated April 11, 2014.

trial database showed no indication of a difference in CV risk between Vioxx, placebo and non-naproxen NSAIDs.  (*See* Defs.' Class Action Reply at Part I.B.)  Direct-Action Plaintiffs' challenge to Defendants' legitimate scientific decisions on how to interpret or analyze the clinical trial data does not create an inference of scienter; nor do the hindsight, post-hoc analyses performed by Class Plaintiffs' experts ten years after the Class Period.  (*See* Defs.' Class Action Reply at Part I.B.5.)

*Second*, Class Plaintiffs' – and by extension Direct-Action Plaintiffs' – damages model finds no support in the record.  In the face of Defendants' overwhelming evidence that Vioxx was commercially viable during the Class Period, Direct-Action Plaintiffs have not – and cannot – cite a single witness who contemporaneously concluded that Vioxx should never have been marketed or approved, should have been withdrawn after VIGOR, or should have been labeled with a CV warning so severe and unique that sales of Vioxx would have stopped altogether.   That Plaintiffs' expert now baldly asserts this (in flat disregard of dispositive evidence to the contrary) does not avoid summary judgment.  (*See* Defs.' Class Action Reply at Part II.)  Nor did the Direct-Action Plaintiffs provide evidence from which a reasonable jury could calculate damages based on a "flexible" model of "lesser disclosure" and "reduced sales". (*See* Defs.' Class Action Reply at Part II.)  Accordingly, for all the reasons articulated in Defendants' Class Action Motion and Defendants' Class Action Reply, summary judgment should be entered in Defendants' favor on all claims brought by the Direct-Action Plaintiffs.

## II.      THE STANDING PLAINTIFFS CANNOT ESTABLISH STANDING UNDER ARTICLE III AND THE RELEVANT STATUTORY PROVISIONS.

It is undisputed that at the time of filing, the Standing Plaintiffs did not have Article III standing because they had not "*personally* suffered an injury" or been assigned claims by the parties who had.  *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche* ("*Huff*"), 549

3

F.3d 100, 107 (2d Cir. 2008) (emphasis added) (Opp. at 10-12.)  It is similarly undisputed that the Standing Plaintiffs are unable to establish:  (i) the elements for the third-party standing exception to Article III's "injury in fact" requirement (Opp. at 10 n.6) and (ii) statutory standing under Section 10(b) (Opp. at 10 n.6).  The Standing Plaintiffs have not – and cannot – put forth any facts that would alter these conclusions.  Rather, the Standing Plaintiffs argue that the constitutional standing requirement and the requirement that this Court possess subject matter jurisdiction at the onset of the litigation are somehow obviated by Rule 17 of the Federal Rules of Civil Procedure, which allows for ratification of an action by the "real party in interest".  Fed. R. Civ. P. 17(a)(3).  This argument fails, primarily because Rule 17 cannot abridge constitutional standing requirements, and because even if Rule 17 could cure the lack of standing, the law does not sanction dilatory behavior.

###### A.    Rule 17 Does Not Cure the Standing Plaintiffs' Jurisdictional Deficiencies.

As discussed in our opening memorandum, constitutional standing is a matter of jurisdiction, which must be determined as of the commencement of suit.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-61 (1992); (Br. at 10.)  Here, Direct-Action Plaintiffs do not dispute that the Standing Plaintiffs lacked Article III standing at the commencement of the litigation.  This is fatal to the Standing Plaintiffs' claims.  Indeed, lack of constitutional standing is a jurisdictional defect that strips the court of the power to hear "cases or controversies".  *See id*. at 559.

To try to sidestep that fatal defect, Direct-Action Plaintiffs now imply that Defendants are actually challenging Standing Plaintiffs as the "real parties in interest" under Rule 17.  (Opp. at 11.)  This is incorrect.  Indeed the footnote in Defendants' opening memorandum to which Direct-Action Plaintiffs cite actually states that Article III standing

*cannot* be cured by assignments obtained pursuant to Rule 17.  (Br. at 12 n.5.)  Contrary to

Direct-Action Plaintiffs' argument, Rule 17 cannot retroactively cure standing – and thus,

jurisdictional – defects that have existed since the commencement of the litigation.

