NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| IN RE MERCK & CO., INC. SECURITIES, DERIVATIVE & "ERISA" LITIGATION | : : : : | **MDL No. 1658 (SRC)** |
| | : : | **Civil Action No. 05-1151 (SRC)** **Civil Action No. 05-2367 (SRC)** |
| THIS DOCUMENT RELATES TO: THE CONSOLIDATED SECURITIES ACTION, THE DIRECT ACTIONS: | : : : | **OPINION** |
| Stichting Pensioenfonds ABP v. Merck & Co., Inc.; | : : : | No. 05-5060 |
| Norges Bank v Merck & Co., Inc.; | : | No. 07-4021 |
| Deka Investment GmbH v. Merck & Co., Inc.; | : : | No. 07-4022 |
| Union Asset Mgmt. Holding, AG v. Merck & Co., Inc.; | : : : | No. 07-4023 |
| AFA Livforsakringsaktiebolag v. Merck & Co., Inc.; | : : : | No. 07-4024 |
| DWS Investment GmbH v. Merck & Co., Inc.; and | : : : | No. 07-4546 |
| KBC Asset Mgmt. NV v. Merck & Co., Inc. | : : | No. 11-6259 |

**CHESLER**, District Judge

This matter comes before the Court on the motion for summary judgment filed by

Defendants Merck & Co., Inc. ("Merck") and Alise S. Reicin (collectively, "Merck") as to the

1

above-captioned Direct Actions. Defendant Edward Scolnick has brought his own motion, which joins in and incorporates the motion filed by Merck. The Direct Action Plaintiffs have opposed the motion. For the reasons that follow, the motion will be granted in part and denied in part.

I. **BACKGROUND**

The Direct Actions are seven individual lawsuits concerning the same alleged securities fraud related to Merck drug Vioxx at issue in the pending Class Action docketed as Civil Action number 05-2367 (the "Class Action"), with which the Direct Actions are consolidated. They were filed by various foreign institutional investors that opted out of the Class Action. Defendants argue that nine of these Direct Action Plaintiffs lack Article III standing because they are not the beneficial owners of the securities at issue in the Direct Actions. These nine, identified in the footnote below, will hereinafter be referred to collectively as the "Challenged Plaintiffs."[1] Defendants also argue that certain funds into which the Direct Action Plaintiffs invested cannot demonstrate that they have suffered any economic loss as a result of Defendants' alleged securities fraud violations, and thus, Defendants contend, summary judgment is warranted to the extent the Exchange Act claims are based on the purchase of Merck securities through those funds.

In addition to raising these two grounds for summary judgment, Merck, Reicin and Scolnick move for summary judgment in the Direct Actions for the same reasons they argued in

---

[1] The Challenged Plaintiffs are as follows: Union Asset Management Holding AG ("Union"); Pioneer Investments Kapitalanlagegesellschaft mbH ("PIKAG"); Oppenheim Kapitalanlagegesellschaft mbH ("OKAG"); Wiener Städtische Versicherung AG Vienne Insurance Group ("WSV"); Oppenheim Asset Management Services S.à.r.l. ("OPAM"); Swedbank Robur Fonder AB ("Robur"); Danske Invest Management A/S ("Danske"), AFA Sjulförsäkringsaktiebolag on behalf of Kollektivavtalsstiftelsen Trygghetsfonden TSL ("AFA Sjuk on behalf of TSL"); and Skandinaviska Enskilda Banken AB ("SEB Bank").

their Class Action summary judgment motions.  On May 13, 2015, the Court issued an Opinion and Order on the Class Action summary judgment motions, and its rulings as to those motions are adopted and incorporated into the Direct Actions.  The Court writes this Opinion to address the two summary judgment issues specific to the Direct Actions, namely (1) Defendants' contention that certain Direct Action Plaintiffs lack standing and (2) Defendants' argument that Direct Action Plaintiffs cannot establish that that some funds on which they base their Section 10(b) claim have sustained any damages.