     Courts in the Third Circuit have recognized that "a Rule 17 substitution of the real

party in interest cannot cure the absence of federal subject matter jurisdiction".  *Hildebrand v.*

*Dentsply Int'l, Inc.*, Civil Action No. 06-5439, 2011 WL 4528343, at *3 (E.D. Pa., Sept. 30,

2011); *see In re Spree.com Corp.*, 295 B.R. 762, 775 (E.D. Pa. June 26, 2003) ("If [the plaintiff]

has no constitutional standing to even enter the realm of the federal courts, it stands a fortiori that

he also lacks standing to invoke the procedural rules of that realm.").  That is because "the

Federal Rules of Civil Procedure cannot be used to expand the subject matter jurisdiction of the

district courts", *id.*, and Rule 17, "like all rules prescribed by the Supreme Court, may not

abridge, enlarge, or otherwise modify substantive rights."  *In re Bernard L. Madoff Inv. Sec.*

*LLC*, 721 F.3d 54, 74 n.25 (2d Cir. 2013).  Moreover, as the cases cited by Direct-Action

Plaintiffs acknowledge, Rule 17(a) "address[es] party joinder, not federal court subject-matter

jurisdiction".  *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 82 (2005); *see Mecklenberg Farm v.*

*Anheuser-Busch, Inc.*, 250 F.R.D. 414, 417 (E.D. Mo. May 22, 2008 ("The requirements of Rule

17 should not be confused with the jurisdictional doctrine of standing") (cited at Opp. at 11.)

Thus, "[b]ecause lack of standing is a jurisdictional defect . . . courts cannot consider any

amendments to the initial complaint or any post-filing assignments to plaintiffs to determine

whether plaintiffs have standing".  *Clarex Ltd. v. Natixis Secs. Am. LLC*, No. 12 Civ. 0722

(PAE), 2012 WL 4849146, at *4 (S.D.N.Y.  Oct. 12, 2012).  Moreover "[a] court may not permit

an action to continue, even where the jurisdictional deficiencies have been subsequently cured,

'if jurisdiction [was] lacking at the commencement of a suit . . . .'"  *Cortlandt St. Recovery Fund*

*v. Deutsche Bank, London Branch*, No. 12 Civ. 9351 (JPO) 2013 WL 3762882 at *3 (S.D.N.Y.

July 18, 2013) (citing *Disability Advocates, Inc. v. N.Y. Coal. for Quality Assisted Living, Inc.*,

675 F.3d 149, 160 (2d Cir. 2012)). Thus, summary judgment should be granted in Defendants'

favor with respect to the Standing Plaintiffs.

> **B.     Even if Rule 17 Ratification Could Cure Standing Defects, the Standing
> Plaintiffs' Ratifications Are Untimely and Not the Result of an Honest
> Mistake.**

Even if this Court were to conclude that *timely* ratifications could cure Article III

defects (and it should not), the Court should nonetheless reject the Standing Plaintiffs'

ratifications – which are neither timely nor the "result of an honest and understandable mistake".

*MCI Worldcom Network Servs., Inc. v. Graphnet, Inc.*, No. Civ. 00-5255 (WHW), 2005 WL

1116163, at *6 (D.N.J. May 11, 2005); *see* Fed. R. Civ. P. 17 (a)(3) (stating that a court "may not

dismiss an action for failure to prosecute in the name of the real party in interest until, after an

objection, a *reasonable time* has been allowed for the real party in interest to ratify, join or be

substituted into the action") (emphasis added).

Standing Plaintiffs – and their counsel – have been on notice of the *Huff* decision,

which required investment advisors to obtain valid assignments from the party who had been

injured to maintain an action, since it was issued on December 3, 2008. *See Huff*, 549 F.3d at

107. Notwithstanding that ruling, the Standing Plaintiffs did not promptly seek the appropriate

assignments and ratifications. (R. ¶¶ 28, 41, 64, 82, 97, 113, 137, 160, 189, 194, 198.) Rather

they deliberately chose to wait ██████ to obtain  assignments – ████████████████████████

████████████████████████████████████████ (R. ¶¶ 113, 136) ████████████████

████████████████████████████████████████████████████████

████████████████████████ (R. ¶¶ 189, 194, 198.)