## II. DISCUSSION

### A. Standing

Article III, § 2 of the Constitution confines federal courts to the decision of "cases" or "controversies." Standing to sue or defend is an aspect of the case-or-controversy requirement. Ne. Fla. Chapter, Associated Gen. Contractors of Am. v. Jacksonville, 508 U.S. 656, 663–64, 113 S.Ct. 2297 (1993). "[T]he doctrine of standing serves to identify those disputes which are appropriately resolved through the judicial process." Whitmore v. Arkansas, 495 U.S. 149, 154-55 (1990).  It is well-established that Article III standing contains three elements: (1) a plaintiff has suffered an injury-in-fact, (2) the injury is fairly traceable to some action of the defendant and (3) the injury is capable of redress by the court. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).

The standing challenge raised in this motion relies on two decisions, one issued by the Supreme Court and other by the Second Circuit Court of Appeals, which addressed the injury in fact component of standing.  In Sprint Communications Co. v. APCC Services, Inc., the Supreme Court considered whether the assignee of a legal claim for money had standing to pursue the claim, where the agreement between assignor and assignee provided that the assignee would

remit the proceeds of the litigation to the assignor of the claim. Sprint Commc'ns Co. v. APCC Servs., Inc. 554 U.S. 269, 271 (2008). The Court concluded that the assignee did have standing, reasoning that while the assignee did not originally suffer any injury, the injured assignor had transferred its claim to the plaintiff. Id. at 286. The Sprint Court held that for a plaintiff to have sustained injury in fact, it is sufficient for the plaintiff to have legal title to the claim. Id. at 285-286. The other decision on which Merck relies applied the Sprint holding to the question of a plaintiff's standing to bring a securities fraud action. In W.R. Huff Asset Management Co., L.L.C. v. Deloitte & Touche LLP, the Second Circuit Court of Appeals considered whether a plaintiff investment advisor could demonstrate injury in fact and satisfy constitutional standing requirements where its clients were the beneficial owners of the securities underlying the securities fraud claims brought on the clients' behalf. W.R. Huff Asset Mgmt. Co., L.L.C. v. Deloitte & Touche LLP, 549 F.3d 100, 103 (2d Cir. 2008). The Huff court noted that "*Sprint* makes clear that the minimum requirement for an injury-in-fact is that the plaintiff have legal title to, or a proprietary interest in, the claim." Id. at 108 (citing Sprint, 554 U.S. at 289). It further noted that Sprint recognized that injury in fact could be satisfied through an assignment of claims, as an assignment transfers the assignor's legal ownership of the claims to the plaintiff assignee. Id. The Second Circuit concluded that the investment advisor plaintiff in Huff lacked standing to bring the securities fraud claims because, indisputably, it was not an investor in the underlying securities, had not therefore suffered any injury as a result of the defendants' alleged violation of Exchange Act Section 10(b) and other securities laws, and importantly, had no ownership of its clients' legal claims through a valid transfer, as required by Sprint. Id. at 107-08.

Merck argues here that the Challenged Plaintiffs present the precise situation identified by Sprint and Huff as insufficient to demonstrate injury in fact and thus Article III standing. It is undisputed that the Challenged Plaintiffs are not and were not at any relevant time purchasers of Merck securities. Rather, they are investment management companies, investment advisors and, in the case of SEB Bank, the parent company of other entities which are the beneficial owners of Merck stock.  Direct Action Plaintiffs counter that each of these Challenged Plaintiffs initiated their lawsuits in 2007, before Sprint and Huff clarified standing requirements for investment managers.  They emphasize that the Challenged Plaintiffs have since that time obtained assignments and ratifications from clients and/or affiliates that in fact owned Merck securities and, as the complaints make clear, claim injury as a result of the alleged securities law violations. Merck maintains that the post-filing assignments fail to confer standing to bring suit because Article III standing is a threshold question which must be satisfied from the commencement of an action in federal court.

Although the Third Circuit has not addressed the question of investment advisers' standing after Sprint was decided in 2008, courts in this jurisdiction had routinely recognized their standing without an assignment from the shareholders. See Steamfitters Local 449 Pension Fund v. Cent. European Dist. Corp., No.11-6247, 2012 WL 3638658 (D.N.J. June 14, 2012) (observing that, prior to Sprint and Huff, it had been sufficient for standing if the adviser possessed power of attorney and full discretionary authority to make investment decisions for the client, citing In re Able Labs. Sec. Litig., 425 F.Supp.2d 562, 571 (2006)).  Merck argues that, according to Sprint and Huff, the Challenged Plaintiffs do not have standing because they lacked a proprietary interest in the Exchange Act claims at the time they initiated this action.  They had not been the beneficial owners of the Merck stock but instead had provided management and/or