Direct-Action Plaintiffs do not even pretend that the belated assignments and ratifications were the result of an "honest and understandable mistake" – nor could they.  "When determination of the correct party to bring the action was not difficult when no excusable mistake was made . . . the action should be dismissed".  *MCIWorldcom Network Servs.*, 2005 WL 1116163, at *6.  There is nothing in the record suggesting that the Standing Plaintiffs could not promptly determine the real party in interest.  That is the end of the inquiry.

The Standing Plaintiffs' own dilatory tactics underscore that no such "mistake" was made.  For example, even after obtaining what they claim to be valid assignments, none of the Standing Plaintiffs sought to amend their complaints to add allegations relating to the real parties in interest prior to the Court's March 15, 2013 deadline for amending the operative pleading.  (R. ¶¶ 23, 81, 93.)  And although certain Standing Plaintiffs – Danske and Robur – filed second amended complaints on June 21, 2013 (*after* the Court's deadline was well past), in an effort to name the "real parties in interest", ███████████████████████████ ████████████████████████████████████.  (*See* Second Am. Compl. ¶ 19, No. 07-cv-4024, ECF No. 546 in Case No. 05-cv-2367; Second Am. Compl. ¶ 20, No. 07-cv-4024, ECF No. 546 in Case No. 05-cv-2367.)  The Standing Plaintiffs should not be permitted to flout this Court's scheduling order or the clear-cut precedent of which they and their counsel were certainly aware; that is particularly true in light of the fact that they have previously litigated this very issue.  *See In re Vivendi Universal, S.A. Sec. Litig.* ("*Vivendi*"), 605 F. Supp. 2d 570, 585 (S.D.N.Y. 2009).[4]  The Standing Plaintiffs did not make an "honest and understandable" mistake

---

[4] Nor should the Standing Plaintiffs be permitted to amend their complaints to add allegations related to those new assignments, as the court permitted in *Vivendi*.  *First*, subsequent case law has made clear that neither Rule 15 nor 17 of the Federal Rules of Civil Procedure "permit[s] a plaintiff who did not originally have standing to cure the standing defect by obtaining assignments from the owners of the claims, amending the complaint to reflect the

– they made a tactical decision.[5]  Such gamesmanship and dilatory behavior should not be rewarded.  *See Tool-Plas Sys., Inc. v. Camaco, LLC*, No. 09-12003, 2010 WL 1347686, at *2 (E.D. Mich. Mar. 31, 2010) ("In deciding whether to allow a real party in interest to substitute into an action" the Court should consider "whether there has been an honest mistake as opposed to tactical maneuvering, unreasonable delay or undue prejudice to the non-moving party" (citing *Esposito v. United States*, 368 F.3d 1271, 1275-76 (10th Cir. 2004); *Jordan v. Fox, Rothschild, O'Brien, & Frankel*, 20 F.3d 1250, 1278 (3d Cir. 1994))).

C.     **Direct-Action Plaintiffs' Dilatory and Prejudicial Behavior Warrants Exclusion of Their Belatedly Obtained Assignments and Ratifications.**

Moreover, Direct-Action Plaintiffs' dilatory behavior warrants exclusion of the untimely assignments and ratifications.  *See Nicholas v. Pa. State Univ.*, 227 F.3d 133, 148 (3d. Cir. 2000) (noting that "bad faith or willfulness in failing to comply with a court order" is one factor to consider in evaluating whether non-disclosure warrants exclusion); *Franco v. Conn. Gen. Life. Ins. Co.*, Civ. A. No. 07-6039 (SRC), 2013 WL 5934539, at *2-3 (D.N.J. Nov. 1,

---

assignments, and having the amended complaint relate back to the original filing of the complaint".  *S'holder Representative Servs. LLC v. Sandoz Inc.*, No. 12 Civ. 6154, 2013 WL 4015901, at *7 (S.D.N.Y. Aug. 7, 2013); *see also In re Bernard L. Madoff Inv. Sec. LLC.*, 721 F.3d 54, 74 n. 25 (2d Cir. 2013) ("Rule 17(a), like all rules prescribed by the Supreme Court, may not abridge, enlarge, or otherwise modify substantive rights . . . .  It therefore cannot provide an independent basis for standing.").  As discussed below (*see infra* Part I.D), Direct-Action Plaintiffs' attempt to distinguish these cases is unavailing.  *Second*, the *Vivendi* decision was explicitly driven by a concern with avoiding a "potentially unjust and inefficient result" because *Huff* had been decided while Vivendi's summary judgment motion on standing was pending.  *Vivendi*, 605 F. Supp. 2d at 585.  In this case, the only "unjust and inefficient result" would be to allow the Standing Plaintiffs to maintain actions for almost seven years that the law and the undisputed record show they did not have Article III standing to commence.