5

advisory services to investment funds which were the actual owners of the Merck securities at issue or had been affiliated with the entities owning the stock. Assignments from those shareholders, Merck stresses, did not exist when the Direct Actions were filed by the Challenged Plaintiffs. It is, indeed, axiomatic that an *actual controversy* must exist at the time the complaint is filed as well as through all stages of the litigation for a federal court to have jurisdiction under Article III of the Constitution. Already, LLC v. Nike, Inc., 133 S. Ct. 721, 726 (2013).

Even so, Merck's position that the Court should reject the post-filing assignments as insufficient appears to elevate technicalities over substance. A case or controversy involving the effect of Merck's statements about Vioxx on its stock price, and specifically, alleged harm to the funds on which the Challenged Plaintiffs base their claims, has been apparent from the start of litigation. There is no question, now or at the commencement of this suit, of a real loss to those shareholders allegedly caused by Merck's misconduct. Neither injury in fact nor the existence of a readily identifiable aggrieved shareholder is hypothetical. Indeed, both are apparent from the claims and allegations asserted by the Challenged Plaintiffs. There is also no question that the real parties in interest when the suit was filed have since authorized the Challenged Plaintiffs to pursue this lawsuit on their behalf. Defendants ask that the Court extinguish the claims belonging to those shareholders when the suit was filed and now assigned in favor of eight of the Challenged Plaintiffs based on the occurrence of the assignment after the cases were filed.[2] According to Defendants, the assignments came too late to confer standing on the Challenge Plaintiffs and cannot cure the standing defect. Defendants' argument, however, misses the

---

[2] One of the Challenged Plaintiffs, SEB Bank, does not assert that it holds an assignment of claims but rather argues that the real parties in interest on the securities fraud claims it filed have ratified its actions in this lawsuit and should be permitted to join the action pursuant to Federal Rule of Civil Procedure 17(a)(3). It further argues that an amendment of the complaint, in the appropriate Direct Action, to substitute these parties for SEB Bank should relate back to the date the original complaint was filed.

reality of the situation: as to each Challenged Plaintiff, an allegedly harmed shareholder exists, but the lawsuit was not filed in its name. In other words, there is no absence of a case or controversy; rather the pursuit of securities fraud claims against Merck has been undertaken in the wrong name.

Facing a similar challenge to the standing of fund managers to bring a securities fraud action, the United States District Court for the Southern District of New York was called to apply the Huff decision in In re Vivendi. See In re Vivendi Universal S.A. Sec. Litig., 605 F. Supp. 2d 570, 574 (S.D.N.Y. 2009). In the Vivendi consolidated securities action, various foreign investment entities, which managed funds that were excluded from the related class action, brought their own individual actions. Id. at 573-74. During the pendency of the motion for summary judgment in the Vivendi individual actions, the Huff decision was issued by the Second Circuit, and the district court accepted briefing on the issue of whether the investment manager plaintiffs met Huff's "new standard for constitutional standing to bring suit under U.S. Securities laws." Id. at 574. Some of the plaintiffs had received assignments or ratifications of their actions by investment entities that had a proprietary interest in the underlying securities, and other plaintiffs had requested leave to obtain the required assignments from the interested investors with standing. Id. at 582-83. The Vivendi court concluded that rather than terminate the claims due to the investment manager plaintiffs' technical lack of standing, which became apparent only after the Huff decision was issued long after the individual securities fraud actions were commenced, the proper course would be to allow the real parties in interest "a reasonable time to ratify plaintiffs' lawsuit, join the action, or substitute for plaintiffs." Id. at 585. It reasoned that the deficiency in the complaint was not the lack of any injury at all but rather the

initiation of the suit by the incorrect parties, those with some relation to the aggrieved shareholders but without a proprietary interest in the securities fraud claim. Id. at 584.