REDACTED VERSION

2013) (Chesler, J.) (precluding evidence submitted in an untimely matter because the plaintiffs'

conduct was "quite egregious" and "the prejudice to Defendants and willful disruptiveness to this

litigation caused by Plaintiffs cannot be overstated"); s*ee, e.g.*, *id.*, at *2 (precluding the

plaintiffs' from relying on belatedly produced materials where "Plaintiffs ha[d] taken quite a

cavalier attitude toward abiding by the Court's time frame for the development of this litigation"

and the defendants would have no opportunity to conduct depositions unless "the Court would

indulge [the plaintiffs'] willful disregard of its scheduling orders and re-open discovery to cure

this prejudice to Defendants"). ██████████████████████████████████████

████████████████████████████████████████████████████████████████

██████ Because of Direct-Action Plaintiffs' tactical maneuvering, Defendants had no opportunity

to examine Direct-Action Plaintiffs on these ratifications; nor have Direct-Action Plaintiffs

offered *any* justification whatsoever for not obtaining these ratifications earlier and for serving

these belated ratifications after discovery was completed.  This is precisely the type of tactically

motivated misbehavior that warrants exclusion.

> **D.** **Summary Judgment Should Be Entered in Defendants' Favor with Respect to the Standing Plaintiffs' Claims Because None Can Prove Article III Standing.**

> 1. SEB Bank

Direct-Action Plaintiffs do not dispute that SEB Bank lacked standing to assert

securities claims when it brought suit.  They do not dispute that SEB Bank did not invest in

Merck securities during the Class Period or that SEB Bank was not a Section 10(b) "purchaser[]"

or "seller[]".  (R. ¶ 173.)███████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

Accordingly, SEB Bank does not qualify for the third-party standing exception to the injury in fact requirement.  (*See supra* Part II.)  Nor does the fact that these three entities are wholly owned subsidiaries confer standing upon SEB Bank to bring claims on their behalf.  *See Gen. Nutrition Corp. v. Gardere Wynne Sewell, LLP*, 727 F.Supp.2d 377, 385-86 (W.D. Pa. 2010) (noting that a "parent corporation could not recover for amounts owed to a wholly-owned subsidiary").  These facts are undisputed.

Recognizing the constitutional and statutory obstacles to SEB Bank's claims, Direct-Action Plaintiffs now ask this court to engage in mental gymnastics to conclude that

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████  (Opp. at 37.)  That is not – and cannot be – the law.[6]  (*See supra* Part II.)  In fact, the cases on which Direct-Action Plaintiffs rely in support of this proposition (Opp. at 37-39) make little or no mention of Article III standing, let alone stand for the proposition that Rule 17 circumvents that threshold constitutional requirement.[7]  Direct-Action Plaintiffs' attempt to

---

[6] Direct-Action Plaintiffs' reliance on *CWCapital Asset Mgmt., LLC v. Chicago Prop., LLC*, 610 F.3d 497, 499-502 (7th Cir. 2010) LLC is misleading.  (Opp. at 13.)  While the *CWC Capital* court did permit ratification by the "real party in interest", it did so only after concluding that there was "no doubt about [the original plaintiff's] Article III standing . . . ."  *Id.* at 501.  The same clearly cannot be said regarding the Standing Plaintiffs.

[7] Notably, *In re Herley Indus. Inc. Sec. Litig.*, upon which Direct-Action Plaintiffs also rely, makes clear that "[o]utside the class action context" – as the Direct-Action Plaintiffs are here – "several courts have held Rule 17 *cannot be used to cure standing defects which existed at the*

distinguish Defendants' caselaw (Opp. at 18-20) also fails – these cases all stand for precisely the proposition that standing and jurisdiction must exist at the onset of litigation and that Rule 17(a) cannot abridge that requirement. *See In re Bernard L. Madoff Inv. Sec. LLC.*, 721 F.3d 54, 74 (2d Cir. 2013) (noting that Rule 17(a) "cannot provide an independent basis for standing"); *S'holder Representative Servs. LLC v. Sandoz Inc.*, No. 12 Civ. 6154, 2013 WL 4015901, at *7 (S.D.N.Y. Aug. 7, 2013) (noting that a plaintiff's "post-filing receipt of assignments does not cure the standing defect that existed when this action commenced"); *Perry v. Vill. of Arlington Heights*, 186 F.3d 826, 830 (7th Cir. 1999) (concluding that a plaintiff cannot "attempt to satisfy the requirements of standing as the case progresses"). Accordingly, summary judgment with respect to SEB Bank's claims should be entered in Defendants' favor.