The district court in Vivendi relied in large part on the Second Circuit's decision in Advanced Magnetics, Inc. v. Bayfront Partners, Inc., in which the appeals court reviewed the dismissal of securities fraud claims for lack of standing because the claims had not been filed by the shareholders themselves. Id. at 583 (citing Advanced Magnetics, Inc. v. Bayfront Partners, Inc., 106 F.3d 11 (2d Cir. 1997)). The Advanced Magnetics court reversed the district court's order insofar as it denied the plaintiff's request for leave to amend, holding that the court should have permitted substitution of the real party in interest pursuant to Federal Rule of Civil Procedure 17(a) and, further, that the amendment should relate back to the date the case was initiated. Id. The Vivendi court likewise reasoned that granting summary judgment on the Section 10(b) claims where the unspoken premise of the standing defect was that the selling shareholders had been, at the commencement of the suit, the real party in interest would yield an unjust result. Id. at 584. It noted that "those [shareholder] plaintiffs who have assigned their claims already have ratified plaintiff's action" and held that they should be permitted to file amended complaints asserting facts that would support standing by assignment of the claim. Id. at 585.

The Court concludes that the solution offered by Vivendi addresses the problem raised by Merck in this motion for summary judgment. Defendants have, since the commencement of the Direct Actions, been on notice of which funds claimed injury as a result of the alleged securities fraud violations. Amendment of the complaint to assert that those shareholders have assigned their claims to the Challenged Plaintiffs would not materially change the claims or the nature of this suit. Defendants face no prejudice, whereas the consequence to the Challenged Plaintiffs,

8

and more specifically, to the shareholders on whose behalf they initiated suit, would be severe if the claims were terminated. For the reasons discussed, Defendants have failed to persuade the Court that jurisdiction is lacking under Article III.

Accordingly, the Court will not grant summary judgment on the Challenged Plaintiffs' claims for lack of standing. Instead, it will allow them to file amended complaints which, in the wake of Sprint and Huff, assert facts that make their standing to bring suit clear based on the assignments given by the beneficial owners of the Merck stock at issue. As to Challenged Plaintiff SEB Bank, which does not assert that the owners have assigned the claim but rather that they have ratified the claim, the Court will permit amendment of the complaint to substitute as Plaintiffs the real parties in interest, pursuant to Rule 17(a). The amended complaint in each Direct Action will relate back to the date on which the initial complaint was filed.

### B. Damages

Merck points out that 157 of Direct Action Plaintiffs' funds have sustained no damages, according to Plaintiffs' own damages expert, Dr. Nye. (See Peles Decl., Ex. 7.) An essential element of a Section 10(b) claim, however, is economic loss. Erica P. John Fund, Inc. v. Halliburton Co., 131 S. Ct. 2179, 2184 (2011); see also Newton v. Merill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 177-78 (3d Cir. 2001) (holding that "failure to show actual damages is a fatal defect in a Rule 10b-5 cause of action."). Merck argues that no reasonable jury could find in favor of Plaintiffs as to those funds for which Plaintiffs cannot show damages and that summary judgment on that portion of Plaintiffs' Section 10(b) claims is thus warranted under Rule 56(a).

Merck is correct. Plaintiffs' failure "to make a showing sufficient to establish the existence of an element essential to [their] case, and on which [Plaintiffs] will bear the burden of

9

proof at trial" supports granting partial summary judgment on their Section 10(b) claims.  Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3d Cir. 1992).  Plaintiffs recognize that their expert has calculated zero dollars in loss to 157 of the funds at issue.  They maintain that summary judgment is inappropriate because there is evidence that all but one of the Direct Action Plaintiffs, which admittedly has no evidence of loss, have sustained damages in connection with other funds they owned.  Plaintiffs argue that summary judgment cannot be granted where it would dispose of only a portion of the claim.  As Merck indicates, in support of this argument, Plaintiffs cite caselaw which pre-dates the 2010 amendment to Rule 56.  The governing rule clearly authorizes summary judgment as to a "part of [a] claim or defense."  Fed. R. Civ. P. 56(a).

Accordingly, summary judgment as to Direct Action Plaintiffs' Section 10(b) claims will be granted insofar as the claims arise out of the 157 funds for which Plaintiffs lack evidence of damages.   The 157 funds are identified in an attachment to the order filed together with this Opinion.  Moreover, summary judgment in the Direct Actions will also be granted insofar as the Exchange Act Section 20(a) claims are premised on the Section 10(b) violations which the identified 157 funds cannot establish for lack of damages.

An appropriate order will be filed.

   s/Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge

Dated:  June 19, 2015