### 2.   AFA Sick Pay on behalf of TSL

Summary judgment must be entered in Defendants' favor with respect to AFA Sick Pay's claims on behalf of TSL because AFA Sick Pay lacked Article III standing to pursue this action at the time the complaint was filed. (R. ¶¶ 169-70.) 

Mere powers of attorney do "not confer standing to sue in the holder's own right because a power-of-attorney does not transfer an ownership interest in the claim". *Huff*, 549 F.3d at 108.

(R. ¶¶ 169.) As discussed, such retroactive assignments cannot cure an Article III

*outset of litigation.*" Civil Action No. 06-2596, 2009 WL 3169888, at *7-8 (E.D. Pa Sept 30, 2009) (emphasis added) (citing cases).

11

standing defect.  (*See supra* Part II.)  Because AFA Sick Pay did not have an ownership interest in the claims at the time this lawsuit was commenced, the Court must grant summary judgment in Defendants' favor with respect to these claims.

    3.    Danske

Danske's claims █████████████████████████████████████████

███ also cannot survive summary judgment.  (R. ¶ 128.) ██████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████.[8]  (R. ¶ 137.)  This assignment is untimely and cannot retroactively confer Article III standing onto Danske.  (*See supra* Part II.)  Nor can Danske – a Danish investment company – qualify for the third-party standing exception to the injury in fact requirement.  *See Vivendi*, 605 F. Supp. 2d 570, 582 (holding that "Danish investment companies Danske and Nordea Invest do not fall within the *Huff* exception and therefore do not have standing to bring suit").  Thus, summary judgment should be entered in Defendants' favor with respect to Danske's claims.

    4.    Robur

The Standing Plaintiffs concede that Robur is "not pursuing claims on behalf of

████████████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████  To the extent that Standing Plaintiffs concede that Robur cannot bring claims on behalf of these ███

---

[8] ████████████████████████████████████████████████
████████████████████████████████████████████

funds, they should submit a voluntary dismissal of Robur's claims with respect to those ███

funds.  To the extent they do not voluntarily dismiss those claims, summary judgment with

respect to those funds should be entered.



████████████ That assignment is ██████ too late, and cannot retroactively confer standing

upon Robur.  (*See supra* Part II.)  Moreover, Robur does not contest the fact that it cannot

qualify for the third-party standing exception to the injury in fact requirement.  S*ee Vivendi*, 605

F. Supp. 2d at 579.  Thus, summary judgment should be entered in Defendants' favor as to

Robur's claims ██████████████████

   5.   Pioneer Germany

      Summary judgment must be entered in Defendants' favor on all of Pioneer

Germany's claims because it did not have standing at the time the action was commenced.



████████████████████████ As discussed above, retroactive

assignment cannot cure an Article III standing defect that existed at the time the action was

commenced.  (*See supra* Part II.)

      Further, Pioneer Germany does not dispute that it was not the KAG for the ███

funds at the time the litigation was commenced.  (R. ¶¶ 39, 43-45, 47-51, 53-54.) ██████
█████████████████████████████████████████████

████████████ Therefore, Pioneer Germany does not fall within the third-party standing

exception. *See Vivendi*, 605 F. Supp. 2d at 579.  Pioneer Germany's only argument is that

13

██████ pursuant to Rule 17 relieves it of Article III's standing requirements.  That is not the

law.  (*See supra* Part II.)

      6.   <u>WSV</u>

Summary judgment must also be granted in Defendants' favor with respect to

WSV's claims relating to purchases made ██████████████████, and on behalf

of the investors in the ███ funds managed ████████████████████

████████████████████████████████████

██████████.  (R. ¶¶ 83-86.)  As discussed, these untimely assignments cannot cure

WSV's standing defects.[9]  (*See supra* Part II.)

      7.   <u>Union</u>

As with WSV, Union did not have standing at the time the action was

commenced. ████████████████████████████████

████████████ Such untimely assignments are insufficient to cure jurisdictional defects and

confer standing.

████████████████████████████████ is also

insufficient to confer standing upon Union to pursue claims on behalf of the investors in the

funds.  *See Gen. Nutrition Corp.*, 727 F. Supp. 2d at 385-86.  Plaintiffs have cited no case to the

contrary, nor have they submitted ██████████████████████

██████████████████████ Thus, there is no evidentiary basis for

---

[9] Direct-Action Plaintiffs do not dispute the lack of an assignment related to fund ████ nor
do they address or otherwise contest Defendants' position that WSV cannot file suit in place of a
wholly owned subsidiary.  (R. ¶¶ 84-87); (Opp. 27-29); s*ee Gen. Nutrition Corp.*, 727 F. Supp.
2d at 385-86.

finding that Union had authority to bring suit on behalf of the funds.[10]  For these reasons,

summary judgment should be entered against Union's claims.

        8.    <u>OPAM</u>

        OPAM had not obtained assignments of claims from the ▮ relevant funds prior



to the time the action was commenced, and therefore OPAM lacks Article III standing to bring

suit.  (*See* Br. at 25-26.) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮  (R. ¶¶ 97-101.)  It is also undisputed that ▮ of the funds could have

brought suit on their own behalf and thus OPAM does not qualify for the third-party exception to

Article III's injury in fact requirement.  (Br. 25-26 (citing *Vivendi*, 605 F. Supp.2d at 579-80).)

Accordingly, summary judgment on OPAM's claims related to those ▮ funds must be entered

in Defendants' favor.[11]  (*See supra* Part II.)

        9.    <u>OKAG</u>

        As with OPAM, Direct-Action Plaintiffs do not dispute that OKAG's ▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  (R. ¶ 64.) ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮, OKAG lacks Article III

standing to bring suit.  (*See supra* Part II.)

        Further, Plaintiffs have presented no evidence that OKAG is a KAG for the

▮▮▮▮▮▮▮▮▮▮▮▮ funds, nor is there any evidence that OKAG made any

investment decisions on behalf of ▮▮▮ during the Relevant Period and therefore cannot be

---

[10] Direct-Action Plaintiffs' reliance on *In re KB Toys Inc.*, 736 F.3d 247 (3d Cir. 2013) and *Liberty Int'l Underwriters Canada v. Scottsdale Ins. Co.*, 955 F. Supp. 2d. 317 (D.N.J. 2013) is inapposite.  Neither of these cases permits a plaintiff to retroactively cure their lack of statutory standing through a post-hoc assignment.

[11] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  As such, OPAM also lacks statutory standing.  *See In re Able Labs. Sec. Litig.*, 425 F.Supp. 2d 562, 571-72 (D.N.J. 2006).

considered a purchaser.  *See Vivendi*, 605 F. Supp. 2d at 579-80; *In re Able Labs Sec. Litig*, 425 F.Supp. 2d at 571-72.  (R. ¶¶ 65, 68.)  For these reasons, OKAG lacks Article III standing and summary judgment should be granted in Defendants' favor.  (Br. at 26-27.)

## III.   DIRECT-ACTION PLAINTIFF AMF PENSION AND 157 FUNDS HAVE FAILED TO ADDUCE EVIDENCE OF DAMAGES TO DEFEAT SUMMARY JUDGMENT.

Direct-Action Plaintiffs contend that "the most the Merck Defendants could hope for is a limitation of damages as to the Direct-Action Plaintiffs who brought claims on behalf of one or more funds ████████████████████████████████████████████." (Opp. at 46.)[12]  That is precisely what Defendants' motion for summary judgment seeks – as well as dismissal of AMF Pension's claims in their entirety for failure to prove damages.  As set forth in our opening memorandum and as Direct-Action Plaintiffs concede (Opp. at 46), ███████████ ████████████████████████████████████████ for 157 of Direct-Action Plaintiffs' funds, including the entirety of Direct-Action Plaintiff AMF Pension's claims.  (Br. at 27.) Accordingly, the 157 Funds and AMF Pension have failed to offer proof of damages, a prerequisite to any action brought under Section 10(b), and thus summary judgment must be entered in Defendants' favor as to those claims.  (*See* Br. at 27-28.)  None of Direct-Action Plaintiffs' arguments to the contrary is sufficient to defeat summary judgment.

*First*, Direct-Action Plaintiffs contend that the Court cannot grant summary judgment as to the 157 Funds because Defendants seek dismissal of "only a portion of a claim". (Opp. at 46.)  That argument is based on outdated law.  Direct-Action Plaintiffs "appear[] to be unaware . . . that Rule 56(a) was amended effective December 1, 2010, and it now states: 'A

---

[12] ████████████████████████████████████████████████████████████████

party may move for summary judgment, identifying each claim or defense – or the *part of each claim* or defense – on which summary judgment is sought.'" *Ortho-McNeil-Janssen Pharms., Inc. v. Watson Labs., Inc.*, No. 08-5103, 2011 WL 254313, at *2 (D.N.J. Jan. 25, 2011) (Chesler, J.) (emphasis added).[13]  Thus, where, as here, there is no dispute of material fact over a part of a claim, partial summary judgment is appropriate.  *Id.* at *4 (granting motion for partial summary judgment).  Because the 157 Funds have offered no proof of damages (*see* Br. at 27-28), the Court should grant the portion of Direct-Action Plaintiffs' claims related to those funds.

    *Second*, without support in the record, Direct-Action Plaintiffs argue that dismissal is inappropriate because a jury could determine that the trier of fact could "alter" "the length of the Relevant Period (May 21, 1999 through September 29, 2004)".  (Opp. at 47.)  But the Relevant Period could only get *shorter*:  this Court has *twice* ruled as a matter of law that the Relevant Period cannot extend past September 29, 2004, *see In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*, MDL No. 1658 (SRC), 2013 WL 2395035, at *5 (D.N.J. May 29, 2013); *In re Merck*, MDL No. 1658 (SRC), 2011 WL 3444199, at *32 (D.N.J. Aug. 8, 2011), and Direct-Action Plaintiffs have never sought an earlier start to the Relevant Period (and Vioxx was not on the market until May 21, 1999).  Moreover, Direct-Action Plaintiffs have failed to adduce any evidence to demonstrate that a change in the Relevant Period could change ▮

▮▮▮▮▮▮▮▮▮▮▮ for the 157 Funds and AMF Pension.  For that reason alone the Court should not credit this argument.  *See* Fed. R. Civ. P. 56(a), (e)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (summary judgment is appropriate where the nonmoving party "failed

---

[13] The cases on which Direct-Action Plaintiffs rely for the proposition that "courts have repeatedly declined to grant summary judgment where only a portion of a claim is sought to be dismissed" (*see* Opp. at 46) all pre-date the 2010 amendment of Rule 56(a).

to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof").

Third, in a transparent effort to confuse the Court, Direct-Action Plaintiffs argue that the entity they call "AMF Pension" – Arbetsmarknadsforsakringar Pensionsforsakringsakietbolag – did in fact suffer damages.  (Opp. at 47.)  However, Defendants' use of "AMF Pension" refers to AMF Pension Fondförvaltning AB – a different entity and plaintiff from the AMF Pension Direct-Action Plaintiffs address – as clearly defined on the Citations Conventions page in Defendants' opening memorandum (Br. at i), which Direct-Action Plaintiffs claim to adopt.  (Opp. at 7.) ████████████████████████████
███████████████████████████, and therefore has no basis for asserting claims against Defendants here.  Regardless of nomenclature, there is no dispute that dismissal of AMF Pension Fondförvaltning AB's claims is appropriate because that entity failed to prove damages. See Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 177-78 (3d Cir. 2001).

Accordingly, the Court should enter summary judgment in Defendants' favor as to the claims of the 157 Funds and AMF Pension.

## CONCLUSION

For the aforementioned reasons and those discussed in our opening memorandum, Defendants respectfully request that this Court grant their motion for summary judgment in its entirety.

April 11, 2014

Respectfully submitted,

CRAVATH, SWAINE & MOORE LLP,

by _____

Evan R. Chesler
Robert H. Baron
Karin A. DeMasi

Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000


HUGHES HUBBARD & REED LLP
James C. Fitzpatrick
Charles W. Cohen
One Battery Park Plaza
New York, NY 10004
(212) 837-6000

*Counsel for Defendants Merck & Co., Inc. and
Alise S. Reicin*

19